## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| John J. Dougherty, | **:** | |
| | **:** | |
| *Plaintiff*, | **:** | Civil Action No. 22-cv-03430-CMR |
| | **:** | |
| v. | **:** | |
| | **:** | |
| National Union Fire Insurance Company of Pittsburgh, PA, | **:** | |
| | **:** | |
| *Defendant*. | **:** | |
| | **:** | |

## [PROPOSED] ORDER

AND NOW, this _____ day of _____, 2022, upon consideration of Plaintiff John J. Dougherty's Motion for Expedited Remand pursuant to 28 U.S.C. 1447(c), and any response thereto, is it is hereby **ORDERED** that Plaintiff's Motion is **GRANTED**, and this matter is **REMANDED** to the Philadelphia Court of Common Pleas.

Plaintiff is directed to submit within 7 days an accounting of all costs and actual expenses, including attorney's fees, incurred in connection with removal, with an award thereof to follow in a subsequent Order of Court.

BY THE COURT:

_____
, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| John J. Dougherty, | : | |
| | : | |
| *Plaintiff*, | : | Civil Action No. 22-cv-03430-CMR |
| | : | |
| v. | : | |
| | : | |
| National Union Fire Insurance Company of Pittsburgh, PA, | : | |
| | : | |
| *Defendant*. | : | |

## <u>MOTION FOR EXPEDEITED REMAND</u>

Plaintiff John J. Dougherty hereby moves pursuant to 28 U.S.C. 1447(c), and on an expedited basis, for the remand of this action to the Philadelphia Court of Common Pleas—as the entity seeking removal is neither a defendant nor even a party in the state court action, and no reasonable basis for removal exists—and for the payment of costs and expenses incurred by the Plaintiff as a result of the improper removal. Plaintiff further requests expedited consideration of this Motion, as any further delay—which was the sole impetus for the removal—will unjustly prejudice the Plaintiff's ability to obtain a fair criminal defense. In support of his Motion, Plaintiff relies on his accompanying Brief, which is incorporated herein as though fully set forth at length.

WHEREFORE, Plaintiff respectfully requests the Court enter an Order granting his Motion for Expedited Remand and providing for the payment of costs and expenses incurred as a result of removal.

Respectfully submitted,

**LAMB MCERLANE, PC**

By:     */s/ Joseph R. Podraza, Jr.*
          Joseph R. Podraza, Jr., Esquire (ID No. 53612)
          *jpodraza@lambmcerlane.com*
          William H. Trask, Esquire (ID No. 318229)
          *wtrask@lambmcerlane.com*
          One South Broad Street – Suite 1500
          Philadelphia, PA  19107
          215-609-3170

Date:  August 30, 2022       *Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| John J. Dougherty, | **:** | |
| | **:** | |
| *Plaintiff*, | **:** | Civil Action No. 22-cv-03430-CMR |
| | **:** | |
| v. | **:** | |
| | **:** | |
| National Union Fire Insurance Company of Pittsburgh, PA, | **:** | |
| | **:** | |
| *Defendant*. | **:** | |
| | **:** | |

<u>**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED REMAND**</u>

Plaintiff John J. Dougherty ("Plaintiff" or "Dougherty") respectfully moves to have this matter remanded on an expedited basis to the Philadelphia Court of Common Pleas, pursuant to 28 U.S.C. 1447, and for an award of costs and counsel fees, and in support thereof states as follows:

**I.      BACKGROUND**

This is an insurance coverage dispute involving state law claims for breach of contract between citizens of the Commonwealth of Pennsylvania. Plaintiff filed suit on November 8, 2021 seeking coverage from Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") for fees and expenses incurred by the Plaintiff in defending against federal criminal charges under a pair of separate indictments. A true and correct copy of the operative Complaint is incorporated herein and attached to the accompanying Declaration of Joseph R. Podraza, Jr., Esquire as Exhibit "A." When attempts to resolve the dispute were unsuccessful, because trial on one of the indictments was quickly approaching, Plaintiff sought a special injunction directing the Defendant insurer to immediately remit payment of these covered

expenses to Plaintiff's criminal counsel. By Order dated March 17, 2022, the Philadelphia Court of Common Pleas granted Plaintiff's request for an injunction and ordered National Union to submit payment forthwith. Disputes have persisted between the parties in connection with a supersedeas that was initially granted then later terminated by the trial court, while the original order granting the injunction is currently on appeal before the Superior Court of Pennsylvania. A true and correct copy of the Philadelphia Court of Common Pleas Docket is incorporated herein and attached as Exhibit "B."

Although not a party in the state court action, the International Brotherhood of Electrical Workers, Local 98 ("Local 98") recently filed on July 28, 2022 a petition to intervene in that action. The state trial court on August 2, 2022 ordered that hearing on Local 98's petition to intervene be conducted on September 14, 2022. ***Local 98 is not a party to the underlying state action between Dougherty and National Union.*** Further, Plaintiff contends Local 98's petition to intervene is meritless. But rather than pursue and be denied its proposed request for intervention, Local 98 instead submitted on August 26, 2022 a Notice of Removal of the state court action to this Court. *See* Dkt. Entry No. 1.

Because this Court plainly lacks subject-matter jurisdiction over the claims raised in the state court proceeding below, and because Local 98 is not even a party in that underlying action authorized to seek the removal of the state court action, this matter must be remanded. And the remand should be ordered on an expedited basis to avoid prejudice to Dougherty's ability to sufficiently defend against the outstanding federal claims fast approaching for trial. Furthermore, because this Court's jurisdiction is patently lacking, a reality obvious even to Local 98's counsel, Plaintiff requests pursuant to 28 U.S.C. § 1447(c) an award of costs and expenses, including attorney fees, incurred in connection with the removal.

## II.        ARGUMENT AND AUTHORITIES

### A.  Preliminary Issues

The United States Supreme Court maintains that federal removal statutes are to be strictly construed.  *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941). While removal is authorized, it is universally held that any removal attempt should be viewed with suspicion and that the case should be remanded if there is any doubt as to whether the federal court has subject matter jurisdiction. *See, e.g., Univ. of S. Ala. v. Am. Tobacco Co*., 168 F.3d 405, 411 (11th Cir. 1999); *In re Bus. Men's Assurance of Am*., 992 F.2d 181, 183 (1993) (per curiam). This is because state courts are *fora* of general jurisdiction empowered to hear cases arising under either federal or state law, but federal courts are tribunals of limited jurisdiction that may resolve civil disputes only if the plaintiff's well-pleaded complaint raises an issue of federal law or involves a matter of state law between completely diverse parties and the amount in controversy exceeds the threshold amount.  The case law encourages federal judges to remand a case to state court—where it may always be heard—rather than risk erroneously exercising jurisdiction and having an appellate court vacate all of their decisions and dismiss the cases several years down the road.  *See, e.g., Am. Tobacco Co*., 168 F.3d at 411.

Because of the heavy burden faced even by an *actual* defendant—as opposed to a nonparty, as here—in sustaining removal, nearly fifteen percent of the 30,000 plus cases removed each year are remanded to the local court in which they were originally filed.[1] The matter *sub judice* is a gross example of abuse of the removal process by an entity not even a party to the litigation, and therefore certainly among the fifteen percent requiring immediate

---

[1] *See* Mem. from M Galloway, Senior Management Analyst for the Administrative Office of the U.S. Courts, to M. Jones, Chief Librarian for the U.S. District Court for Eastern District of Wisconsin (July 25, 2002).

remand in order to avoid the disruption of the orderly flow of this litigation in the state court system where it solely belongs.

### B.  Local 98 Is Not a Defendant Entitled to Seek Removal

Local 98, in styling itself as a "Proposed Intervenor," admits it is not party to the pending state court action it seeks to remove, much less a defendant authorized to seek removal. 28 U.S.C. 1441(a) (providing for the removal of state court actions to federal court "by the defendant or the defendants."); *see also Conner v. Salzinger*, 457 F.2d 1241, 1243 (3d Cir. 1972) ("removal statutes confine the right of removal from a state court to a federal district court to *a defendant or defendants*." (emphasis in original)). A "proposed intervenor" is not a party capable of removing a state action to federal court, whether or not the plaintiff's claims might otherwise be subject to the original jurisdiction of the federal court. *See Kane v. Republica De Cuba*, 211 F. Supp. 855, 857 (D.P.R. 1962) (proposed intervenor not a party—much less a defendant—entitled to seek removal to federal court).

For this reason alone, subject matter jurisdiction is patently lacking, and this action should be remanded forthwith to the Philadelphia Court of Common Pleas.

### C.  Federal Court Lacks Subject-Matter Jurisdiction Over Plaintiff's Claims

Additionally, even if Local 98 had been granted intervention—or if, for the sake of argument, Local 98 had been an original defendant in the underlying state court action—there would still be no basis for removal of the pending state court action to federal court. As even Local 98 concedes, removal may be authorized only where jurisdiction is plain from the face of a well-pleaded complaint. Dkt. No. 1, ¶ 25; *see also Ables v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d. Cir. 1985) (the defendant's right to remove is determined according to the plaintiff's pleading at the time the notice for removal is filed). As explained by Local 98 in its own Notice,

4

the purported removal is predicated, not on any claims raised in Plaintiff's well-pleaded complaint, but "because Local 98's claims and defenses arise under federal law and regulations."

But it is well settled that a defendant's own claims or defenses may not serve as a basis for federal subject matter jurisdiction. *Nelson v. United Artist Theater Cir., Inc.*, 835 F. Supp. 844, 845 (E.D. Pa. 1993) (the federal question must form an essential and substantial element of the plaintiff's well-pleaded complaint, not an answer or petition for removal, or otherwise inferred from a defense.) As the Supreme Court has long held, "a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 14 (1983).

The removal statute is narrowly interpreted, and any doubts as to the propriety of removal are resolved in favor of the plaintiff's choice of forum in state court. *Avenatti v. Fox News Network LLC*, 41 F.4th 125, 130 (3d Cir. 2022) (citing *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009)). But this is not a close case. Federal subject matter jurisdiction is patently lacking, and the circumstances surrounding the improper removal—a baseless request to intervene in a state court action followed immediately by a notice of removal to federal court by this nonparty—demonstrates Local 98's overarching intent to meddle in the affairs of the actual parties to the action in order to delay Plaintiff from obtaining the relief to which he is entitled by order of the state court.

### D.  Failure to Verify Consent of Non-Moving Defendant to Removal

The statute governing removal also provides, "[w]hen a civil action is removed solely under section 1441(a) [where federal jurisdiction is not based on diversity of citizenship], all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). The failure of a removing party—or in this case, the removing nonparty—to obtain the consent of the nonmoving defendant warrants immediate remand. As one District Court has observed, "each defendant must within thirty days of plaintiff's service of the complaint upon that defendant 'clearly and unambiguously join... in the removing defendant's notice of removal' or 'file... a separate written consent to removal with the court.'" *Baldy v. First Niagara Pavilion, C.C.R.L., LLC*, 149 F. Supp. 3d 551, 553 (W.D. Pa. 2015) (quoting *A.R. v. Norris*, No. 3:15-cv-1780, 2015 WL 6951872 (M.D. Pa. Nov. 10, 2015).

There is no question National Union, the nonmoving Defendant, did not join in Local 98's Notice of Removal, nor did National Union file its written consent to removal with the Court. Moreover, the time for doing so—within 30 days of the Plaintiff's service of the Complaint on February 3, 2022 —has long since lapsed. Absent filing the timely consent of National Union to the removal—which, even if filed now would be too late to be effective—this matter must be remanded. *Baldy*, 149 F. Supp. 3d at 553.

### E.  Payment of Just Costs and Actual Expenses

As the statute provides, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). An award of fees is warranted "where the removing party lacked an objectively reasonable basis for seeking removal." *League of Women Voters of Pennsylvania v.*

6

*Commonwealth of Pennsylvania*, 921 F.3d 378, 383 (3d Cir. 2019) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). As discussed above, Local 98 is not ***even a party*** to the state action—the first and most fundamental prerequisite to removal. *See, e.g. Kane v. Republica De Cuba*, 211 F. Supp. 855, 856 (D.P.R. 1962) ("unquestionable" that one seeking to remove an action must not only be a defendant but also hold the status of a party in the state court action). Having no basis—much less any reasonable basis—upon which to remove this action, an award of "just costs and any actual expenses, including attorney fees, incurred as a result of the removal" is warranted.

### F.  Expedited Consideration Warranted

Plaintiff's criminal trial is approaching and, as the state court has found in awarding special injunctive relief, a prompt resolution of the underlying dispute is necessary to protect the Plaintiff's right to a fair criminal proceeding. This court is empowered to adjust response deadlines and decide this matter on an expedited basis. *See, e.g.*, E.D.Pa. Local Rule 7.1(c) ("Unless the Court directs otherwise…"). Mere tactical manipulation by a nonparty for the purpose of prejudicing the Plaintiff's criminal defense cannot be condoned, and prompt remand after expedited consideration is warranted.

### III.    CONCLUSION

For all the foregoing reasons, this matter should promptly be remanded on an expedited basis to state court to avoid any further prejudice to the Plaintiff's right to a fair criminal trial with further direction that Local 98 pay the just costs and actual expenses, including attorney's fees, incurred by Plaintiff in connection with removal.

Respectfully submitted,

**LAMB MCERLANE, PC**

By:     */s/ Joseph R. Podraza, Jr.*
Joseph R. Podraza, Jr., Esquire (ID No. 53612)
*jpodraza@lambmcerlane.com*
William H. Trask, Esquire (ID No. 318229)
*wtrask@lambmcerlane.com*
One South Broad Street – Suite 1500
Philadelphia, PA  19107
215-609-3170

Date:  August 30, 2022      *Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| John J. Dougherty, | : | |
| | : | |
| *Plaintiff,* | : | Civil Action No. 22-cv-03430-CMR |
| | : | |
| v. | : | |
| | : | |
| National Union Fire Insurance Company of Pittsburgh, PA, | : | |
| | : | |
| *Defendant.* | : | |

**DECLARATION OF JOSEPH R. PODRAZA, JR.**

I, Joseph R. Podraza, Jr., Esquire, am counsel to John J. Dougherty, the Plaintiff in this action, and in support of Plaintiff's Motion for Remand, declare as follows:

1.       Attached as Exhibit A is a true and correct copy of Plaintiff's Complaint, filed on February 3, 2022 in the matter of *Dougherty v. National Union Fire Insurance Company of Pittsburgh, PA* in the Court of Common Pleas, Philadelphia County, November Term 2021, No. 00640.

2.       Attached as Exhibit B is a true and correct copy of the Docket entries in *Dougherty v. National Union Fire Insurance Company of Pittsburgh, PA* in the Court of Common Pleas, Philadelphia County, November Term 2021, No. 00640.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED this 30th day of August, 2022.

*/s/ Joseph R. Podraza, Jr.*
Joseph R. Podraza, Jr., Esquire
jpodraza@lambmcerlane.com

One South Broad Street, Suite 1500
Philadelphia, PA 19107
(215) 609-3170 (direct)
(610) 430-8000 (main)

# EXHIBIT A

**LAMB McERLANE PC**
Joseph R. Podraza, Jr., Esquire (ID No. 53612)
William H. Trask, Esquire (ID No. 318229)
One South Broad Street – Suite 1500
Philadelphia, PA  19107
(215) 609-3170
(610) 430-8000



<span style="color:red">Filed and Attested by the
Office of Judicial Records
03 FEB 2022 02:56 pm
M. RUSSO</span>

*Attorneys for Plaintiff*

|  |  |  |
|---|---|---|
| JOHN J. DOUGHERTY<br>1933 East Moyamensing Avenue<br>Philadelphia, PA 19148, | : | IN THE COURT OF COMMON PLEAS<br>OF PHILADELPHIA COUNTY |
| *Plaintiff*, | : | Commerce Program |
|  | : | November 2021 Term |
| v. | : | No. 000640 |
| NATIONAL  UNION  FIRE  INSURANCE<br>COMPANY OF PITTSBURGH, PA<br>1271 Avenue of the Americas, Floor 41<br>New York, NY 10020, | : |  |
| *Defendant*. | : |  |

<u>NOTICE TO DEFEND</u>

| NOTICE | AVISO |
|---|---|
| **You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the** | **Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones** |

<span style="color:red">Case ID: 211100640</span>

plaintiff. **You may lose money or property or other rights important to you.**

*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

**Philadelphia Bar Association**
**Lawyer Referral**
**and Information Service**
**One Reading Center**
**Philadelphia, Pennsylvania 19107**
**(215) 238-6333**
TTY (215) 451-6197

de esta demanda. **Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.**

*Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*

**Asociacion De Licenciados**
**De Filadelfia**
**Servicio De Referencia E**
**Informacion Legal**
**One Reading Center**
**Filadelfia, Pennsylvania 19107**
**(215) 238-6333**
TTY (215) 451-6197

Case ID: 211100640

**LAMB McERLANE PC**
Joseph R. Podraza, Jr., Esquire (ID No. 53612)
William H. Trask, Esquire (ID No. 318229)
One South Broad Street – Suite 1500
Philadelphia, PA  19107
(215) 609-3170
(610) 430-8000                                     *Attorneys for Plaintiff John J. Dougherty*

| | |
|---|---|
| JOHN J. DOUGHERTY,<br><br>      *Plaintiff*,<br><br>      v.<br><br>NATIONAL UNION FIRE INSURANCE<br>COMPANY OF PITTSBURGH, PA,<br><br>      *Defendant*. | IN THE COURT OF COMMON PLEAS<br>OF PHILADELPHIA COUNTY<br><br>Commerce Program<br><br>November 2021 Term<br><br>No. 000640 |

## COMPLAINT – CIVIL ACTION
### (1D:  Declaratory Judgment)
### (1C:  Contract)

Plaintiff, John J. Dougherty, (hereinafter referred to as "Plaintiff" or "Dougherty") brings this action for declaratory relief and breach of contract against Defendant, National Union Fire Insurance Company of Pittsburgh, PA, (hereinafter referred to as "National Union"), and in support thereof, avers as follows:

### *Introduction*

1.       This is an insurance coverage dispute.  It arises out of the unprecedented failure by Plaintiff's insurer, Defendant National Union Fire Insurance Company of Pittsburgh, PA, to advance **Defense Costs**, costs which include reasonable and necessary fees, costs and expenses (including premiums for any appeal bond, attachment bond, or similar bond) resulting solely from the investigation, adjustment, defense and appeal of a **Claim**, to Plaintiff.

Case ID: 211100640

2.     There are two claims and thus two policies at issue: the first Policy applicable in December 2016, and a second applicable in October 2020.  The provisions in these polices pertinent to the resolution herein are identical.

3.     It is undisputed that each Policy in question provides $2 million in defense-cost coverage to Dougherty.

4.     Nevertheless, National Union has refused to honor its contractual obligations to advance defense costs on a claim under the first Policy by bogusly claiming three exclusions apply on one claim, two of which on their face are not applicable, while the third is not even included in the operative Policy.

5.     National Union has refused, without explanation, to advance costs on the other claim under the second Policy.

6.     Disturbingly, as to the claim under the first Policy, Dougherty has had to defend one prosecution to date without the advantage of his defense costs being paid as agreed by National Union, and faces the prospects of defending one more fast-approaching federal trial arising out of this claim while being denied the advancement of defense costs to which he is entitled under the Policy.

7.     As disturbingly, Dougherty has had to defend a federal prosecution arising out of a separate claim under the second Policy without the advantage of his defense costs being paid as agreed to by National Union.  This separate claim is scheduled for trial in the coming months.

8.     Accordingly, in this action Dougherty seeks: (a) a declaration of the rights, duties and liabilities under the insurance policies applicable to him and issued by National Union with respect to a federal indictment entered on January 29, 2019 and a separate federal indictment

Case ID: 211100640

entered on March 2, 2021, and (b) monetary compensation for the costs and expenses he has already incurred and continues to incur in defending against these federal criminal charges.

### *Parties*

9.      John J. Dougherty is the Plaintiff and is an adult individual residing at 1933 East Moyamensing Avenue, Philadelphia, PA  19148.  At all times relevant and material hereto, Dougherty served as the Business Manager of Local 98, International Brotherhood of Electrical Workers.

10.      National Union Fire Insurance Company of Pittsburgh, PA, the Defendant, is a Domestic Pennsylvania Insurance Business Corporation incorporated in Pennsylvania on February 14, 1901, and maintains an office address at 1271 Avenue of the Americas, Floor 41, New York, New York 10020.

### *Jurisdiction and Venue*

11.      Jurisdiction over the Defendant in the Courts of the Commonwealth of Pennsylvania is proper pursuant to 42 Pa.C.S.A. §§ 5301, 5308 and 5322.

12.      Venue is proper in the Court of Common Pleas of Philadelphia County pursuant to Pennsylvania Rules of Civil Procedure 1006 (a) and (c) and 2179 (3) and (4), inasmuch as Defendant failed to perform its obligation to advance defense costs to Dougherty in Philadelphia County.

### *Facts*

13.      Effective October 31, 2016, National Union issued a renewal/replacement Not-For-Profit Risk Protector, Management Liability, Professional Liability, Crime Coverage and Kidnap and Ransom/Extortion Coverage for Not-For-Profit Organizations Policy, No. 02-146-

Case ID: 211100640

73-24, to Local 98, IBEW.  A true and correct copy of the policy is attached hereto and incorporated herein as Exhibit "A."

14.     On December 19, 2016, Local 98 and Dougherty served notice upon National Union of FBI search warrants, which were issued for searches at Local 98's headquarters on August 5, 2016, and a federal jury action.  Confirmation of the notice served on December 19th is found in Exhibit "B" (AIG 10/15/19 Letter) which is attached hereto and incorporated herein.

15.     On January 29, 2019, a federal indictment was filed against Dougherty and others.

16.     Notice of the federal indictment was timely made by Dougherty to National Union.

17.     By letter dated October 15, 2019, National Union notified Dougherty of its determination that coverage of the January 29th federal indictment related back to the December 2016 notice and was subject to Policy No. 02-146-73-24 as it existed in December 2016, but D&O coverage was not applicable because of Endorsement No. 8 in the Policy, specifically LU-4 (conflict of interest) and LU-5 (Wrongful Act).  Exhibit "B."

18.     Later, by letter dated October 22, 2019, National Union raised Endorsement 29 as a separate reason for denying coverage under Policy No. 02-146-73-24, even though it is indisputable that Endorsement 29 was not included in the Policy when National Union received Dougherty's December 2016 notice, and Dougherty was neither consulted regarding, nor ever agreed to, Endorsement 29.  A true and correct copy of the October 22nd letter is attached hereto and incorporated herein as Exhibit "C."

19.     Effective October 31, 2019, National Union issued a renewal/replacement Not-For-Profit Risk Protector, Management Liability, Professional Liability, Crime Coverage and Kidnap and Ransom/Extortion Coverage for Not-For-Profit Organizations Policy, No. 03-979-

Case ID: 211100640

23-74, to Local 98, IBEW.  A true and correct copy of the policy is attached hereto and incorporated herein as Exhibit "D."

20.     On or about October 15, 2020, federal search and seizure warrants were issued for the Offices of IBEW, Local 98, located at 1701 and 1719 Spring Garden Street, Philadelphia, Pennsylvania.  Both federal warrants sought documents relating to the "[w]ork history, disciplinary records, complaints, and correspondence, including emails, pertaining to Local 98 member Greg Fiocca for the period June 2015 – present."

21.     By email dated October 30, 2020, Local 98 timely served notice upon National Union of the October 15th search warrants.  Confirmation of the notice served on October 30th is found in Exhibit "E" (AIG 11/06/20 Letter) which is attached hereto and incorporated herein.

22.     According to the November 6th letter from National Union, "[t]here is no written demand for monetary, non-monetary, or injunctive relief and therefore, a Claim has not been made.  Since no Claim has been made against an Insured, we will accept this matter as notice of circumstance which may reasonably be expected to give rise to a Claim, pursuant to Clause (7)(1)(c) of the General Terms and Conditions Sections of the Policy."  National Union assigned the matter Claim No. 7087666144US "[i]n the event that a Claim or Complaint is [thereafter] asserted against an Insured as defined within the Policy[.]"

23.     On March 2, 2021, a Claim (a federal indictment dated March 2, 2021) was made against Dougherty, an Insured under the Policy, No. 03-979-23-74, which relates to and arises out of the federal search warrants dated October 15, 2020.

### *Insurance Policies at Issue*

24.     It is undisputed that Dougherty is an "**Individual Insured**" under both Polices in question.

Case ID: 211100640

25.     It is also undisputed that National Union was timely notified of the discussed claims in connection with the federal criminal charges filed in the Eastern District of Pennsylvania on January 29, 2019, and thereafter on March 2, 2021.

26.     Moreover, regarding the first Policy at issue, the exclusions on which National Union relies to deny coverage for any claim related to the federal criminal charges filed in the Eastern District of Pennsylvania against Dougherty on January 29, 2019, do not apply.

27.     LU-5 of Endorsement 8 provides "the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:  alleging, arising out of, based upon or attributable to any **Wrongful Act** committed with the knowledge that it was wrongful."

28.     The definition of "**Wrongful Act**" under the D&O Coverage Section does not include criminal conduct.

29.     It is undisputed that the federal criminal charges against Dougherty represent alleged criminal conduct by Dougherty and, therefore, the LU-5 Exclusion does not apply.

30.     Nor does the LU-4 Exclusion under Endorsement No. 8 apply to the federal criminal charges against Dougherty.

31.     LU-4 states "the **Insurer** shall not be liable to make any payment for Loss in connection with any **Claim** made against any **Insured**:  alleging, arising out of, based upon, or attributable to any actual or alleged conflict of interest arising from any dealings with the **Organization** as an adverse party or on behalf of an adverse party."

32.     "Adverse party" is not defined in the Policy.

6

Case ID: 211100640

33.     The customary meaning of "adverse party" is an individual, group, company, union, governmental body or other entity that has pecuniary and/or nonpecuniary interests known to be in opposition or otherwise adverse to those of the company.

34.     The federal indictment, however, alleges Dougherty directly stole from Local 98 in various ways by taking advantage of his position as the Union's Business Manager. According to the Department of Justice, he allegedly was able to commit the criminal misconduct alleged in the federal indictment because his relationship with Local 98 was non-adverse, or favorable, friendly, and aligned.  According to the indictment, the federal crimes as alleged were not committed when Local 98 was "an adverse party or on behalf of an adverse party" and Exclusion LU-4 does not apply.

35.     And in any event, the allegations of the criminal indictment, which are criminal in nature, are subject to the separate exclusion dealing directly with criminal conduct and specifically providing for the payment of defense costs until a "final adjudication" adverse to the **Individual Insured** is obtained. *See* Ex. "A," D&O Coverage at ¶3(a).  LU-4 cannot be read so generally as to broadly expand this more specific, targeted exclusion.

36.     Finally, Endorsement 29, cited as a separate basis for denial of coverage, was not included in the Policy when this claim vested upon National Union's admitted receipt of the notice of the claim in December 2016. After receipt of the timely December 2016 notice, the Policy could not be legally changed or altered without Dougherty's knowledge and consent. And Dougherty was neither notified about, nor did he consent to, any changes to the Policy after National Union received his December 2016 notice.

Case ID: 211100640

37.     Regarding the second Policy, National Union has not asserted any exclusion(s) against coverage for any of the claims based on the charges made against Dougherty in the federal indictment filed on March 2, 2021.

38.     National Union was and remains obligated under Policy No. 02-146-73-24 to assume and pay for Dougherty's defense against the federal criminal claims asserted against Dougherty under the federal indictment dated January 29, 2019.

39.     National Union was and remains obligated under Policy No.03-979-23-74 to assume and pay for Dougherty's defense against the federal criminal claims asserted against Dougherty under the federal indictment dated March 2, 2021.

40.     The D&O coverage sections in both Nation Union Policies provide pertinently:

[T]he **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

(a)  Arising out of, based upon or attributable to the committing of any criminal or deliberate fraudulent act ***if final adjudication establishes that such criminal or fraudulent act was committed.***

(Ex. "A," Policy at D&O Coverage Section, ¶3(a) & Ex. "D," Policy at D&O Coverage Section, ¶3(a) (bold emphasis in originals; italicized emphases added).

41.     There has been no final adjudication regarding Dougherty in both of the federal prosecutions.  Under paragraph 5 of the of the D&O Coverage Section of the Policies in question, National Union was and remains obligated to pay Dougherty's defense costs in both federal prosecutions until an adverse final adjudication on each aspect of each federal prosecution occurs.

8

Case ID: 211100640

### *Dougherty's Efforts to Obtain Coverage to Which He is Entitled*

42.      In December 2016, Dougherty timely notified National Union of the claims by the federal government in the January 29th federal indictment, and National Union does not dispute the timeliness and sufficiency of Dougherty's notification.

43.      Dougherty also has timely notified National Union of the claims by the federal government in the March 2nd federal indictment, and National Union does not dispute the timeliness and sufficiency of Dougherty's notification.

44.      All other conditions precedent to coverage for, among other things, the advancement of defense costs in the prosecutions under the January 29th and March 2nd indictments, have been satisfied or discharged.

45.      The first federal trial against Dougherty arising under the January 29th federal indictment is in the post-trial relief stage and will probably involve an appeal.

46.      A federal trial against Dougherty arising under the March 2nd federal indictment is scheduled to begin in February 2022.

47.      A separate trial against Dougherty arising under the January 29th indictment is scheduled to later commence in August 2022.

48.      Under the D&O Policy sections of both governing Policies, National Union is required to advance defense costs to Dougherty for each of these prosecutions until final adjudication of each matter and/or the exhaustion of the limits under the operative Policy.

### Count I- Declaratory Judgment
### *Dougherty v. National Union*

49.      Dougherty realleges the representations in the foregoing paragraphs of this pleading as though fully set forth at-length herein.

Case ID: 211100640

50.     Under the applicable Policies identified above, National Union had and has a duty to Dougherty to advance defense costs.

51.     National Union has breached and continues to breach its duty to advance defense costs as required under each respective Policy.

52.     An actual controversy of a justiciable nature presently exists between Dougherty and National Union regarding the proper construction of the Policies in question and the rights and obligations with respect to the federal claims against Dougherty.  Issuance of declaratory relief by this Court will terminate the existing and any future controversies between the parties.

53.     Dougherty asks this Court to declare that National Union must advance the costs incurred in defense of the federal criminal charges against Dougherty until the limits under the operative Policy have been exhausted.

### Count II – Breach of Contract
### *Dougherty v. National Union*

54.     Dougherty realleges the representations in the foregoing paragraphs of this pleading as though fully set forth at-length herein.

55.     Under the terms of the respective Policies identified above, National Union agreed to pay Dougherty's defense costs.

56.     All premiums due under the contract have been paid, and all notification requirements have been met.

57.     Notwithstanding the performance of all obligations by the insured under these Policies, National Union has refused to advance Dougherty's defense costs as required under the Policies.

Case ID: 211100640

58.     Due to National Union's failure to advance defense costs as required under the noted Policies, Dougherty has incurred and continues to incur costs and expenses defending the ongoing federal criminal proceedings.

WHEREFORE, Plaintiff John J. Dougherty respectfully requests this Court to enter judgment in his favor and against Defendant National Union Fire Insurance Company of Pittsburgh, PA, declaring Plaintiff is entitled to defense costs paid by Defendant in each federal criminal prosecution against Plaintiff until each matter is finally adjudicated and/or the operative limits are exhausted, ordering Defendant to reimburse Plaintiff for his defense costs and expenses incurred to date, and awarding Plaintiff such other relief as the Court may deem warranted.

Respectfully submitted:

**LAMB MCERLANE, PC**

By: _____ */s/ Joseph R. Podraza, Jr.*_____
           Joseph R. Podraza, Jr., Esquire (ID No. 53612)
           *jpodraza@lambmcerlane.com*
           William H. Trask, Esquire (ID No. 318229)
           *wtrask@lambmcerlane.com*

           *Attorneys for Plaintiff*

Date:  February 3, 2022

Case ID: 211100640

## **VERIFICATION**

I, John J. Dougherty, am the plaintiff in the subject action and verify that the statements in the foregoing document are true and correct to the best of my knowledge, information and belief. I do further understand that these statements are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.

02-03-22
_____
Date

_____
John J. Dougherty

Case ID: 211100640

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph R. Podraza, Jr., Esquire, hereby certify that a true and correct copy of the

foregoing document was served this day upon the person indicated below in the manner

indicated below:

**_Via_ Regular Mail, Postage Prepaid:**

National Union Fire Insurance Company of Pittsburgh
1271 Avenue of the Americas – Floor 41
New York, NY  10020-1304
Attention:      Kimberly Huebner
                       Senior Complex Claims Director

**LAMB McERLANE PC**

Dated: February 3, 2022                    By:  _/s/ Joseph R. Podraza, Jr._
                                                          Joseph R. Podraza, Jr.

12

Case ID: 211100640

# EXHIBIT A

Case ID: 211100640

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG).   The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy.   You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producercompensation   or by calling 1-800-706-3102.

91222 (4/13)

Case ID: 211100640

*October 31, 2016*

Dear Insured:

Congratulations on purchasing your employment practices liability insurance policy from AIG, one of the premier writers of commercial insurance. Your policy offers many outstanding features, including coverage for claims arising from violations of Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act (ADA); the Age Discrimination in Employment Act (ADEA); the Equal Pay Act of 1963 (EPA); and the Rehabilitation Act of 1973 (REHAB ACT).

As a AIG policyholder, you have the confidence of knowing that your claims will be handled by experienced claims professionals. In addition, our panel counsel is comprised of leaders in employment practices law throughout the country. The services of these law firms are available to you at preferred AIG rates.

Additionally, our package includes loss-control services included automatically for all eligible insureds through **EPL Pak**[®] **Premier**. This insurance offering features access to our online EPL Risk Manager located at www.EPLriskmanager.com, designed exclusively for AIG EPL insureds by the attorneys at Littler Mendelson, the nation's largest labor and employment law firm. This web link is exclusive to AIG EPL insurance policyholders and is available at no additional cost. To register, you can log into the site with your policy number. The site offers tools and resources including:

- Human Resources Form Library
- Sample Employee Handbooks
- Employment Law Email Alerts
- Employment Law Policies
- Hire & Fire Manual

- Employment Law Reference Manuals (5000 + pages)
- 50 State Analysis of Key Employment Laws
- Preventing Unlawful Harassment Guide
- Preventing Employment Class Actions Manual
- Discounts on Employment Law Training

All forms and materials may be downloaded and customized. To view a short video tour of the risk management products and services available, please visit: **http://eplriskmanager.com/take_tour.php**. As a AIG policyholder, you also receive ten free seats to Littler Mendelson's monthly webinar series on preventing harassment in the workplace and discounts on over 40 employment law training courses.  For additional information on these services you may contact Brian McMillan at Littler Mendelson at bmcmillan@littler.com or visit www.littler.com.

To complement these offerings, we continue to offer our risk management solutions provided by Jackson Lewis, LLP, a premier employment law firm with offices throughout the United States, including:

- Unlimited Access to the Jackson Lewis Toll Free Risk Management Hotline: (866) 614-0744
- One hour legal consultation with a Jackson Lewis attorney on any topic
- Seminars on topical issues of employment law, recent litigation development, and training
- Email subscription to The Jackson Lewis Newsletter, which highlights employment practices developments and trends
- Email updates regarding significant legislative actions, judicial decisions, and other changes which may impact your business
- Access to a self-audit checklist and a pre-termination checklist, which will assist companies in identifying potential vulnerability to employment claims
- Attendance at CAAB 1825 sexual harassment training in California

To learn more, please contact Paul Siegel at siegelp@jacksonlewis.com, Wendy Mellk at mellkw@jacksonlewis.com or view a free demonstration of training at www.jacksonlewis.com, or under the online training section or at www.workplaceanswers.com.

Your decision to purchase coverage through AIG has provided your organization with powerful advantages in managing your business.  We thank you for choosing AIG and look forward to a continuing successful relationship. If you have any questions or would like additional information, please contact your broker, a AIG representative or email us at executiveliability@aig.com.

AIG is the marketing name for the worldwide property-casualty and general insurance operations of AIG Property Casualty Inc. For additional information, please visit our website at www.aig.com.  All products are written by insurance company subsidiaries or affiliates of AIG Property Casualty Inc. Coverage may not be available in all jurisdictions and is subject to actual policy language. Non-insurance products and services may be provided by independent third parties. Certain coverage may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds and insureds are therefore not protected by such funds.

**NOTICE TO PENNSYLVANIA INSUREDS**

**PENNSYLVANIA DISCLAIMER**
**Large Commercial Risks**
**Pennsylvania Statutes - 40-66-105**

The following notice is being provided in compliance with Pennsylvania Law:

**THE RATES, RATING PLANS, AND THE POLICY FORMS FOR THIS POLICY ARE EXEMPT FROM THE FILING REQUIREMENTS UNDER PENNSYLVANIA INSURANCE LAW AND THE RULES OF THE PENNSYLVANIA INSURANCE COMMISSIONER.**

**A PREMIUM OR RATE MAY BE QUOTED OR A POLICY FORM MAY BE USED THAT IS NOT SUBJECT TO THE RATE AND FORM FILING REQUIREMENTS OF THE PENNSYLVANIA INSURANCE DEPARTMENT.**

Case ID: 211100640



**National Union Fire Insurance Company of Pittsburgh, PA**

A capital stock company

# Not-For-Profit Risk Protector®

### Management Liability, Professional Liability, Crime Coverage and Kidnap And Ransom/Extortion Coverage for Not- For- Profit Organizations

POLICY NUMBER: *21467324*

REPLACEMENT OF POLICY NUMBER: *19862569*

---

### NOTICES

[APPLICABLE TO ALL COVERAGE SECTIONS OTHER THAN THE CRIME COVERAGE SECTION AND KIDNAP AND RANSOM/EXTORTION COVERAGE SECTION ]

COVERAGE WITHIN THIS POLICY IS GENERALLY LIMITED TO LOSS FROM CLAIMS FIRST MADE AGAINST INSUREDS DURING THE POLICY PERIOD AND REPORTED TO THE INSURER AS THE POLICY REQUIRES. DEFENSE COSTS REDUCE THE LIMITS OF LIABILITY (AND, THEREFORE, AMOUNTS AVAILABLE TO RESPOND TO SETTLEMENTS AND JUDGMENTS) AND ARE APPLIED AGAINST APPLICABLE RETENTIONS.

THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND UNLESS SUCH COVERAGE IS EXPRESSLY PROVIDED WITHIN A COVERAGE SECTION.  WHERE THE INSURER HAS NO DUTY TO DEFEND, IT WILL ADVANCE DEFENSE COSTS, EXCESS OF THE APPLICABLE RETENTION, PURSUANT TO THE TERMS OF THIS POLICY PRIOR TO THE FINAL DISPOSITION OF A CLAIM.  PLEASE REFER TO THE COVERAGE SECTIONS PURCHASED FOR DEFENSE RELATED DETAILS.

PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER TO DETERMINE WHAT IS AND WHAT IS NOT COVERED.

---

## DECLARATIONS

| ITEMS | | | |
|---|---|---|---|
| 1 | **NAMED ORGANIZATION:** | (the "Named Organization") | *INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS* |
| | | MAILING ADDRESS: | *1719 SPRING GARDEN ST* |
| | | | *PHILADELPHIA, PA, 19130 3915* |
| | | STATE OF INCORPORATION/FORMATION: | *Pennsylvania* |
| 2 | **POLICY PERIOD:** | Inception Date: *October 31, 2016* | Expiration Date: *October 31, 2017* |
| | | 12:01 A.M. at the address stated in Item 1 | |

© AIG. All rights reserved

Case ID: 211100640

ITEMS (continued)

**3** | **COVERAGE SUMMARY**

| | Liability Coverage Section | Separate Limit of Liability | Shared Limit of Liability | Retention/ Deductible* | Continuity Date | Premium |
|---|---|---|---|---|---|---|
| D&O | D&O and Not-For-Profit Organization | *Inapplicable* | *$2,000,000 Shared With: EPL* | *Crisis Management Events: $0*<br><br>*All Other Claims: $15,000* | *10/31/2003* | *$13,990* |
| EPL | Employment Practices | *Inapplicable* | *$2,000,000 Shared With: D&O* | *All Claims: $15,000* | *10/31/2003* | *$10,854* |
| FLI | Fiduciary | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| CCP | Employed Lawyers | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Crime | Crime | See Section 5: | None | See Section 5: | N/A | *Coverage Section Not Purchased* |
| KRE | Kidnap And Ransom/ Extortion | See Section 6: | None | See Section 6: | N/A | *Coverage Section Not Purchased* |

**4** | *With respect to the D&O, EPL, FLI and CCP Coverage Sections only, no Retention amount is applicable to Non-Indemnifiable Loss. | | | | N/A |
*No Retention is applicable to Voluntary Compliance Loss and HIPAA Penalties.

**TOTAL PREMIUM**
**$24,844**

© All rights reserved

Case ID: 211100640

ITEMS (continued)

## 5 CRIME LIMITS OF LIABILITY AND DEDUCTIBLES

| Insuring Agreement | Per Occurrence Limit of Liability | Deductible |
|---|---|---|
| Insuring Agreement 1.A.: "Employee Theft" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Insuring Agreement 1.B.: "Forgery or Alteration" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Insuring Agreement 1.C.: "Inside the Premises - Theft of Money or Securities" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Insuring Agreement 1.D.: "Inside the Premises - Robbery or Safe Burglary of Other Property" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Insuring Agreement 1.E.: "Outside the Premises" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Insuring Agreement 1.F.: "Computer Fraud" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Insuring Agreement 1.G.: "Money Orders and Counterfeit Paper Currency" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Coverage Endorsement "Clients Property" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Coverage Endorsement "Funds Transfer Fraud" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Coverage Endorsement "Guest Property " Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |

If "Not Covered" is inserted above opposite any specific Insuring Agreement, such Insuring Agreement in the Crime Coverage Section and any other reference thereto in this policy is hereby deleted.

**CANCELLATION OF PRIOR CRIME INSURANCE:** By acceptance of the Crime Coverage Section of this Policy, you give us notice of cancellation for the prior policy Nos: *19862569*.  Such cancellation shall be effective at the time the Crime Coverage Section of this Policy becomes effective.

## 6 KRE LIMITS OF INSURANCE \ INSURED PERSON(S)

| Loss Component: | Each Loss Component Limit | Annual Aggregate Limit |
|---|---|---|
| A. Ransom Monies: | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| B. In-Transit/Delivery: | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| C. Expenses: | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| D. Consultant Expenses: | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| E. Judgments, Settlements and Defence Costs: | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| F. Death or Dismemberment: | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Each Insured Event Limit: | | *Coverage Section Not Purchased* |
| Coverage Section Aggregate: | | *Coverage Section Not Purchased* |
| Deductible (Each Loss): | | *Coverage Section Not Purchased* |

Insured Person(s): *Coverage Section Not Purchased*

© All rights reserved

Case ID: 211100640

ITEMS (continued)

| 7 | **OTHER LIMITS OF LIABILITY** | |
|---|---|---|
| | **(a) POLICY AGGREGATE LIMIT OF LIABILITY (For all coverages combined other than the Crime and the KRE Coverage Sections:** | *$2,000,000* |
| | **(b) Crisis Management Fund For D&O:** | *$25,000* |
| | **(c) Voluntary Compliance Loss Sublimit of Liability for FLI:** | *Coverage Section Not Purchased* |
| | **(d) HIPAA Penalties Sublimit of Liability for FLI:** | *Coverage Section Not Purchased* |

| 8 | **NAME AND ADDRESS OF INSURER** |
|---|---|

*National Union Fire Insurance Company of Pittsburgh, PA*
*175 WATER STREET, NEW YORK, NY, 10038*

This policy is issued only by the insurance company indicated in this Item 8.

PRODUCER:   *M PIZZO LLC*
PRODUCER LICENSE NO.:  On File with Carrier
ADDRESS:   *PO BOX 390*
            *ROSENHAYN, NJ 08352*

© All rights reserved

Case ID: 211100640

**IN WITNESS WHEREOF**, the **Insurer** has caused this policy to be signed on the Declarations by its President, a Secretary and its duly authorized representative.

_____
PRESIDENT

_____
SECRETARY

_____
AUTHORIZED REPRESENTATIVE

_____          _____          _____
COUNTERSIGNATURE                              DATE                          COUNTERSIGNED AT

Case ID: 211100640



**National Union Fire Insurance Company of Pittsburgh, PA**

# Not-for-Profit Risk Protector ®   A capital stock company

### General Terms and Conditions
#### (Inapplicable to Kidnap and Ransom Coverage Section)

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by application, including its attachments and the materials incorporated therein, which form a part of this policy, the **Insurer** agrees as follows:

**1. TERMS AND CONDITIONS**

These General Terms and Conditions are hereby incorporated by reference into, made a part of, and expressly made applicable to all **Coverage Sections** except (i) the Kidnap & Ransom Coverage Section; or (ii) where explicitly limited to one or more **Coverage Sections**. Any reference in this General Terms and Conditions Section to "all **Coverage Sections**" shall not refer to the Kidnap and Ransom Coverage Section. The terms and conditions set forth in each **Coverage Section** shall only apply to that particular **Coverage Section** and shall in no way be construed to apply to any other **Coverage Section** of this policy.

**2. DEFINITIONS**

(a) "**Affiliate**" shall mean any not for profit organization, other than a **Subsidiary**, which:

    (1) the **Named Organization** or any **Subsidiary** controls or otherwise has the ability to direct the financial or managerial decisions of such entity, whether through the operation of law, contract or agreement, stock ownership or membership, charter, articles of incorporation, or by-law provisions; or

    (2) is granted by contract the right to control the financial or managerial decisions of the **Named Organization** or any **Subsidiary**;

provided, however, that such coverage as may be provided under this policy for any organization described in subparagraphs (1) and (2) above shall be limited solely to **Wrongful Acts** occurring in the course of the exercise of such control of financial or managerial decisions.

(b) "**Bodily Injury**" means physical injury, sickness or disease (other than emotional distress or mental anguish), including death resulting therefrom.

(c) "**Claim**" means a **Claim**, as that term is defined within each **Coverage Section**.

(d) "**Continuity Date**" means the date set forth in Item 3 of the Declarations with respect to each **Coverage Section**.

(e) "**Coverage Section(s)**" means each Coverage Section that is purchased by the **Insured** as indicated in Item 3 of the Declarations.

(f) "**Defense Costs**" means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against the **Insureds**, but excluding compensation of **Individual Insureds**. **Defense Costs** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

(g) "**Discovery Period**" means the **Discovery Period** as that term is defined in each **Coverage Section**.

(h) "**Domestic Partner**" means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Named Organization** or any **Subsidiary**.

(i) "**Employee(s)**" means an Employee as that term is defined within each **Coverage Section**.

(j) "**Financial Insolvency**" means: (1) entering into proceedings in bankruptcy; (2) becoming a debtor in possession; or (3) the taking of control, the supervision of or the managing or liquidation of the financial affairs of an entity by a receiver, conservator, liquidator, trustee, rehabilitator or similar official.

© All rights reserved.

Case ID: 211100640

(k)  **"Indemnifiable Loss"** means **Loss** for which the **Organization** has indemnified or is permitted or required to indemnify any **Individual Insureds**.

(l)  **"Individual Insured(s)"** means an **Individual Insured**, as that term is defined within each **Coverage Section**.

(m)  **"Insurer"** means the entity listed in Item 8 of the Declarations.

(n)  **"Insured(s)"** means an **Insured**, as that term is defined within each **Coverage Section**.

(o)  **"Loss"** means **Loss**, as that term is defined within each **Coverage Section**.

(p)  **"Named Organization"** means the **Organization** designated in Item 1 of the Declarations.

(q)  **"Non-Indemnifiable Loss"** means **Loss** for which an **Organization** has neither indemnified nor is permitted or required to indemnify an **Individual Insured**.

(r)  **"Organization"** means: (1) the **Named Organization**; (2) any **Subsidiary** thereof; and (3) any **Affiliate** thereof listed by endorsement to this policy, but solely with respect to the **Coverage Sections** indicated on such endorsement.

(s)  **"Outside Entity"** means any not-for-profit organization under section 501(c) of the Internal Revenue Code of 1986 (as amended), other than a **Subsidiary** or listed **Affiliate**.

(t)  **"Outside Entity Executive"** means any director, trustee, trustee emeritus or governor (or equivalent position) of the **Organization** who is or was acting at the specific request or direction of the **Organization** as a director, trustee, trustee emeritus or governor of an **Outside Entity**. It is understood and agreed that, in the event of a disagreement between the **Organization** and an individual as to whether such individual was acting "at the specific request or direction of the **Organization**," this policy shall abide by the determination of the **Organization** on this issue and such determination shall be made by written notice to the **Insurer** within ninety (90) days after the **Claim** is first reported to the **Insurer** pursuant to the terms of the policy. In the event no determination is made within such period, this policy shall apply as if the **Organization** determined that such **Individual Insured** was not acting at the **Organization's** specific request or direction.

(u)  **"Plan"** means **Plan**, as that term is defined within the FLI Coverage Section.

(v)  **"Policy Aggregate Limit of Liability"** means the **Policy Aggregate Limit of Liability** stated in Item 7(a) of the Declarations.

(w)  **"Policy Period"** means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of cancellation of this policy.

(x)  **"Pollutants"** means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and Waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

(y)  **"Property Damage"** means damage to, or destruction of tangible or intangible property, including the loss of use thereof, or the loss of use of tangible or intangible property which has not been damaged or destroyed.

(z)  **"Related Wrongful Act"** means a **Wrongful Act** which is the same, related or continuous, or **Wrongful Act** which arises from a common nucleus of facts. **Claims** can allege **Related Wrongful Acts** regardless of whether such **Claims** involve the same or different claimants, **Insureds** or legal causes of action.

(aa)  **"Retaliation"** means a retaliatory act of an **Insured** alleged to be in response to any of the following activities: (1) the disclosure or threat of disclosure by an **Employee** to a superior or to any governmental agency of any act by an **Insured** which is alleged to be a violation of any federal, state, local or foreign law,

© All rights reserved.

Case ID: 211100640

common or statutory, or any rule or regulation promulgated thereunder; (2) the actual or attempted exercise by an **Employee** of any right that such **Employee** has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (3) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or (4) Employee strikes.

(bb) "**Separate Limit of Liability**" means each **Separate Limit of Liability**, if any, stated in Item 3 of the Declarations.

(cc) "**Shared Limit of Liability**" means each **Shared Limit of Liability**, if any, stated in Item 3 of the Declarations, which limit of liability shall be shared between all of the **Coverage Sections** which are listed below such **Shared Limit of Liability** in the Declarations.

(dd) "**Subsidiary**" means:

With respect to all **Coverage Sections** (other than the Crime Coverage Section):

(i) any organization of which, on or before the inception date of the **Policy Period**, the **Organization** owns more than fifty percent (50%) of the voting interest, either directly, or indirectly through one or more of its **Subsidiaries**, or has, on or before the inception of the **Policy Period**, the right to elect or appoint more than fifty percent (50%) of the voting directors, or trustees, either directly or indirectly through one or more of its **Subsidiaries**;

(ii) automatically any not-for-profit organization which becomes a **Subsidiary** during the **Policy Period** and of which the book value of such entity's assets determined in accordance with Generally Accepted Accounting Principles ("GAAP") totals less than 30% of the similarly calculated assets of the **Named Organization** as of the inception date of the **Policy Period**; or

(iii) any for-profit organization which becomes a **Subsidiary** during the **Policy Period** and of which the book value of such entity's assets determined in accordance with "GAAP" totals less than 20% of the similarly calculated assets of the **Named Organization** as of the inception date of the **Policy Period**.

With regard to subparagraphs (ii) and (iii) above, the **Named Organization** shall provide the **Insurer** with full particulars of the **Subsidiary** before the end of the **Policy Period**.

Any organization which becomes a **Subsidiary** during the **Policy Period**, but which exceeds the asset limitations stated in subparagraphs (ii) or (iii) above, shall be provided coverage under this policy, but only upon the condition that within 90 days after the date of its becoming a **Subsidiary**, the **Named Organization** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium or amendment of the provisions of this policy required by the **Insurer** relating to such new **Subsidiary**. Further, the coverage as shall be afforded to the new **Subsidiary** is conditioned upon the **Named Organization** paying when due any additional premium required by the **Insurer** relating to such new **Subsidiary**.

An organization becomes a **Subsidiary** when the **Named Organization** owns more than fifty percent (50%) of the voting interest, either directly, or indirectly through one or more of its **Subsidiaries**, or has, on or before the inception date of the **Policy Period**, the right to elect or appoint more than fifty percent (50%) of the voting directors, or trustees, either directly or indirectly through one or more of its **Subsidiaries**.

In all events, such coverage as is afforded under this policy with respect to a **Claim** made against any **Subsidiary**, or any **Individual Insured** of a **Subsidiary**, shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time that such **Subsidiary** became a **Subsidiary** and prior to the time that such **Subsidiary** ceased to be a **Subsidiary**.

(ee) "**Wrongful Act**" means a **Wrongful Act**, as that term is defined within each **Coverage Section**.

© All rights reserved.

Case ID: 211100640

## 3. EXTENSIONS

Subject otherwise to the terms hereof, this policy shall cover **Loss** arising from any **Claims** made against (i) the estates, heirs or legal representatives of deceased **Individual Insureds**, and the legal representatives of **Individual Insureds** in the event of an **Individual Insured's** incompetency, insolvency or bankruptcy, who were **Individual Insureds** at the time the **Wrongful Acts** upon which such **Claims** are based were committed; and (ii) the lawful spouse or **Domestic Partner** of an **Individual Insured** for all **Claims** arising solely out of his or her status as the spouse or **Domestic Partner** of an **Individual Insured**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Individual Insured** and the spouse or **Domestic Partner** or property transferred from the **Individual Insured** to the spouse or **Domestic Partner**; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** of the spouse or **Domestic Partner**, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Individual Insured**, subject to the policy's terms, conditions and exclusions.

## 4. EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim** made against an **Insured**:

(a)  arising out of, based upon or attributable to the gaining of any profit or advantage to which any final adjudication establishes the **Insured** was not legally entitled;

(b)  alleging, arising out of, based upon or attributable to the facts alleged, or to the same or **Related Wrongful Act** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(c)  alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation; or the alleging of any **Wrongful Act** which is the same or a **Related Wrongful Act** to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(d)  alleging, arising out of, based upon, attributable to or in any way involving, directly or indirectly, **Bodily Injury** or **Property Damage**; provided, however, that with respect to the FLI Coverage Section only, this exclusion shall not apply to **Defense Costs** incurred in the defense of a **Claim** alleging a **Breach of Fiduciary Duty**;

(e)  alleging, arising out of, based upon, attributable to or in any way involving, directly or indirectly:

  (1)  the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or

  (2)  any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**,

including, but not limited to, a **Claim** alleging damage to the **Organization** or its members;

(f)  for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state or local statutory law or common law; provided, however, that:

  (1)  with respect to the EPL Coverage Section only, this exclusion shall not apply to (i) a **Claim** arising out of a violation of the Equal Pay Act, or (ii) **Loss** arising from a **Claim** for **Retaliation**; or

  (2)  with respect to the FLI Coverage Section only, this exclusion shall not apply to a **Claim** arising out of a violation of **Employee Benefit Law**;

(g)  alleging, arising out of, based upon, attributable to or in any way involving, directly or indirectly, the refusal, failure or inability of any **Insured(s)** to pay wages or overtime pay for services rendered (hereinafter, "Earned Wages") (as opposed to tort-based back pay or front paydamages) or for improper

© All rights reserved.

Case ID: 211100640

payroll deductions taken by any **Insured(s)** from any **Employee(s)** or purported **Employee(s)**, including, but not limited to, (i) any unfair business practice claim alleged because of the failure to pay Earned Wages, or (ii) any **Claim** seeking Earned Wages because any **Employee(s)** or purported **Employee(s)** was improperly classified or mislabeled as "exempt";

(h) alleging, arising out of, based upon or attributable to any obligation pursuant to any workers' compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar benefits; provided, however, that this exclusion shall not apply:

    (1) with respect to the EPL Coverage Section only, to **Loss** arising from a **Claim** for **Retaliation**; or

    (2) to the extent coverage is afforded pursuant to FLI Coverage Section only;

For the purpose of determining the applicability of the Exclusions 4(a), 4(d), 4(e), 4(f), 4(g) and 4(h) above: (1) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Individual Insured**; and (2) only facts pertaining to and knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer (or equivalent positions) of the **Organization** shall be imputed to the **Organization**.

This Clause 4. **EXCLUSIONS** shall not be applicable to **Crisis Management Loss** (as such term is defined in the D&O Coverage Section).

5. **LIMIT OF LIABILITY**

(a) With respect to all **Coverage Sections**, other than the Crime Coverage, the following shall apply:

**POLICY AGGREGATE LIMIT OF LIABILITY (FOR ALL LOSS UNDER THIS POLICY COMBINED - INCLUDING DEFENSE COSTS**

The **Policy Aggregate Limit of Liability** stated in Item 7(a) of the Declarations is the maximum limit of the **Insurer's** liability for all **Loss** under all **Coverage Sections** combined, arising out of all **Claims** first made against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable); however, the **Policy Aggregate Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability** for the **Policy Period**. Further, a **Claim** which is made subsequent to the **Policy Period** or **Discovery Period** (if applicable), which pursuant to Clause 7(b) or 7(c) is considered made during the **Policy Period** or **Discovery Period**, shall also be subject to the **Policy Aggregate Limit of Liability** stated in Item 7(a) of the Declarations and subject to the applicable **Separate Limit of Liability**, if any.

If **Separate Limits of Liability** are stated in Item 3 of the Declarations, then each such **Separate Limit of Liability** shall be the maximum limit of the **Insurer's** liability for all **Loss** arising out of all **Claims** first made against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable) with respect to the applicable **Coverage Section** as stated on the Declarations; provided, however, the **Separate Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Separate Limit of Liability** for the **Policy Period**. The **Separate Limits of Liability** shall be part of and not in addition to the **Policy Aggregate Limit of Liability** for all **Loss** under this policy as stated in Item 7(a) of the Declarations and shall in no way serve to increase the **Insurer's Limit of Liability** as therein stated.

If **Shared Limits of Liability** are stated in Item 3 of the Declarations, then each such **Shared Limit of Liability** shall be the maximum limit of the **Insurer's** liability for all **Loss** arising out of all **Claims** first made against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable) with respect to all **Coverage Sections** for which such **Shared Limit of Liability** is applicable, as indicated on the Declarations; provided, however, with respect to all **Coverage Sections** that have a **Shared Limit of Liability**, the **Shared Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Shared Limit of Liability** for the **Policy Period**. Any **Shared Limit of Liability** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability** for all **Loss** under this policy as stated in Item 7(a) of the Declarations and shall in no way serve to increase the **Policy Aggregate Limit of Liability** as therein stated.

© All rights reserved.    Case ID: 211100640

**Defense Costs are not payable by the Insurer in addition to the Policy Aggregate Limit of Liability or any Separate Limit of Liability or Shared Limit of Liability. Defense Costs are part of Loss and as such are subject to the Policy Aggregate Limit of Liability for Loss and any applicable Separate Limit of Liability or Shared Limit of Liability. Amounts incurred for Defense Costs shall be applied against the Retention amount.**

(b) Solely with respect to the Crime Coverage Section, the following shall apply:

The most the **Insurer** will pay for **Loss** in any one **Occurrence**, as defined within the Crime Coverage Section, is the applicable **Per Occurrence Limit of Liability** shown in Item 5 of the Declarations.

## 6.  RETENTION/DEDUCTIBLE CLAUSE

(a) With respect to all **Coverage Sections** other than the Crime Coverage Section, the following shall apply:

The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amount stated in Item 3 of the Declarations, such Retention amount to be borne by the **Organization** and/or the **Insureds** and shall remain uninsured, with regard to: (i) all **Indemnifiable Loss**; and (ii) **Loss** of the **Organization**. A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Acts**. In the event a **Claim** triggers more than one amount stated in Item 3 of the Declarations, only the highest such amount shall apply, which amount shall apply to all **Loss** under such **Claim**.

Notwithstanding the foregoing, with respect to any **Crisis Management Event** (as defined in the D&O Coverage Section), the **Insurer** shall only be liable for the amount of **Crisis Management Loss** (as defined in the D&O Coverage Section) arising from a **Crisis Management Event** (as defined in the D&O Coverage Section) which is in excess of the applicable Retention stated in Item 3 of the Declarations, such Retention amount to be borne by the **Organization** and shall remain uninsured, with regard to all **Crisis Management Loss** (as defined in the D&O Coverage Section).

In the event an **Organization** refuses to pay an applicable Retention due to **Financial Insolvency**, then the **Insurer** shall commence advancing **Loss** within the Retention, subject to the other terms, conditions and exclusions of this policy, provided that (i) the **Insurer** shall be entitled to recover the amount of **Loss** advanced within the Retention from the **Organization** pursuant to Clause 10. SUBROGATION, of this General Terms and Conditions; and (ii) the **Organization** hereby agrees to indemnify the **Insureds** to the fullest extent permitted by law taking all steps necessary in furtherance thereto, including the making in good faith of any required application for court approval and the passing of any required corporate resolution or the execution of any contract. The **Named Organization** and all **Subsidiaries** and **Affiliates** will be conclusively deemed to have indemnified the **Individual Insureds** to the extent that the **Organization** is permitted or required to indemnify them pursuant to law, common or statutory, or contract, or the charter or by-laws of the **Organization**.

(b) Solely with respect to the Crime Coverage Section, the following shall apply:

The **Insurer** will not pay for **Loss** in any one **Occurrence**, as defined within the Crime Coverage Section, unless the amount of loss exceeds the applicable Deductible Amount shown in Item 5 of the Declarations. The **Insurer** will then pay the amount of **Loss** in excess of the Deductible Amount, up to the applicable **Per Occurrence Limit of Liability**. In the event more than one Deductible Amount could apply to the same loss, only the highest Deductible Amount may be applied.

© All rights reserved.
Case ID: 211100640

**7.  NOTICE/CLAIM REPORTING PROVISIONS**

**Notice hereunder shall be given in writing to AIG Property Casualty, Financial Lines Claims, P.O. Box 25947, Shawnee Mission, KS 66225 to the attention of "c-Claim Department."  Notice shall include and reference this policy number as indicated in the Declarations, as well as the Coverage Section(s) under which the Claim is being noticed. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.**

1.  With respect to all **Coverage Sections**, other than the Crime Coverage Section, the following shall apply:

    (a)  The **Insureds** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the Insurer of any **Claim** made against an **Insured** or any **Crisis Management Event** (as defined in the D&O Coverage Section) as soon as practicable and either:

        (1)  anytime during the **Policy Period** or during the **Discovery Period** (if applicable); or

        (2)  within 30 days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** is reported no later than 30 days after the date such **Claim** was first made against an **Insured**.

    (b)  If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause 7(a) above, then any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** for which such notice has been given, or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged in the **Claim** of which such notice has been given, shall be considered made at the time such notice was given.

    (c)  If during the **Policy Period** or during the **Discovery Period** (if applicable) the **Insureds** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against the **Insureds** and shall give written notice to the **Insurer** of the circumstances and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

2.  Solely with respect to the Crime Coverage Section, the following shall apply:

    (a)  Duties in The Event of Loss:

        After any **Insured** discovers a loss or a situation that may result in loss of or damages to **Money**, **Securities** or **Other Property**, the **Insured** must:

        (1)  Notify the **Insurer** as soon as possible, but no later than 60 days after discovery of a loss or a situation that may result in loss of or damages to **Money**, **Securities** or **Other Property**. If the **Insured** has reason to believe that any loss (except for loss covered under Insuring Agreements A or B of the Crime Coverage Section) involves a violation of law, the **Insured** must also notify the local law enforcement authorities.
        (2)  Submit to an examination under oath at the **Insurer's** request and provide the **Insurer** with a signed statement of the **Insured's** answers.
        (3)  Give the **Insurer** a detailed, sworn proof of loss within 120 days of the discovery of a loss or a situation that may result in loss of or damages to **Money**, **Securities** or **Other Property**, provided, however, that such proof of loss shall not be required solely in the event the **Insured** elects to have an independent Investigative Specialist investigate the facts and determine the quantum of loss pursuant to Clause 4.A.4 of the Crime Coverage Section and such report is issued pursuant to the terms and conditions of that Clause.
        (4)  Cooperate with the **Insurer** in the investigation and settlement of any loss.

© All rights reserved.

Case ID: 211100640

8. **CANCELLATION CLAUSE**

This policy may be canceled by the **Named Organization** at any time only by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer** or its authorized agent. If this policy is canceled by the **Named Organization**, the **Insurer** shall retain the customary short rate proportion of the premium herein.

This policy may be canceled by or on the behalf of the **Insurer** only in the event of nonpayment of premium by the **Named Organization**. In the event of nonpayment of premium by the **Named Organization**, the **Insurer** may cancel this policy by delivering to the **Named Organization** or by mailing to the **Named Organization**, by registered, certified or other first class mail, at the **Named Organization's** address as shown in Item 1 of the Declarations, written notice stating when, not less than thirty (30) days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

9. **CHANGE IN CONTROL OF NAMED ORGANIZATION**

With respect to all **Coverage Sections**, other than the Crime Coverage Section, the following shall apply:

If during the **Policy Period**:

a. the **Named Organization** shall consolidate with or merge into, or sell all or substantially all of its assets to, any other person or entity, or group of persons or entities acting in concert;

b. any person or entity, or group of persons or entities, acting in concert shall acquire an amount of the voting interest representing more than fifty percent (50%) of the voting power for the election or appointment of directors, trustees or members of the board of managers of the **Named Organization**, or acquires the voting rights of such an amount of such interest; or

c. the **Named Organization** shall change from not-for-profit to for-profit status,

(any of the above events herein referred to as the "**Transaction**")

then this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the **Transaction**. This policy may not be canceled after the effective time of the **Transaction** and the entire premium for this policy shall be deemed earned as of such time. The **Named Organization** shall also have the right to an offer by the Insurer of a **Discovery Period** described in the Clause in each applicable **Coverage Section** entitled "Discovery Clause."

The **Named Organization** shall give the **Insurer** written notice of the **Transaction** as soon as practicable, but not later than thirty (30) days after the effective date of the **Transaction**.

10. **SUBROGATION**

With respect to all **Coverage Sections**, other than the Crime Coverage Section, the following paragraph shall apply:

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery thereof, and the **Insureds** shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of such documents necessary to enable the **Insurer** to effectively bring suit in the name of any **Insureds**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Individual Insured** under this policy unless such **Individual Insured** has been convicted of a criminal act, or been determined by a final adjudication to have committed a dishonest or fraudulent act or to have obtained any profit or advantage to which such **Individual Insured** was not legally entitled.

© All rights reserved.
Case ID: 211100640

Solely with respect to the FLI Coverage Section, in the event this policy has been purchased by an **Insured** other than a **Plan**, the **Insurer** shall have no right of recourse against an **Insured**. Notwithstanding the foregoing, the **Insurer** shall have a right of recourse against an **Insured** arising out of a **Claim** by an **Insured** against another **Insured** unless such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, assistance of or active participation by the **Insured** claimed against.

## 11. OTHER INSURANCE AND INDEMNIFICATION

Solely with respect to the EPL Coverage Section, unless expressly written to be excess over other applicable insurance, it is intended that the insurance provided by the EPL Coverage Section shall be primary.

With respect to all **Coverage Sections** other than the EPL Coverage Section, such insurance as is provided by this policy shall apply only as excess over any valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the **Policy Aggregate Limit of Liability** provided by this policy. This policy shall be specifically excess of any other policy pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

In the event of a **Claim** against an **Insured** arising out of his or her service as an **Outside Entity Executive**, or a **Claim** against an **Insured** for the **Insured's** liability with respect to a leased **Employee** as described in the definition of **"Employee"** in the D&O Coverage Section or the EPL Coverage Section, as applicable, coverage as is afforded by the D&O Coverage Section and the EPL Coverage Section shall be specifically excess of indemnification provided by such **Outside Entity** or such leasing company and any insurance provided to such **Outside Entity** or such leasing company.

Further, in the event other insurance is provided to an **Outside Entity** or leasing company referenced in the above paragraph, or is provided under any pension trust or employee benefit plan fiduciary liability insurance policy, and such other insurance is provided by the **Insurer** or any member company of AIG Property Casualty Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the **Limit of Liability** or failure to submit a notice of a **Claim**), then the **Insurer's** maximum aggregate **Limit of Liability** for all **Loss** combined in connection with a **Claim** covered, in part or in whole, by this policy and such other insurance policy issued by AIG, shall not exceed the greater of the **Policy Aggregate Limit of Liability** or any applicable **Separate Limit of Liability** or applicable **Shared Limit of Liability** of this policy or the limit of liability of such other AIG insurance policy.

## 12. NOTICE AND AUTHORITY

It is agreed that the **Named Organization** shall act on behalf of the **Subsidiaries** and all **Insureds** with respect to the giving of notice of **Claim** or giving and receiving notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining to tender the defense of a **Claim** to the **Insurer** and the exercising or declining of any right to a **Discovery Period**.

## 13. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**, which shall be in the sole and absolute discretion of the **Insurer**.

## 14. ACTION AGAINST INSURER

With respect to all **Coverage Sections**, other than the Crime Coverage, the following shall apply:

No action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **Insureds'** obligation to pay shall have been finally determined either by judgment against the **Insureds** after actual trial or by written agreement of the **Insureds**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this

94204 (3/07)    9    © All rights reserved.

Case ID: 211100640

policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against the **Insureds** to determine the **Insureds'** liability, nor shall the **Insurer** be impleaded by the **Insureds** or their legal representatives. Bankruptcy or insolvency of the **Insureds** or of their estates shall not relieve the **Insurer** of any of its obligations hereunder.

### 15. REPRESENTATIONS AND SEVERABILITY

Solely with respect to the D&O Coverage Section and the EPL Coverage Section, the following shall apply:

In granting coverage under this policy, it is agreed that the **Insurer** has relied upon the statements, warranties and representations contained in the application for this policy (including materials submitted thereto and, if this is a renewal application, all such previous policy applications for which this policy is a renewal) as being accurate and complete. All such statements, warranties and representations are the basis for this policy, are material to the risk assumed by the Insurer and are to be considered as incorporated into this policy.

The **Insureds** agree that in the event that such statements, warranties and representations are not accurate and complete, then the coverage provided by this policy shall be deemed void *ab initio* solely with respect to any of the following **Insureds**:

(1) solely with respect to Loss other than **Non-Indemnifiable Loss**, any **Individual Insured** who knew as of the inception date of the **Policy Period** the facts that were not accurately and completely disclosed in the application;

(2) with respect to the D&O Coverage Section only, any **Organization**, under Clause 1. Insuring Agreements, COVERAGE B, to the extent it indemnifies any **Individual Insured** referenced in subparagraph (1) above;

(3) with respect to the D&O Coverage Section only, any **Organization**, under Clause 1. Insuring Agreement, COVERAGE C, if any past or present chief executive officer, chief operating officer or chief financial officer (or any equivalent position) of an **Organization** knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed in the application;

(4) with respect to the EPL Coverage Section only, any **Organization**, to the extent it indemnifies any **Individual Insured** referenced in subparagraph (1) above; and

(5) with respect to the EPL Coverage Section only, any **Organization**, if any past or present chief executive officer, chief operating officer, chief financial officer or director of human resources (or any equivalent position) of an **Organization** knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed in the application,

whether or not such **Individual Insured** knew that such facts were not accurately and completely disclosed in the application.

Except as provided in (1) through (5) above, no **Individual Insured's** knowledge shall be imputed to any other **Insured**.

Solely with respect to any **Non-Indemnifiable Loss** of any **Individual Insured**, under no circumstances shall the coverage provided by this policy be deemed void, whether by rescission or otherwise, but such coverage will be subject to all other terms, conditions and exclusions of the policy.

### 16. TERRITORY

(a) With respect to all **Coverage Sections**, other than the Crime Coverage Section, the following shall apply:

WORLDWIDE TERRITORY

Where legally permissible, this policy shall apply to any **Claim** made against any **Insured** anywhere in the world, with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

© All rights reserved.

Case ID: 211100640

(b)  Solely with respect to the Crime Coverage Section, the following shall apply:

TERRITORY

This policy covers acts committed or events occurring within the United States of America (including its territories and possessions) and Puerto Rico.

## 17. HEADINGS

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

© All rights reserved.

Case ID: 211100640



### National Union Fire Insurance Company of Pittsburgh, PA

A capital stock company

## Not-For-Profit Risk Protector®

### Directors, Officers And Not-For-Profit Organization Liability
### Coverage Section One
### ("D&O Coverage Section")

**Notice:** **Pursuant to Clause 1 of the General Terms and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and are expressly applicable to this Coverage Section, unless otherwise explicitly stated to the contrary in either the General Terms and Conditions or in this Coverage Section** .

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by application, including its attachments and the material incorporated therein, which form a part of this policy, the **Insurer** agrees as follows:

## 1. INSURING AGREEMENTS

### COVERAGE A: INDIVIDUAL INSURED INSURANCE

This policy shall pay on behalf of each and every **Individual Insured Loss** arising from a **Claim** first made against such **Individual Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any actual or alleged **Wrongful Act** of such **Individual Insured**, except when and to the extent that the **Organization** has indemnified the **Individual Insured**. The **Insurer** shall, in accordance with and subject to Clause 5 of this **Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

### COVERAGE B: ORGANIZATION INDEMNIFICATION REIMBURSEMENT INSURANCE

This policy shall pay on behalf of the **Organization Loss** arising from a **Claim** first made against an **Individual Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any actual or alleged **Wrongful Act** of such **Individual Insured**, but only when and to the extent that the **Organization** has indemnified such **Individual Insured** for such **Loss** pursuant to law, common or statutory, or contract, or the Charter or By-laws of the **Organization** duly effective under such law which determines and defines such rights of indemnity. The **Insurer** shall, in accordance with and subject to Clause 5 of this **Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

### COVERAGE C: ORGANIZATION ENTITY COVERAGE

This policy shall pay on behalf of the **Organization Loss** arising from a **Claim** first made against the **Organization** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any actual or alleged **Wrongful Act** of the **Organization** . The **Insurer** shall, in accordance with and subject to Clause 5 of this **Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

### COVERAGE D: CRISISFUND® INSURANCE

This policy shall pay the **Crisis Management Loss** of an **Organization** solely with respect to a **Crisis Management Event** occurring during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, up to the amount of the **Crisis Management Fund**; provided that payment of any **Crisis Management Loss** under this policy shall not waive any of the **Insurer's** rights under this policy or at law. Coverage D shall apply regardless of whether a **Claim** is ever made against an **Insured** arising from such **Crisis Management Event** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**.

### DEFENSE PROVISIONS

The **Insurer** does not assume any duty to defend; provided, however, the **Named Organization** may at its sole option, and in accordance with Clause 5 of this **Coverage Section**, tender to the **Insurer** the defense of a **Claim**

© All rights reserved.

Case ID: 211100640

for which coverage is provided by this policy. Regardless of whether the defense is so tendered, the **Insurer** shall advance **Defense Costs** (excess of the Retention amount) of such **Claim** prior to its final disposition. Selection of counsel to defend a **Claim** shall be made in accordance with Clause 6 of this Coverage Section.

## 2. DEFINITIONS

(a) **"Claim"** means:

    (1) a written demand for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute of limitations); or

    (2) a civil, criminal, regulatory or administrative proceeding for monetary, non-monetary or injunctive relief which is commenced by:

        (i) service of a complaint or similar pleading;

        (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or

        (iii) receipt or filing of a notice of charges.

(b) **"Crisis Management Event"** means **Crisis Management Event**, as that term is defined in Appendix B attached to this policy.

(c) **"Crisis Management Fund"** means the dollar amount set forth in Item 7(b) of the Declarations.

(d) **"Crisis Management Loss"** means **Crisis Management Loss**, as that term is defined in Appendix B attached to this policy.

(e) **"Crisis Management Services"** means **Crisis Management Services**, as that term is defined in Appendix B attached to this policy.

(f) **"Employee(s)"** means any past, present or future employee of the **Organization**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee or volunteer of the **Organization** in his or her capacity as such. An individual who is leased to the **Organization** shall also be an **Employee**, but only if the **Organization** provides indemnification to such leased individual in the same manner as is provided to the **Organization's** employees. Any other individual who is contracted to perform work for the **Organization**, or who is an independent contractor for the **Organization** shall also be an **Employee**, but only if the **Organization** provides or is required to provide indemnification to such individual in the same manner as provided to the **Organization's** employees, pursuant to a written contract.

(g) **"Individual Insured(s)"** means a past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, executive director, department head, committee member (of a duly constituted committee of the **Organization**), staff or faculty member (salaried or non-salaried), or **Employee** of the **Organization**, or **Outside Entity Executive**. Coverage will automatically apply to all new persons who become **Individual Insureds** after the inception date of this policy.

(h) **"Insured(s)"** means the **Organization** and all **Individual Insureds**.

(i) **"Loss"** means damages, judgments, settlements, pre- and post-judgment interest, **Defense Costs** and **Crisis Management Loss**; however, **Loss** shall not include: (1) any amount for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**; (2) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed; (3) civil or criminal fines or penalties; (4) taxes or tax penalties (whether imposed by federal, state, local or other governmental authority);

Subject to the other terms, conditions and exclusions of this policy, **Loss** shall include **Defense Costs** for items specifically excluded from **Loss** pursuant to subparagraphs (1)-(4), including, without limitation, **Defense Costs** incurred in connection with a **Claim** seeking an assessment of taxes, initial taxes, additional taxes, tax deficiencies, excise taxes or penalties pursuant to the following sections of the Internal Revenue Code of 1986 (as amended):

© All rights reserved.

Case ID: 211100640

Section 4911 (tax on excess expenditures to influence legislation);
Section 4940 (a) (tax on net investment income of tax-exempt foundations);
Section 4941 (taxes on self-dealing);
Section 4942 (taxes on failure to distribute income);
Section 4943 (taxes on excess business holding);
Section 4944 (taxes on investments which jeopardize charitable purpose);
Section 4945 (taxes on taxable expenditures);
Section 6652 (c) (1) (A) and (B) (penalties for failure to file certain information returns or registration statements);
Section 6655 (a) (1) (penalties for failure to pay estimated income tax); and
Section 6656 (a) and (b) (penalties for failure to make deposit of taxes).

**Loss** shall also include any "**Excess Benefits**" penalty assessed in the amount of 10% by the Internal Revenue Service ("IRS") against any **Insured(s)** for management's involvement in the award of an "**Excess Benefit**" and the **Defense Costs** attributable thereto. **Loss** shall specifically exclude: (1) any 25% penalty assessed by the IRS against an **Insured** deemed to have received an **Excess Benefit**; (2) **Defense Costs** incurred to defend any **Insured** if it has been in fact determined that such individual received an **Excess Benefit**; and (3) any 200% penalty assessed by the IRS for failure to correct the award of an **Excess Benefit**. The term "**Excess Benefits**" means an excess benefit as defined in the Taxpayer Bill of Rights Act, 2, 26 U.S. 4958.

**Loss** shall also specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to Exclusion (a) of this **Coverage Section** and Exclusion (a) of the General Terms and Conditions) punitive, exemplary and multiple damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages. For purposes of such coverage, "applicable law" includes, but is not limited to, the following jurisdictions: (a) where the **Wrongful Act** actually or allegedly took place; (b) where the damages are awarded; (c) where the **Named Organization** resides, is incorporated or has its principal place of business; and (d) where the **Insurer** is incorporated or has its principal place of business.

(j)   "**Material Effect**" means **Material Effect**, as that term is defined in Appendix B attached to this policy.

(k)   "**Settlement Opportunity**" means an **Insurer** recommended settlement that is within the **Policy Aggregate Limit of Liability**, **Separate Limit of Liability** or **Shared Limit of Liability**, if any, and that is acceptable to the claimant.

(l)   "**Wrongful Act**" means:

(1)   with respect to **Individual Insureds**, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Insureds** in his/her respective capacities as such, or any matter claimed against such **Individual Insured** solely by reason of his/her status as an **Individual Insured** of the **Organization**;

(2)   with respect to the **Organization** under Coverage C, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by or on behalf of the **Organization**;

(3)   with respect to **Outside Entity Executives**, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as such;

(4)   with respect to both the **Individual Insureds** and the **Organization** and subject to subparagraphs (1), (2) and (3) above, "**Wrongful Act**" shall specifically include:

(a)   violation of the Sherman Antitrust Act or similar federal, state or local statutes or rules;
(b)   libel, slander, defamation or publication or utterance in violation of an individual's right of privacy;

© All rights reserved.
Case ID: 211100640

(c) wrongful entry or eviction or other invasion of the right of occupancy;
(d) false arrest or wrongful detention;
(e) plagiarism; and
(f) infringement of copyright or trademark or unauthorized use of title.

## 3. EXCLUSIONS

In addition to the exclusions set forth in Clause 4 of the General Terms and Conditions, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

(a) arising out of, based upon or attributable to the committing of any criminal or deliberate fraudulent act if any final adjudication establishes that such criminal or deliberate fraudulent act was committed;

[The **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured** for the purpose of determining the applicability of this exclusion.]

(b) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Individual Insured** serving in his/her capacity as a director, officer, trustee, trustee emeritus, governor or **Employee** (or equivalent position) of any entity that is not the **Organization** or an **Outside Entity**, or by reason of his/her status as a director, trustee, trustee emeritus, governor or **Employee** (or equivalent position) of such other entity;

(c) which is brought by or on behalf of the **Organization** against any **Individual Insured**; provided however, this exclusion shall not apply to any derivative **Claim** made on behalf of the **Organization** by a member, an attorney general or any other such representative party if such action is brought and maintained independently of and without the solicitation of or assistance of, or active participation of or intervention of any **Individual Insured** or the **Organization** or any **Affiliate** thereof;

(d) for any **Wrongful Act** arising out of an **Individual Insured** serving as an **Outside Entity Executive**, if such **Claim** is brought by the **Outside Entity** or by any director, officer, trustee, trustee emeritus or governor thereof;

(e) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of an **Insured** under any express contract or agreement; provided, however, that this exclusion shall not apply to liability which would have attached in the absence of such express contract or agreement;

(f) alleging, arising out of, or in any way relating to any purchase or sale of securities by the **Named Organization**, **Subsidiary** or **Affiliate** or **Claims** brought by securities holders of the **Organization** in their capacity as such; provided, however, this exclusion shall not apply to the issuance by the **Organization** of tax exempt bond debt or **Claims** brought by tax exempt bond debt holders;

(g) alleging, arising out of, based upon, or attributable to, directly or indirectly resulting from, in consequence of, or in any way involving employment of any individual or any employment practice (including but not limited to wrongful dismissal, discharge or termination, discrimination, harassment, retaliation or other employment-related claim); and

(h) alleging, arising out of, based upon, or attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged harassment (including sexual harassment, whether "quid pro quo", hostile work environment or otherwise) or unlawful discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability), or the violation of the civil rights of a person relating to such harassment or discrimination, when such acts are alleged to be committed against anyone other than an **Individual Insured** or applicant for employment with the **Organization** or an **Outside Entity**, including, but not limited to, students, patients, members, customers and suppliers.

94207 (3/07)                                   4                    © All rights reserved.

Case ID: 211100640

This Clause 3 shall not be applicable to **Crisis Management Loss**.

**4.   LIMIT OF LIABILITY**

Clause 5 of the General Terms and Conditions is modified to the extent necessary to provide the following:

The maximum limit of the **Insurer's** liability for **Crisis Management Loss** arising from all **Crisis Management Events** combined occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be the amount set forth in Item 7(b) of the Declarations as the **Crisis Management Fund**. The **Crisis Management Fund** shall be the aggregate limit of the **Insurer's** liability under this policy for all **Crisis Management Events** regardless of the number of **Crisis Management Events** occurring during the **Policy Period** or the **Discovery Period** (if applicable). The **Crisis Management Fund** shall be part of, and not in addition to, the **Policy Aggregate Limit** of Liability stated in Item 7(a) of the Declarations of this policy or any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **Coverage Section** as stated in Item 3 of the Declarations, and will in no way serve to increase the **Insurer's Policy Aggregate Limit of Liability** or any **Separate Limit of Liability** or **Shared Limit of Liability** as stated therein.

**5.   DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

The **Insurer** does not assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them.

Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of any **Claim** to the **Insurer**, which right shall be exercised in writing by the **Named Organization** on behalf of all **Insureds** to the **Insurer** pursuant to the notice provisions of Clause 7 of the General Terms and Conditions. This right shall terminate if not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**, pursuant to Clause 7 of the General Terms and Conditions. Further, from the date the **Claim** is first made against the **Insureds** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of the **Insureds** or the **Insurer** with respect to such **Claim**. Provided that the **Insureds** have complied with the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent. The assumption of the defense of the **Claim** shall be effective upon written confirmation thereof sent by the **Insurer** to the **Named Organization**. Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense of such **Claim**, including, but not limited to, negotiating a settlement, subject to the provisions of this Clause 5. However, the **Insurer** shall not be obligated to defend such **Claim** after the **Policy Aggregate Limit of Liability** or **Separate Limit of Liability** or **Shared Limit of Liability**, if any, has been exhausted, or after an **Insured's** rejection of (or failure or refusal to accept within the time prescribed herein) a **Settlement Opportunity**.

When the **Insurer** has not assumed the defense of a **Claim** pursuant to this Clause 5, the **Insurer** shall advance nevertheless, excess of any applicable retention amount and at the written request of the **Insured**, **Defense Costs** prior to the final disposition of a **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured** or **Organization**, severally according to their respective interests, in the event and to the extent that each and every **Insured** or **Organization** shall not be entitled under the terms and conditions of this policy to payment of such **Loss**.

**The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer, when it has not assumed the defense of a Claim pursuant to this Clause 5, shall be entitled to effectively associate in the defense, the prosecution and the negotiation of any settlement of any Claim**

© All rights reserved.

Case ID: 211100640

that involves or appears reasonably likely to involve the **Insurer**; and provided further that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or Defense Costs, or any portion thereof, to the extent such **Loss** is not covered under the terms of this policy.

The **Insurer** shall have the right to fully and effectively associate with each and every **Organization** and **Individual Insured** in the defense of any **Claim** that involves, or appears reasonably likely to involve, the **Insurer**, including but not limited to negotiating a settlement. Each and every **Organization** and **Individual Insured** shall give the **Insurer** full cooperation and such information as it may reasonably require.

In the event the **Insured(s)** consent to a **Settlement Opportunity** within thirty (30) days of the date the **Insureds** are first made aware of the **Settlement Opportunity** (or in the case of a **Settlement Opportunity** which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made), then the **Organization's** applicable Retention amount shall be retroactively reduced by ten percent (10%) for such **Loss**. It shall be a condition to such reduction that all **Insureds** must consent to such settlement.

However, if a **Settlement Opportunity** arises and the **Insureds** do not consent to the settlement within the time prescribed above, the Retention amount shall remain the applicable amount set forth in Item 3 of the Declarations even if consent is given to a subsequent **Settlement Opportunity**.

Furthermore, in the event the **Insureds** do not consent to the first **Settlement Opportunity** within the time prescribed above, then, subject to the **Policy Aggregate Limit of Liability** and **Separate Limit of Liability** or **Shared Limit of Liability**, if any, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed: (1) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer**  ("**Settlement Opportunity Amount**"), plus (2) 50% of covered **Loss** in excess of such **Settlement Opportunity Amount**, it being a condition of this insurance that the remaining 50% of such **Loss** excess of the **Settlement Opportunity Amount** shall be carried by the **Organization** and the **Insureds** at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the **Settlement Opportunity Amount** exceeds the applicable Retention amount stated in Item 3 of the Declarations.

This Clause 5 shall not be applicable to **Crisis Management Loss**. Nevertheless, the **Insurer** does not, under this policy, assume any duty to defend.

## 6. PRE-AUTHORIZED DEFENSE ATTORNEYS

This Clause applies to all **Claims** under this **Coverage Section**. Affixed as Appendix A hereto and made a part of this policy is a list or lists of Panel Counsel law firms (herein "**Panel Counsel Firms**") from which a selection of legal counsel shall be made to conduct the defense of any **Claim(s)** against any **Insured(s)** pursuant to the terms set forth below.

In the event the **Insurer** has assumed the defense pursuant to Clause 5 of this **Coverage Section**, then the **Insurer** shall select a **Panel Counsel Firm** to defend the **Insureds**. In the event the **Insureds** are already defending the **Claim**, then the **Insureds** shall select a **Panel Counsel Firm** to defend the **Insureds**.

The selection of the **Panel Counsel Firm**, whether done by the **Insurer** or the **Insureds**, shall be from the list of **Panel Counsel Firms** designated for the type of **Claim** and shall be from the jurisdiction in which the **Claim** is brought. In the event a **Claim** is brought in a jurisdiction not included on the appropriate list(s), the selection shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the **Claim** is maintained or where the headquarters or State of formation of the **Named Organization** is located. In such instance, however, the **Insurer**  shall, at the written request of the **Named Organization**, assign a non-**Panel Counsel Firm** of the **Insurer's** choice in the jurisdiction in which the **Claim** is brought to function as "local counsel"on the **Claim** to assist the **Panel Counsel Firm**, which will function as "lead counsel" in conducting the defense of the **Claim**.

© All rights reserved.
Case ID: 211100640

With the express prior written consent of the **Insurer**, an **Insured** may select (in the case of the **Insured** defending the **Claim**), or cause the **Insurer** to select (in the case of the **Insurer** defending the **Claim**), a **Panel Counsel Firm** different from that selected by other **Insured** defendants if such selection is required due to an actual conflict of interest.

The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no change shall be made to the specific list attached to this policy during the **Policy Period** without the consent of the **Named Organization**.

## 7.  DISCOVERY CLAUSE

Except as indicated below, if the **Named Organization** shall cancel or the **Named Organization** or the **Insurer** shall refuse to renew this **Coverage Section**, then solely with respect to this **Coverage Section**, the **Named Organization** shall have the right to a period of one, two, three, four, five or six years or of unlimited duration following the effective date of such cancellation or nonrenewal upon payment of the respective "**Additional Premium Amount**" described below (herein referred to as the "**Discovery Period**") in which to give to the **Insurer** written notice of **Claims** first made against the **Insureds** during said **Discovery Period** for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the **Insurer** within thirty (30) days of the effective date of cancellation or nonrenewal.

The **Additional Premium Amount** for: (1) one year shall be 125% of the "full annual premium"; (2) two years shall be 175% of the "full annual premium"; (3) three years shall be 225% of the "full annual premium"; (4) four years shall be 250% of the "full annual premium"; (5) five years shall be 275% of the "full annual premium"; (6) six years shall be 300% of the "full annual premium"; and (7) a discovery period of unlimited duration shall be 325% of the "full annual premium". As used herein, "full annual premium" means the premium level in effect for this **Coverage Section** immediately prior to the end of the **Policy Period**.

In the event of a **Transaction**, as defined in Clause 9 of the General Terms and Conditions, the **Named Organization** shall have the right, within thirty (30) days before the end of the **Policy Period**, to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**) for a period of no less than six (6) years or for such longer or shorter period as the **Named Organization** may request. The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions and premium as the Insurer may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

## 8.  ORDER OF PAYMENTS

In the event of **Loss** arising from any **Claim(s)** for which payment is due under the provisions of this **Coverage Section** but which **Loss**, in the aggregate, exceeds the remaining available **Limit of Liability** of this **Coverage Section**, then the **Insurer** shall:

(i)   first pay such **Loss** for which coverage is provided under Coverage A of this **Coverage Section**, then with respect to whatever remaining amount of the **Limit of Liability** is available after payment of such **Loss**,

(ii)  then pay such **Loss** for which coverage is provided under Coverage B of this **Coverage Section**, and

(iii) then pay such **Loss** for which coverage is provided under Coverage C or Coverage D of this **Coverage Section**.

© All rights reserved.
Case ID: 211100640

In the event of **Loss** arising from a **Claim(s)** for which payment is due under the provisions of this **Coverage Section** (including those circumstances described in the first paragraph of this Section 8), the **Insurer** shall at the written request of the **Named Organization**:

(i) first pay such **Loss** for which coverage is provided under Coverage A of this **Coverage Section**, then

(ii) either pay or hold payment for such **Loss** for which coverage is provided under Coverage B, Coverage C or Coverage D of this **Coverage Section**.

In the event that the **Insurer** withholds payment under Coverage B, Coverage C or Coverage D of this **Coverage Section** pursuant to the above request, then the **Insurer** shall at any time in the future, at the request of the **Organization**, release such **Loss** payment to the **Organization**, or make such **Loss** payment directly to the **Individual Insured** in the event of covered **Loss** under any **Claim(s)** covered under this **Coverage Section** pursuant to Coverage A of this **Coverage Section**.

The bankruptcy or insolvency of any **Organization** or any **Individual Insured** shall not relieve the Insurer of any of its obligations to prioritize payment of covered **Loss** under this **Coverage Section**  pursuant to this Clause 8.

© All rights reserved.

Case ID: 211100640



### National Union Fire Insurance Company of Pittsburgh, PA

A capital stock company

### Not- For- Profit Risk Protector®
### Employment Practices Liability
### Coverage Section Two
### ("EPL Coverage Section")

**Notice:** Pursuant to Clause 1 of the General Terms and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and are expressly applicable to Coverage Section, unless otherwise explicitly stated to the contrary in either the General Terms and Conditions or in this Coverage Section .

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by application, including its attachments and the material incorporated therein, which form a part of this policy, the **Insurer** agrees as follows:

**1. INSURING AGREEMENT**

This policy shall pay the **Loss** of each and every **Insured** arising from a **Claim** first made against such **Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any **Wrongful Act**. The **Insurer** shall, in accordance with and subject to Clause 4 of this **Coverage Section** advance **Defense Costs** of such **Claim** prior to its final disposition.

**2. DEFINITIONS**

(a) **"Claim"** means:

(1) a written demand for monetary relief or non-monetary relief (including any request to toll or waive any statute of limitations); or

(2) a civil, administrative, regulatory or arbitration proceeding for monetary relief or non-monetary relief which is commenced by:
(i)   service of a complaint or similar pleading; or
(ii)  receipt or filing of a notice of charges.

The term **Claim** shall include an Equal Employment Opportunity Commission ("EEOC") or Office of Federal Contract Compliance Program ("OFCCP") (or similar federal, state or local agency) proceeding or investigation commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the **Insured**.

However, in no event shall the term **Claim** include any labor or grievance proceeding which is subject to a collective bargaining agreement.

(b) **"Employee"** means any past, present or future employee of the **Organization**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee or volunteer of the **Organization** in his or her capacity as such. An individual who is leased to the **Organization** shall also be an **Employee**, but only if the **Organization** provides indemnification to such leased individual in the same manner as is provided to the **Organization's** employees. Any other individual who is contracted to perform work for the **Organization**, or who is an independent contractor for the **Organization** shall also be an **Employee**, but only if the **Organization** provides or is required to provide indemnification to such individual, in the same manner as that provided to the **Organization's** employees, pursuant to a written contract.

(c) **"Employment Practices Violation"** means any actual or alleged:

(1) wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

(2) harassment (including sexual harassment, whether "quid pro quo", hostile work environment or otherwise);

© All rights reserved.

Case ID: 211100640

(3) discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability);

(4) **Retaliation**;

(5) employment-related misrepresentation(s) to an **Employee** or applicant for employment with the **Organization**;

(6) employment-related libel, slander, humiliation, defamation or invasion of privacy;

(7) wrongful failure to employ or promote;

(8) wrongful deprivation of career opportunity with the **Organization**, wrongful demotion or negligent **Employee** evaluation, including the giving of negative or defamatory statements in connection with an **Employee** reference;

(9) wrongful discipline;

(10) failure to grant tenure or practice privileges;

(11) failure to provide or enforce adequate or consistent **Organization** policies or procedures relating to any **Employment Practices Violation**; and

(12) violation of an individual's civil rights relating to any of the above.

but only if the **Employment Practices Violation** relates to an **Individual Insured**, or applicant for employment, with the **Organization** or an **Outside Entity**, whether direct, indirect, intentional or unintentional.

(d) "**Individual Insured(s)**" means a past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, executive director, department head, committee member (of a duly constituted committee of the **Organization**), staff or faculty member (salaried or non-salaried), or **Employee** of the **Organization**, and an **Outside Entity Executive**. Coverage will automatically apply to all new persons who become **Individual Insureds** after the inception date of this policy.

(e) "**Insured(s)**" means the **Organization** and any **Individual Insured**.

(f) "**Loss**" means damages (including front pay and back pay), judgments (including pre-judgment and post-judgment interest on that part of any covered judgment paid under this **Coverage Section**), settlements, statutory attorneys' fees and **Defense Costs**; however, **Loss** shall not include: (1) any amount for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**; (2) employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (3) civil or criminal fines or penalties; (4) taxes or tax penalties (whether imposed by federal, state, local or other governmental authority); (5) any liability or costs incurred by any **Insured** to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to a **Claim**; (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. **Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (1)-(6) above of this Definition, subject to the other terms, conditions and exclusions of this policy.

Notwithstanding the foregoing paragraph, "**Loss**" shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to Exclusion (a) of this **Coverage Section** and Exclusion (a) of the General Terms and Conditions) punitive, exemplary and multiple damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages. For purposes of such coverage, "applicable law" includes, but is not limited to, the following jurisdictions: (a) where the **Wrongful Act** actually or allegedly took place; (b) where the damages are awarded; (c) where the **Named Organization** resides, is incorporated or has its

© All rights reserved.
Case ID: 211100640

principal place of business; and (d) where the **Insurer** is incorporated or has its principal place of business.

(g) "**Non-Employment Discrimination**" means any actual or alleged harassment or unlawful discrimination, as described in subparagraphs 2(c)(2) and 2(c)(3) of the definition of **Employment Practices Violation**, or the violation of the civil rights of a person relating to such harassment or discrimination, when such acts are alleged to be committed against anyone other than an **Individual Insured** or applicant for employment with the **Organization** or an **Outside Entity**, including, but not limited to, students, patients, members, customers and suppliers.

(h) "**Settlement Opportunity**" means an **Insurer** recommended settlement that is within the **Policy Aggregate Limit of Liability**, **Separate Limit of Liability** or **Shared Limit of Liability**, if any, and that is acceptable to the claimant.

(i) "**Wrongful Act(s)**" means: (1) an **Employment Practices Violation**, or (2) **Non-Employment Discrimination**.

## 3.  EXCLUSIONS

In addition to the exclusions set forth in Clause 4 of the General Terms and Conditions, the **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim** made against any **Insured**:

(a) arising out of, based upon or attributable to the committing of any criminal or deliberate fraudulent act if any final adjudication establishes that such criminal or deliberate fraudulent act was committed;

[The **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured** for the purpose of determining the applicability of the foregoing exclusion.]

(b) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of any **Insured** under any express contract or agreement; provided, however, this exclusion shall not apply to:

(i)  the extent any liability does not arise under such express contract or agreement; or

(ii) **Loss** constituting **Defense Costs** for express, written employment contracts; or

(c) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Individual Insured** serving in any capacity, other than as an **Individual Insured** of the **Organization** or as an **Outside Entity Executive** of an **Outside Entity**.

## 4.  DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)

The **Insurer** does not assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them.

Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of the **Claim** to the **Insurer**, which right shall be exercised in writing by the **Named Organization** on behalf of all **Insureds** to the **Insurer** pursuant to the notice provisions of Clause 7 of the General Terms and Conditions. This right shall terminate if not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**, pursuant to Clause 7 of the General Terms and Conditions. Further, from the date the **Claim** is first made against the **Insureds** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of the **Insureds** or the **Insurer** with respect to such **Claim**. Provided that the **Insureds** have complied with the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent. The assumption of the defense of the **Claim** shall be effective upon written confirmation sent thereof by the **Insurer** to the **Named Organization**. Once the defense has been so tendered, the **Insured** shall have the right to fully and effectively associate with the **Insurer** in the defense and negotiation of any settlement of any **Claim**, subject to

© All rights reserved.

the provisions of this Clause 4. However, the **Insurer** shall not be obligated to defend such **Claim** after the **Policy Aggregate Limit of Liability**, **Separate Limit of Liability** or **Shared Limit of Liability**, if any, has been exhausted, or after an **Insured**'s rejection of (or failure or refusal to accept within the prescribed time herein) a **Settlement Opportunity**.

When the **Insurer** has not assumed the defense of a **Claim** pursuant to this Clause 4, the **Insurer** shall advance nevertheless, at the written request of the **Insured**, **Defense Costs** prior to the final disposition of a **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds** or the **Organization**, severally according to their respective interests, in the event and to the extent that the **Insureds** or the **Organization** shall not be entitled under the terms and conditions of this policy to payment of such **Loss**.

**The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs, which have been consented to by the Insurer, in writing, shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer, when it has not assumed the defense of a Claim pursuant to this Clause 4, shall be entitled to fully and effectively associate in the defense and negotiation of any settlement of any Claim, and provided further that in all events the Insurer may withhold consent to any settlement, stipulated judgment or Defense Costs, or any portion thereof, to the extent such loss is not covered under the terms of this policy.**

The **Insurer** shall have the right to fully and effectively associate with the **Organization** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including but not limited to negotiating a settlement. The **Organization** and the **Insureds** shall give the **Insurer** full cooperation and such information as it may reasonably require.

In the event the **Insured(s)** consent to a **Settlement Opportunity** within thirty (30) days of the date the **Insureds** are first made aware of the **Settlement Opportunity** (or in the case of a **Settlement Opportunity** which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made), then the **Organization's** applicable Retention amount shall be retroactively reduced by ten percent (10%) for such **Loss**. It shall be a condition to such reduction that all **Insureds** must consent to such settlement.

However, if a **Settlement Opportunity** arises and the **Insureds** do not consent to the settlement within the time prescribed above, the Retention amount shall remain the applicable amount set forth in Item 3 of the Declarations even if consent is given to a subsequent **Settlement Opportunity**.

Furthermore, in the event the **Insureds** do not consent to the first **Settlement Opportunity** within the time prescribed above, then, subject to the **Policy Aggregate Limit of Liability** and **Separate Limit of Liability** or **Shared Limit of Liability**, if any, the **Insurer's** liability for all Loss on account of such Claim shall not exceed: (1) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer** ("**Settlement Opportunity Amount**"), plus (2) 50% of covered **Loss** in excess of such Settlement Opportunity Amount, it being a condition of this insurance that the remaining 50% of such **Loss** excess of the Settlement Opportunity Amount shall be carried by the **Organization** and the **Insureds** at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the Settlement Opportunity Amount exceeds the applicable Retention amount stated in Item 3 of the Declarations.

## 5. PRE-AUTHORIZED DEFENSE ATTORNEYS

This Clause applies to all **Claims** under this **Coverage Section**. Affixed as Appendix A hereto and made a part of this policy is a list or lists of Panel Counsel law firms (herein "**Panel Counsel Firms**") from which a selection of legal counsel shall be made to conduct the defense of any **Claim(s)** against any **Insured(s)** pursuant to the terms set forth below.

© All rights reserved.
Case ID: 211100640

In the event the **Insurer** has assumed the defense pursuant to Clause 4, then the **Insurer** shall select a **Panel Counsel Firm** to defend the **Insureds**. In the event the **Insureds** are already defending a **Claim**, then the **Insureds** shall select a **Panel Counsel Firm** to defend the **Insureds**.

The selection of the **Panel Counsel Firm**, whether done by the **Insurer** or the **Insureds**, shall be from the list of **Panel Counsel Firms** designated for the type of **Claim** and be from the jurisdiction in which the **Claim** is brought. In the event a **Claim** is brought in a jurisdiction not included on the appropriate list(s), the selection shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the **Claim** is maintained or where the corporate headquarters or state of formation of the **Named Organization** is located. In such instance, however, the **Insurer** shall, at the written request of the **Named Organization** assign a non-Panel Counsel Firm of the **Insurer's** choice in the jurisdiction in which the **Claim** is brought to function as "local counsel" on the **Claim** to assist the **Panel Counsel Firm**, which will function as "lead counsel" in conducting the defense of the **Claim**.

With the express prior written consent of the **Insurer**, an **Insured** may select (in the case of the **Insured** defending the **Claim**), or cause the **Insurer** to select (in the case of the **Insurer** defending the **Claim**), a **Panel Counsel Firm** different from that selected by other **Insured** defendants if such selection is required due to an actual conflict of interest.

The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no change shall be made to the specific list attached to this policy during the **Policy Period** without the consent of the **Named Organization**.

6. **DISCOVERY CLAUSE**

Except as indicated below, if the **Named Organization** shall cancel or the **Named Organization** or the **Insurer** shall refuse to renew this **Coverage Section**, then solely with respect to this **Coverage Section**, the **Named Organization** shall have the right to a period of one, two, three, four, five or six years or of unlimited duration following the effective date of such cancellation or nonrenewal upon payment of the respective "**Additional Premium Amount**" described below (herein referred to as the "**Discovery Period**") in which to give to the **Insurer** written notice of **Claims** first made against the **Insureds** during said **Discovery Period** for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the **Insurer** within thirty (30) days of the effective date of cancellation or nonrenewal.

The **Additional Premium Amount** for: (1) one year shall be 125% of the "full annual premium"; (2) two years shall be 175% of the "full annual premium"; (3) three years shall be 225% of the "full annual premium"; (4) four years shall be 250% of the "full annual premium"; (5) five years shall be 275% of the "full annual premium"; (6) six years shall be 300% of the "full annual premium"; and (7) a discovery period of unlimited duration shall be 325% of the "full annual premium". As used herein, "full annual premium" means the premium level in effect for this **Coverage Section** immediately prior to the end of the **Policy Period**.

In the event of a **Transaction**, as defined in Clause 9 of the General Terms and Conditions, the **Named Organization** shall have the right, within thirty (30) days before the end of the **Policy Period**, to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**) for a period of no less than six (6) years or for such longer or shorter period as the **Named Organization** may request. The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions and premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable, except for non-payment of premium. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

5

© All rights reserved.
Case ID: 211100640

［The balance of this page is left intentionally blank］

© All rights reserved.
Case ID: 211100640

**POLICYHOLDER NOTICE**
**REGARDING**
**E-DISCOVERY CONSULTANT SERVICES**

You are hereby notified that the Insureds under the attached policy are entitled to retain the services of a pre-approved E-Consultant Firm from the E-DISCOVERY CONSULTING FIRMS listed below at the rates negotiated by the Insurer for any Claim covered under the policy in which E-Discovery is required or becomes necessary.

For the purpose of the E-Discovery Consultant Services discussed in this notice, the following definitions shall apply:

(a)    "E-Consultant Firm" means any E-DISCOVERY CONSULTING FIRMS listed below. Any "E-Consultant Firm" may be hired by an Insured to perform E-Discovery Consultant Services without further approval by the Insurer.

(b)    "E-Discovery" means the development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information.

(c)    "E-Discovery Loss" means the reasonable and necessary consulting fees for the E-Discovery Consultant Services provided solely to the Insured(s) by an E-Consultant Firm.

Provided, however, E-Discovery Loss shall not include any costs of discovery other than E-Discovery Loss.

(d)    "E-Discovery Consultant Services" means solely the following services performed by an E-Consultant Firm:

1.    assisting the Insured with managing and minimizing the internal and external costs associated with E-Discovery;

2.    assisting the Insured in developing or formulating an E-Discovery strategy which shall include interviewing qualified and cost effective E-Discovery vendors;

3.    serving as project manager, advisor and/or consultant to the Insured, defense counsel and the Insurer in executing and monitoring the E-Discovery strategy; and

4.    such other services provided by the E-Consultant Firm that the Insured, Insurer and E-Consultant Firm agree are reasonable and necessary given the circumstances of the Securities Claim.

PLEASE NOTE: The Insurer shall only be liable for the amount of E-Discovery Loss arising from a Claim under the attached policy that is in excess of the applicable Retention amounts stated in the Declarations. In all events, the Insurer shall not waive any of the Insurer's rights under this policy or at law.


E-DISCOVERY CONSULTING FIRMS


The list of approved E-Consultant Firms is accessible through our online directory at http://www .aig.com/us/panelcounseldirectory. To access the applicable online E-Consultant Firm Directory, please go to the website and click on the "**e-Consultant Panel Members**" link.

References in this policy to the list of E-Consultant Firms or related appendices are deemed amended to refer to the applicable online E-Consultant Firm Directory at the website referenced above.

© All rights reserved.

Case ID: 211100640

**APPENDIX   A**
**NOT FOR PROFIT PANEL COUNSEL ADDENDUM**

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is now accessible through our online Panel Counsel Directory at AIG Panel Counsel Directory .To access the applicable online Panel Counsel Directory, please go to the website, click on the "Not-for-Profit (Employment and  Non-Employment Claims)" link or the "Employment Practices Liability - Not for Profit Employment Claims" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

© All rights reserved.

Case ID: 211100640

**APPENDIX B**
**CRISIS MANAGEMENT COVERAGE FOR D&O COVERAGE SECTION**

## I.  DEFINITIONS

(a) **"Crisis Management Event"** means one of the following events which, in the good faith opinion of the **Organization**, did cause or is reasonably likely to cause a **Material Effect**:

1.  Management Crisis:

    The death, incapacity or criminal indictment of any duly elected or appointed director, officer, trustee, trustee emeritus or executive director, or any **Employee** on whom the **Organization** maintains key person life insurance.

2.  Patient/Member Abuse:

    The public announcement or accusation that an individual under the management control of the **Organization** has intentionally caused bodily injury to, or death of, a patient, or has sexually abused a patient or member of the **Organization**.

3.  Debt Default:

    The public announcement that the **Organization** had defaulted or intends to default on its debt.

4.  Bankruptcy:

    The public announcement that the **Organization** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of the **Organization**; or the imminence of bankruptcy proceedings, whether voluntary or involuntary.

5.  Contribution Revocation:

    The withdrawal or return of a non-governmental grant, contribution or bequest in excess of $500,000.

6.  Student Distress:

    The public announcement or accusation that a student of the **Organization** has: 1) attempted or committed suicide; or 2) been criminally assaulted by an assailant who is either unknown or who is not an Individual Insured.

7.  Downsizing:

    The closing of any academic department or school.

8.  Regulatory Crisis:

    Formal governmental or regulatory proceedings which allege a pattern of inadequate patient care.

9.  Workplace Violence:

    The public announcement that an **Employee** of the **Organization** was the victim of a violent crime while on the premises of the **Organization**.

10. Child Abduction:
    The public announcement that a child was abducted or kidnapped while under the care or supervision of the **Organization**.

A **Crisis Management Event** shall first commence when the **Organization** or any of its directors or executive officers shall first become aware of the event during the **Policy Period** and shall conclude at the earliest of the time when the **Crisis Management Firm** advises the **Organization**

⊛  All rights reserved.

Case ID: 211100640

that the crisis no longer exists or when the **Crisis Management Fund** has been exhausted.

(b) **"Crisis Management Firm"** means any public relations firm, crisis management firm or law firm listed below in Section III of this Appendix B.  Any **"Crisis Management Firm"** may be hired by the **Organization** or its directors, officers or employees to perform **Crisis Management Services** without further approval by the **Insurer**.

(c) **"Crisis Management Loss"** means the following amounts incurred during the pendency of or within 90 days prior to and in anticipation of, the **Crisis Management Event**, regardless of whether a **Claim** is ever made against an Insured arising from the **Crisis Management Event** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**:

  (1) amounts for which the **Organization** is legally liable for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Organization** arising from a **Crisis Management Event**; and

  (2) amounts for which the **Organization** is legally liable for the reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Organization** or the **Crisis Management Firm**, in connection with the **Crisis Management Event**.

(d) **"Crisis Management Services"** means those services performed by a **Crisis Management Firm** in advising the **Organization** or any of its directors, officers or employees on minimizing potential harm to the **Organization** arising from the **Crisis Management Event**, including but not limited to maintaining and restoring public confidence in the **Organization**.

(e) **"Delisting Crisis"** means written notice to an **Organization** that such **Organization's** securities will be or have been delisted from an **Exchange** at the initiation of such **Exchange**.

(f) **"Exchange"** means NASDAQ, the American Stock Exchange, the New York Stock Exchange and the Singapore Exchange.

(g) **"Material Effect"** means the publication of unfavorable information regarding the **Organization** which can reasonably be considered to lessen public confidence in the competence of the **Organization**. Such publication must in occur in either:

  (1) a daily newspaper of general circulation in the geographic area of the **Organization**, or

  (2) a radio or television news report on an **Organization** received in the geographic area of the **Organization**.

## II.  EXCLUSIONS

The term **Crisis Management Event** shall not include any event relating to:

1. any pending or prior litigation as of the **Continuity Date** for the D&O Coverage Section indicated in Item 3 Declarations;

2. any **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

3. the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**, or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify  or neutralize **Pollutants**; or

4. the hazardous properties of nuclear materials.

© All rights reserved.

Case ID: 211100640

### III. PRE-APPROVED CRISIS FIRMS

(a) For all **Crises** (including a **Delisting Crisis**), **Crisis Firm(s)** means any public relations firm listed below:

1. Abernathy MacGregor Group, Inc.
   501 Madison Aveue
   New York, New York 10022
   (212) 371-5999
   Contacts: James T. MacGregor          (jtm@abmac.com)
             Rhoda Barnat                (rb@abmac.com)

2. Burson-Marsteller
   230 Park Avenue South
   New York, New York 10003-1566
   (212) 614-5236
   Contact: Michael Claes                (Michael.Claes@bm.com)

3. Kekst and Company
   437 Madison Avenue
   New York, New York 10022
   (212) 521-4800
   Contacts: Jim Fingeroth               (Jim-Fingeroth@kekst.com)
             Lissa Perlman               (Lissa-Perlman@kekst.com)

4. Patton Boggs, LLP
   2550 M Street, N.W.
   Washington D.C. 20037
   (202) 457-6040
   Contact: Thomas Boggs, Esq.           (tboggs@pattonboggs.com)

5. Reputation Partners, LLC
   105 West Adams Street, Suite 2220
   Chicago, IL 60603-6265
   (312) 222-9887
   Contacts: Nick Kalm                   (nick@reputationpartners.com)
             Jane Devron                 (jane@reputationpartners.com)

6. Robinson Lerer & Montgomery
   1345 Avenue of the Americas, 4th Floor
   New York, New York 10105
   646-805-2000
   Contact: Michael Gross                (mgross@rlmnet.com)

7. Sard Verbinnen & Co.
   630 Third Avenue, 9th Floor
   New York, New York   10017
   (212) 687-8080
   Contacts:  George Sard                (gsard@sardverb.com)
              Paul Verbinnen             (pverbinnen@sardverb.com)

© All rights reserved.

Case ID: 211100640

7.      Sard Verbinnen & Co.
        630 Third Avenue, 9th Floor
        New York, New York  10017
        (212) 687-8080
        Contacts:  George Sard                    (gsard@sardverb.com)
                   Paul Verbinnen                  (pverbinnen@sardverb.com)

8.      Sitrick And Company
        1840 Century Park East, Suite 800
        Los Angeles, CA  90067
        (310) 788-2850
        Contact:   Michael Sitrick                 (mike sitrick@sitrick.com)

©  All rights reserved.

Case ID: 211100640

**ENDORSEMENT#** *1*

Product Name: *Not For Profit Risk Protector*
This endorsement, effective *12:01 AM      October 31, 2016*      forms a part of
policy number   *21467324*
issued to *INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS*


by     *National Union Fire Insurance Company of Pittsburgh, PA*


**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ECONOMIC SANCTIONS ENDORSEMENT**


*This endorsement modifies insurance provided under the following:*

Coverage shall only be provided and payment of loss under this policy shall only be made
in full compliance with enforceable United Nations economic and trade sanctions and the
trade and economic sanction laws or regulations of the European Union and the United
States of America, including, but not limited to, sanctions, laws and regulations
administered and enforced by the U.S. Treasury Department's Office of Foreign Assets
Control ("OFAC").


_____
AUTHORIZED REPRESENTATIVE


© All rights reserved.
*END 001*

119679 (9/15)                                    Page 1 of 1                                    Case ID: 211100640

**ENDORSEMENT# *2***

Product Name: *Not For Profit Risk Protector*
This endorsement, effective   *12:01 AM   October 31, 2016*   forms a part of
policy number   *21467324*
issued to   *INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS*

by   *National Union Fire Insurance Company of Pittsburgh, PA*

**NOTICE OF CLAIM
(REPORTING BY E-MAIL)**

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.  *Email Reporting of Claims*: In addition to the postal address set forth for any Notice of Claim
    Reporting under this policy, such notice may also be given in writing pursuant to the policy's
    other terms and conditions to the Insurer by email at the following email address:
    c-claim@aig.com

    Your email must reference the policy number for this policy. The date of the Insurer's receipt
    of the emailed notice shall constitute the date of notice.

    In addition to Notice of Claim Reporting via email, notice may also be given to the Insurer by
    mailing such notice to: AIG Property Casualty, Financial Lines Claims, P.O. Box 25947,
    Shawnee Mission, KS 66225 or faxing such notice to (866) 227-1750.

2.  *Definitions*: For this endorsement only, the following definitions shall apply:

    (a)  "Insurer" means the "Insurer," "Underwriter" or "Company" or other name specifically
         ascribed in this policy as the insurance company or underwriter for this policy.

    (b)  "Notice of Claim Reporting" means "notice of claim/circumstance," "notice of loss" or
         other reference in the policy designated for reporting of claims, loss or occurrences or
         situations that may give rise or result in loss under this policy.

    (c)  "Policy" means the policy, bond or other insurance product to which this endorsement
         is attached.

3.  This endorsement does not apply to any Kidnap & Ransom/Extortion Coverage Section, if
    any, provided by this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 002*

Case ID: 211100640

**ENDORSEMENT#** *3*

Product Name: *Not For Profit Risk Protector*
This endorsement, effective   *12:01 AM      October 31, 2016*      forms a part of
policy number   *21467324*
issued to   *INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS*

by      *National Union Fire Insurance Company of Pittsburgh, PA*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDATORY ENDORSEMENT**

**PENNSYLVANIA**

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT RISK PROTECTOR** <sup>SM</sup>

The Policy is amended as follows:

The **DISCOVERY CLAUSE** in Coverage Sections one (D&O), Two (EPL), Three, (FLI) and Five (Employed Lawyers), if purchased, is modified to the extent necessary to provide the following:

A.   The right to a **Discovery Period** applies in the event the **Named Organization** or the **Insurer** cancels or refuses to renew the policy for any reason.

B.   The amount of days in which to provide written notice of election of a **Discovery Period** subsequent to the effective date of the cancellation or nonrenewal (together with any additional premium due) is changed from thirty (30) days to sixty (60) days.

C.   In the event of cancellation by the **Insurer** for the non-payment of premium, any monies received by the **Insurer** as payment for **Discovery Period** shall be first applied to such premium owing for the policy. The **Discovery Period** will not take effect until the premium owing for the policy is paid in full and the premium owing for the **Discovery Period** is paid promptly when due.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 003*

Case ID: 211100640

## ENDORSEMENT# *4*

Product Name: *Not For Profit Risk Protector*
This endorsement, effective   *12:01 AM     October 31, 2016*        forms a part of
policy number   *21467324*
issued to   *INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS*

by   *National Union Fire Insurance Company of Pittsburgh, PA*

### PENNSYLVANIA AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "Insurer" means the insurance company which issued this policy; and 2) "named Insured" and "Insured" mean the Named Corporation, Named Entity, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page.

The following is added and supercedes any provision to the contrary:

Cancellation/Nonrenewal

Canceling a policy midterm is prohibited except if:

1) A condition material to insurability has changed substantially;

2) Loss of reinsurance or a substantial decrease in reinsurance has occurred;

3) Material misrepresentation by the Insured;

4) Policy was obtained through fraud;

5) The Insured has failed to pay a premium when due;

6) The Insured has requested cancellation;

7) Material failure to comply with terms;

8) Other reasons that the commissioner may approve.

Notice Requirements for Midterm Cancellation and Nonrenewal

Notice shall be mailed by registered or first class mail by the Insurer directly to the named Insured. Written notice will be forwarded directly to the named Insured at least sixty (60) days in advance of the termination date unless one or more of the following exists:

1) The Insured has made a material misrepresentation which affects the insurability of the risk, in which case the prescribed written notice of cancellation shall be forwarded directly to the named Insured at least fifteen (15) days in advance of the effective date of termination.

2) The Insured has failed to pay a premium when due, whether the premium is payable directly to the Insurer or its agents or indirectly under a premium finance plan or extension of credit, in which case the prescribed written notice of cancellation shall be forwarded directly to the named insured at least fifteen (15) days in advance of the effective date of termination.

3) The policy was cancelled by the named Insured, in which case written notice of cancellation shall not be required and coverage shall be terminated on the date requested by the Insured. Nothing in these three sections shall restrict the Insurer's right to rescind an insurance policy ab initio upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by the Insurer.

The notice shall be clearly labeled "Notice of Cancellation" or "Notice of Nonrenewal". A midterm cancellation or nonrenewal notice shall state the specific reasons for the cancellation

© All rights reserved.
*END 004*

Case ID: 211100640

## ENDORSEMENT# *4*    (continued)

or nonrenewal. The reasons shall identify the condition or loss experience which caused the midterm cancellation or nonrenewal. The notice shall provide sufficient information or data for the Insured to correct the deficiency.

A midterm cancellation or nonrenewal notice shall state that, at the Insured's request, the Insurer shall provide loss information to the Insured for at least three years or the period of time during which the Insurer has provided coverage to the Insured, whichever is less. Loss information on the Insured shall consist of the following:

1)    Information on closed claims, including date and description of occurrence, and amount of payments, if any;

2)    Information on open claims, including date and description of occurrence, amount of payment, if any, and amount of reserves, if any;

3)    Information on notices of occurrence, including date and description of occurrence and amount of reserves, if any.

The Insured's written request for loss information must be made within ten (10) days of the Insured's receipt of the midterm cancellation or nonrenewal notice. The Insurer shall have thirty (30) days from the date of receipt of the Insured's written request to provide the requested information.

<u>Notice of Increase in Premium</u>

The Insurer shall provide not less than thirty (30) days notice to the Insured of an increase in renewal premium. The notice of renewal premium increase will be mailed or delivered to the Insured's last known address. If notice is mailed, it will be by registered or first class mail.

<u>Return of Unearned Premium</u>

Cancellation Initiated By Insurer - Unearned premium must be returned to the Insured not later than ten (10) business days after the effective date of termination.

Cancellation Initiated by Insured - Unearned premium must be returned to the Insured not later than thirty (30) days after the effective date of termination.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 004*

Case ID: 211100640

ENDORSEMENT#   *5*

Product Name: *Not For Profit Risk Protector*
This endorsement, effective   *12:01 AM     October 31, 2016*        forms a part of
policy number   *21467324*
issued to   *INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS*


by     *National Union Fire Insurance Company of Pittsburgh, PA*

**ORGANIZATION PATENT EXCLUSION**
**(D&O COVERAGE SECTION)**

In consideration of the premium charged, it is hereby understood and agreed that, solely with respect to **Loss** as may have otherwise been covered under Coverage C "ORGANIZATION ENTITY COVERAGE" of the D&O Coverage Section, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim(s)** made against an **Organization** alleging, arising out of, based upon or attributable to or any actual or alleged infringement of any patent.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 005*

Case ID: 211100640

ENDORSEMENT#   *6*

Product Name: *Not For Profit Risk Protector*
This endorsement, effective   *12:01 AM      October 31, 2016*      forms a part of
policy number   *21467324*
issued to   *INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS*


by      *National Union Fire Insurance Company of Pittsburgh, PA*

**COMMISSIONS EXCLUSION
(ALL COVERAGE SECTIONS)**

In consideration of the premium charged, it is hereby understood and agreed that, with respect to all Coverage Sections, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, or attributable to:

(i)     payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time domestic or foreign government or armed services officials, agents, representatives, employees or any members of their family or any entity with which they are affiliated; or

(ii)    payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time officials, directors, agents, partners, representatives, principal shareholders, or owners or employees, or "affiliates" (as that term is defined in The Securities Exchange Act of 1934, including any officers, directors, agents, owners, partners, representatives, principal shareholders or employees of such affiliates) of any customers of the **Organization** or any members of their family or any entity with which they are affiliated; or

(iii)   political contributions, whether domestic or foreign.



ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 006*

Case ID: 211100640

**ENDORSEMENT#**   *7*

Product Name: *Not For Profit Risk Protector*
This endorsement, effective   *12:01 AM   October 31, 2016*   forms a part of
policy number   *21467324*
issued to   *INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS*

by   *National Union Fire Insurance Company of Pittsburgh, PA*

**EXCLUSIONS (F) AND (G) AMENDED ENDORSEMENT**
**(GENERAL TERMS AND CONDITIONS AMENDMENT)**

In consideration of the premium charged, it is hereby understood and agreed that notwithstanding any other provision of this policy (including any endorsement attached hereto whether such endorsement precedes or follows this endorsement in time or sequence), Clause 4. EXCLUSIONS of the General Terms and Conditions is hereby amended by deleting Exclusions (f) and (g) in their entirety and replacing them both with the following:

(f)  for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law.

It is acknowledged that **Claims** for violation(s) of any of the responsibilities, obligations or duties imposed by "similar federal, state, local or foreign statutory law or common law," as such quoted language is used in the immediately-preceding paragraph, include, without limitation, any and all **Claims** which in whole or in part allege, arise out of, are based upon, are attributable to, or are in any way related to any of the circumstances described in any of the following:

(1)  the refusal, failure or inability of any **Insured(s)** to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion);

(2)  improper deductions from pay taken by any **Insured(s)** from any **Employee(s)** or purported **Employee(s)**; or

(3)  failure to provide or enforce legally required meal or rest break periods;

Notwithstanding the foregoing:

(1)  with respect to the EPL Coverage Section, this exclusion (f) shall not apply to the extent that a **Claim** is for **Retaliation**; and

(2)  solely with respect to violations of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 and the Consolidated Omnibus Budget Reconciliation Act, this exclusion shall not apply to the extent coverage is afforded pursuant to the FLI Coverage Section.

Ⓒ All rights reserved.
*END 007*

Case ID: 211100640

**ENDORSEMENT#**  *7*   (continued)

(g)   [intentionally omitted]

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 007*

97650 (3/08)                  Page 2 of 2

Case ID: 211100640

**ENDORSEMENT#** *8*

This endorsement, effective   *12:01 AM*      *October 31, 2016*   forms a part of
policy number   *21467324*
issued to   *INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS*

by   *National Union Fire Insurance Company of Pittsburgh, PA*

### LABOR UNION AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the General Terms and Conditions, the D&O Coverage Section (if purchased) and EPL Coverage Section (if purchased) of this policy are amended as follows:

**I.   AMENDMENTS TO THE GENERAL TERMS AND CONDITIONS**

In Clause 2. "DEFINITIONS" of the General Terms and Conditions, the definition of "**Retaliation**" is deleted in its entirety.

**II.   AMENDMENTS TO THE D&O COVERAGE SECTION**

1. In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of "**Wrongful Act**," as amended by any other endorsement to this policy (whether such endorsement precedes or follows this endorsement), is amended by deleting subparagraph (4) thereof in its entirety and replacing it with the following:

   (4) with respect to both the **Individual Insureds** and the **Organization** and subject to paragraphs 1,2 and 3 above, "**Wrongful Act**" shall specifically include libel, slander, defamation or publication or utterance in violation of an individual's right of privacy.

2. Clause 3. "EXCLUSIONS" of the D&O Coverage Section is amended to include the following exclusions at the end thereof:

   LU-1 alleging, arising out of, based upon or attributable to personal injury arising out of a publication or utterance concerning any organization or business enterprise or its products or services made by or at the direction of the Insured with prior knowledge of its falsity;

   LU-2 alleging, arising out of, based upon or attributable to printing or periodicals, advertising matter, or any and all printing jobs submitted to the Insured by a third party for printing;

   LU-3 alleging, arising out of, based upon or attributable to any actual or alleged boycotts, picketing, strikes, lockouts, demonstrations, sick-outs, slowdowns, refusals to cross picket lines, work stoppages or any similar activity or job action brought by employers, other unions or injured third parties, except when such **Claim** is are brought by a bargaining unit member of the **Named Organization** for a **Wrongful Act**; or

MNSCPT (00/00)                    © All rights reserved.                    Page **1** of 3

Case ID: 211100640

<u>ENDORSEMENT# *8*</u>   **(Continued)**

    LU-4 alleging, arising out of, based upon, or attributable to any actual or alleged conflict of interest arising from any dealings with the **Organization** as an adverse party or on behalf of an adverse party;

    LU-5 alleging, arising out of, based upon or attributable to any **Wrongful Act** committed with the knowledge that it was wrongful;

    LU-6 alleging, arising out of, based upon or attributable to, or in any way involving, either directly or indirectly, antitrust violations, price fixing, price discriminations, unfair competition, deceptive trade practices and/or monopolies, including any actions, proceedings, claims or investigations related thereto; provided, however, that this exclusion shall not apply to Claims made against

## III. AMENDMENTS TO THE EPL COVERAGE SECTION

1. In Clause 2. "DEFINITIONS" of the EPL Coverage Section, the definition of "**Employment Practices Violation(s)**", as amended by any other endorsement to this policy (whether such endorsement precedes or follows this endorsement), is amended by deleting paragraph (4) thereof in its entirety.

2. Clause 3. "EXCLUSIONS" of the EPL Coverage Section is amended to include the following exclusions at the end thereof:

    LU-1 alleging, arising out of, based upon or attributable to any actual or alleged boycotts, picketing, strikes, lockouts, demonstrations, sick-outs, slowdowns, refusals to cross picket lines, work stoppages or any similar activity or job action brought by employers, other unions or injured third parties, except when such **Claim** is brought by a bargaining unit member of the **Named Organization** for a **Wrongful Act**; or

    LU-2 alleging, arising out of, based upon, or attributable to any actual or alleged conflict of interest arising from any dealings with the **Organization** as an adverse party or on behalf of an adverse party;

## IV. AMENDMENTS TO THE GENERAL TERMS AND CONDITIONS

In Clause 4. EXCLUSIONS of the General Terms and Conditions, the first paragraph of Exclusion (f), as amended by the endorsement to this policy titled "EXCLUSIONS (F) AND (G) AMENDED ENDORSEMENT", is further amended by deleting the words "National Labor Relations Act".

Case ID: 211100640

**ENDORSEMENT#** *8*   **(Continued)**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

**AUTHORIZED REPRESENTATIVE**

Case ID: 211100640

## ENDORSEMENT#   *9*

Product Name: *Not For Profit Risk Protector*
This endorsement, effective   *12:01 AM   October 31, 2016*   forms a part of
policy number   *21467324*
issued to   *INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS*

by   *National Union Fire Insurance Company of Pittsburgh, PA*

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (ALL COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.   alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**, including but not limited to:

   (1)   **Nuclear Material** located at any **Nuclear Facility** owned by, or operated by or on behalf of, the **Organization**, or discharged or dispersed therefrom; or

   (2)   **Nuclear Material** contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the **Organization**; or

   (3)   the furnishing by an **Insured** or the **Organization** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**; or

   (4)   **Claims** for damage or other injury to the **Organization** or its members which allege, arise from, are based upon, are attributed to or in any way involve, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**.

B.   (1)   which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its limit of liability; or,

   (2)   with respect to which: (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

**"Hazardous Properties"** include radioactive, toxic or explosive properties.

**"Nuclear Facility"** means:

(a)   any nuclear reactor;

(b)   any equipment or device designed or used for
   (1)   separating the isotopes of uranium or plutonium,
   (2)   processing or utilizing spent fuel, or
   (3)   handling, processing or packaging wastes;

© All rights reserved.
*END 009*

Case ID: 211100640

ENDORSEMENT#   *9*   (continued)

(c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; and

(d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**"Nuclear Material"** means source material, special nuclear material or byproduct material.

**"Nuclear Reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**"Source Material**,**" "Special Nuclear Material**,**"** and **"Byproduct Material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**"Spent Fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

**"Waste"** means any waste material (1) containing by product material and (2) resulting from the operation by any person or organization of any **Nuclear Facility** included within the definition of nuclear facility under paragraph (a) or (b) thereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 009*

Case ID: 211100640

<u>ENDORSEMENT#</u>    *10*

Product Name: *Not For Profit Risk Protector*
This endorsement, effective   *12:01 AM    October 31, 2016*        forms a part of
policy number   *21467324*
issued to   *INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS*


by     *National Union Fire Insurance Company of Pittsburgh, PA*

**CAPTIVE INSURANCE COMPANY EXCLUSION**
**(D&O COVERAGE SECTION)**

In consideration of the premium charged, it is hereby understood and agreed that, solely with respect to **Loss** as may have otherwise been covered under the D&O Coverage Section, the **Insurer** shall not be liable to make any payments for **Loss** in connection with any **Claim(s)** made against any **Insured(s)** alleging, arising out of, based upon, or attributable to the ownership, management, maintenance and/or control by the **Organization** of any captive insurance company or entity including but not limited to **Claim(s)** alleging the insolvency or bankruptcy of the **Organization** as a result of such ownership, operation, management and control.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

Ⓟ All rights reserved.
*END 010*

94657 (5/07)                              Page 1 of 1

Case ID: 211100640

**ENDORSEMENT#   *11***

Product Name: *Not For Profit Risk Protector*
This endorsement, effective   *12:01 AM   October 31, 2016*      forms a part of
policy number   *21467324*
issued to   *INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS*

by     *National Union Fire Insurance Company of Pittsburgh, PA*

**EXTRADITION COVERAGE**
**(D&O COVERAGE SECTION)**

In consideration of the premium charged, it is understood and agreed that, solely with respect to such coverage as is provided by the **D&O Coverage Section**, and solely where permitted by law, the **General Terms and Conditions** and **D&O Coverage Section** is amended as follows:

1.  Clause 2. **DEFINITIONS**, paragraph (a)("**Claim**") of the **D&O Coverage Section** is amended by appending the following to the end thereof:

    "**Claim**" also means any:

    (a)   official request for **Extradition** of any **Individual Insured** ; or

    (b)   the execution of a warrant for the arrest of an **Individual Insured** where such execution is an element of **Extradition**.

2.  Clause 2. **DEFINITIONS**, paragraph (f)("**Defense Costs**") of the **General Terms and Conditions** is amended by appending the following to the end thereof:

    "**Defense Costs**" also means reasonable and necessary fees, costs and expenses incurred through legal counsel and consented to by the **Insurer** resulting from an **Individual Insured** lawfully:

    (a)   opposing, challenging, resisting or defending against any request for or any effort to obtain the **Extradition** of that **Individual Insured** ; or

    (b)   appealing any order or other grant of **Extradition** of that **Individual Insured** .

3.  Clause 2. **DEFINITIONS** of the **D&O Coverage Section** is amended by appending the following to the end thereof:

    "**Extradition**" means any formal process by which an **Individual Insured** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

4.  Clause 6. **PRE-AUTHORIZED DEFENSE ATTORNEYS** of the **D&O Coverage Section** does not apply to **Defense Costs** solely relating to **Extradition.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

Ⓡ All rights reserved.
*END 011*

Case ID: 211100640

<u>ENDORSEMENT#</u>   *12*

Product Name: *Not For Profit Risk Protector*
This endorsement, effective   *12:01 AM    October 31, 2016*        forms a part of
policy number   *21467324*
issued to   *INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS*


by      *National Union Fire Insurance Company of Pittsburgh, PA*

**FAILURE TO EFFECT AND/OR MAINTAIN INSURANCE EXCLUSION
(D&O COVERAGE SECTION)**

In consideration of the premium charged, it is hereby understood and agreed that, solely with respect to **Loss** as may have otherwise been covered under the D&O Coverage Section, the **Insurer** shall not be liable for any **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, attributable to or in any way, directly or indirectly, relating to any failure or omission on the part of the **Insureds** or the **Organization** to effect or maintain adequate insurance.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
***END 012***

Case ID: 211100640

## ENDORSEMENT#  *13*

Product Name: *Not For Profit Risk Protector*
This endorsement, effective   *12:01 AM     October 31, 2016*         forms a part of
policy number   *21467324*
issued to   *INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS*

by     *National Union Fire Insurance Company of Pittsburgh, PA*

### GOVERNMENTAL FUNDING DEFENSE COST COVERAGE
### (D&O COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that notwithstanding any other provision of this policy (including any endorsement attached hereto whether such endorsement precedes or follows this endorsement in time or sequence), in Clause 2. DEFINITIONS of the D&O Coverage Section, the Definition of **"Loss"** is hereby amended to include the following at the end thereof:

> **Loss** shall not include the return of funds which were received from any federal, state or local governmental agency and any interest, fines or penalties arising out of the return of such funds; provided, however, that with regard to **Claims** for **Wrongful Acts** arising out of the return, or request to return such funds, this policy shall pay **Defense Costs** up to an amount not to exceed $1,000,000 (the **"Government Funding Defense Costs Sub-Limit of Liability"**). This **Government Funding Defense Costs Sub-Limit of Liability** shall be part of, and not in addition to, any applicable **Separate Limit of Liability, Shared Limit of Liability** or **Policy Aggregate Limit of Liability** stated in Item 3 or Item 7 of the Declarations. With respect to any **Defense Costs** coverage afforded pursuant to this paragraph, it is understood that: the **Insurer** shall be liable to pay 50% of such **Defense Costs**, excess of a retention in the amount of $1,000,000, up to the **Government Funding Defense Costs Sublimit of Liability**, and subject to any applicable **Separate Limit of Liability, Shared Limit of Liability** or **Policy Aggregate Limit of Liability** stated in Item 3 or Item 7 of the Declarations; it being a condition of this insurance that the remaining 50% of such **Defense Costs** shall be carried by the **Insureds** at their own risk and be uninsured.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

Ⓒ All rights reserved.
*END 013*

Case ID: 211100640

ENDORSEMENT# *14*

This endorsement, effective   *12:01 AM*   *October 31, 2016*   forms a part of
policy number   *21467324*
issued to   *INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS*

by   *National Union Fire Insurance Company of Pittsburgh, PA*

### MARIANO INDIVIDUAL LABOR UNION LEADER COVERAGE ENDORSEMENT (WITH LIMITED COVERAGE FOR INDIVIDUALS TARGETED BY THE D.O.L.) (D&O COVERAGE SECTION)

In consideration of the additional premium of $100 per individual, it is hereby understood and agreed that, solely with respect to the D&O Coverage Section, the **Insurer** will reimburse to each of the **Individual Named Insured(s)** listed below a maximum limit of liability of $100,000 for the following:

I.  (a) **Defense Costs** arising out of any **Claim(s)** made against the **Individual Named Insured** for any **Wrongful Act** in his/her capacity as an **Employee** of the **Named Organization** asserting civil and, to the extent, if any, insurable under the law, criminal liability based on any **Landrum-Griffin\Wagner Act Violation**.   Such reimbursement of **Defense Costs** shall be paid as follows:

      (1)  A maximum of $250,000 will, upon written request, be reimbursed on a quarterly basis (maximum of $250,000 per quarter) during the pendency of such **Claim**;

      (2)  Any **Defense Costs** reimbursement remaining from the above $250,000 limit of liability shall be paid only in the event of a **Favorable Termination**, as hereinafter defined;

    (b) In the event that such a **Claim** is made against more than one **Individual Named Insured**, the maximum amount the **Insurer** shall be obligated to reimburse shall be no more than $250,000 in the aggregate which reimbursement shall be paid proportionately in accordance with the provisions of Section I(a) (1) and (2) hereof: and

    (c) The above limits of liability are subject to a retention amount of 1,000 per **Claim** for each **Individual Named Insured** up to a maximum of 5,000 per **Claim** for all such **Individual Named Insureds** for whom this additional coverage is purchased.

II.  In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of "**Claim**" is amended by adding the following at the end thereof:

The term "**Claim**" shall also include any civil, criminal, administrative or regulatory investigation by the Department of Labor ("DOL") of an **Individual Named Insured** for any **Landrum-Griffin\Wagner Act Violation**, but only once the **Individual Named Insured** is identified (either orally or in writing) by the DOL as a person against whom a proceeding described in Definition 2(b)(ii) of the D&O Coverage Section may be commenced.

III.  Clause 2. "DEFINITIONS" of the D&O Coverage Section is amended by adding the following definitions to the end thereof:

112351 (03/14)

© All rights reserved.

**END 014**

Page **1** of 3

ENDORSEMENT# _14_   (Continued)

(IL-1) **"Favorable Termination"** of a **Claim** means either:

    (a) Dismissal of, or written agreement to abandon or cease such **Claim** be the part asserting it, without any payment of any amounts to the party asserting such, or to any other party at the direction, request or for the benefit of, the party asserting such **Claim**; or

    (b) A final adjudication of such **Claim** in favor of the **Individual Named Insured**.

(IL-2) **"Landrum-Griffin\Wagner Act Violation"** means any alleged violation of the Landrum-Griffin Act, the Wagner Act, or related State or Federal Labor Law statues, which would otherwise be excluded under Exclusion 4(a) of the General Terms and Conditions, Exclusion 3(a) of the D&O Coverage Section, or Exclusions LU-4 or LU-5 of the D&O Coverage Section (as amended by the endorsement to this policy entitled "LABOR UNION AMENDATORY ENDORSEMENT".

IV. It is further understood and agreed that:

    (a) The limit of liability set forth herein shall apply only to the coverage provided in this endorsement. Said limit of liability is part of, and not in addition to, the **Separate Limit of Liability** or **Shared Limit of Liability** for the D&O Coverage Section set forth in Item 3 of the Declarations and the **Policy Aggregate Limit of Liability** set forth in Item 7(a) of the Declarations, and shall in no way serve to increase such **Separate Limit of Liability, Shared Limit of Liability** or **Policy Aggregate Limit of Liability**.; and

    (b) The **Insurer** assumes no obligation to advance **Defense Costs** for the coverage provided herein except as provided in Section I(a) (1) of this endorsement.

V. It is further understood and agreed that coverage provided by virtue of this endorsement shall not apply to:

    (a) Any **Claim** against an **Individual Named Insured** by the **Named Organization**; or

    (b) Any **Claim** by an **Individual Named Insured** against any other **Individual Named Insured**, unless such **Claim** could have been brought by a bargaining unit member; or

    (c) Any **Claim** under a Labor Organization Bond.

**Individual Named Insured(s)**:

© All rights reserved.
*END 014*

Case ID: 211100640

**ENDORSEMENT#** *14*  **(Continued)**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

**AUTHORIZED REPRESENTATIVE**

© All rights reserved.

*END 014*

Case ID: 211100640

ENDORSEMENT#  *15*

Product Name: *Not For Profit Risk Protector*
This endorsement, effective  *12:01 AM   October 31, 2016*   forms a part of
policy number  *21467324*
issued to  *INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS*

by  *National Union Fire Insurance Company of Pittsburgh, PA*

## PROFESSIONAL ERRORS & OMISSIONS EXCLUSION
### (D&O COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that solely with respect to **Loss** as may have otherwise been covered under the D&O Coverage Section, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim(s)** made against any **Insured(s)** alleging, arising out of, based upon or attributable to any **Insured(s)'** performance of or failure to perform professional services for others for a fee, or any act(s), error(s) or omission(s) relating thereto.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

⊗ All rights reserved.
*END 015*

Case ID: 211100640

ENDORSEMENT#   *16*

Product Name: *Not For Profit Risk Protector*
This endorsement, effective   *12:01 AM   October 31, 2016*              forms a part of
policy number   *21467324*
issued to   *INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS*


by   *National Union Fire Insurance Company of Pittsburgh, PA*

**FORMS INDEX ENDORSEMENT**

The contents of the Policy are comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| *91222* | *04/13* | *Policy Holder Notices* |
| *94106* | *2/07* | *NPRP Declarations - Countrywide (Admitted)* |
| *94204* | *3/07* | *General Terms and Conditions (Admitted)* |
| *94207* | *3/07* | *Directors, Officers And Not-For-Profit Organization Liability* |
| *94210* | *3/07* | *Employment Practices Liability Coverage Section Two (Epl Coverage Section)* |
| *97885* | *4/08* | *Policyholder Notice Regarding E-Discovery Consultant Services* |
| *99545* | *7/08* | *Appendix A Not For Profit Panel Counsel Addendum* |
| *94830* | *6/07* | *Appendix B - Crisis Management Coverage (D&O Coverage Section)* |
| *119679* | *9/15* | *Economic Sanctions Endorsement* |
| *99758* | *8/08* | *Notice Of Claim (Reporting By E-Mail)* |
| *95207* | *7/07* | *Pennsylvania Amendatory Endorsement* |
| *52165* | *5/08* | *Pennsylvania Amendatory Endorsement Cancellation/Nonrenewal* |
| *100045* | *9/08* | *Organization Patent Exclusion (D&O Coverage Section)* |
| *94654* | *5/07* | *Commissions Exclusion (All Coverage Sections)* |
| *97650* | *3/08* | *Exclusions (F) And (G) Amended Endorsement (General Terms And Conditions Amendment)* |
| *MNSCPT* | *00/00* | *LABOR UNION AMENDATORY ENDORSEMENT* |
| *96338* | *10/07* | *Nuclear Energy Liability Exclusion (All Coverage Sections)* |
| *94657* | *5/07* | *Captive Insurance Company Exclusion(D&O Coverage Section)* |
| *105106* | *4/10* | *Extradition Coverage(D&O Coverage Section)* |

© All rights reserved.
*END 016*

Case ID: 211100640

**ENDORSEMENT#** *16*  (continued)

| 94601 | 5/07 | *Failure To Effect And / Or Maintain Insurance Exclusion (D&O Coverage Section)* |
| 94661 | 5/07 | *Governmental Funding Defense Cost Coverage(D&O Coverage Section)* |
| 112351 | 03/14 | *MARIANO INDIVIDUAL LABOR UNION LEADER COVERAGE ENDORSEMENT (WITH LIMITED COVERAGE FOR INDIVIDUALS TARGETED BY THE D.O.L.) (D&O COVERAGE SECTION)* |
| 94415 | 4/07 | *Professional Errors And Omissions Exclusion(D&O Coverage Section)* |
| 78859 | 10/01 | *Forms Index* |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 016*

Case ID: 211100640



**CLAIM REPORTING FORM**

Issuing Company:    *National Union Fire Insurance Company of Pittsburgh, PA*

Reported under Policy/Bond Number:    _21467324_          Date: _____

Type of Coverage:    D&O _____   E&O _____   Fidelity _____ (complete the Fidelity Supplemental on
the next page)

Insured's Name, as given on Policy Declarations (Face Page):

   *INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS*

Contact Person: _____

Title: _____

Phone: _(_____)_____-_____Ext_____

eMail: _____ @ _____

Case or Claimant Name: _____

_____

If the party involved is different from "Insured" Name (as given on Policy Declarations) state
relationship:

_____

Insurance Broker/Agent:    *M PIZZO LLC*

Address: *PO BOX 390*

Address: *ROSENHAYN, NJ 08352*

Contact: *DONNA MURRAY*                  Phone: *(856) 451-9531* Ext_____

eMail: *DMurray@MarianoAgency.com*

Send Notice of Claims to:         AIG                    Phone:  (888) 602-5246
                                 Financial Lines Claims   Fax:    (866) 227-1750
                                 P.O. Box 25947           Email:  c-Claim@AIG.com
                                 Shawnee Mission, KS 66225

Case ID: 211100640



## CLAIM REPORTING FORM
## FIDELITY SUPPLEMENTAL
**(Only complete this supplemental if the Claim is being reported under Fidelity Coverage)**

Issuing Company: *National Union Fire Insurance Company of Pittsburgh, PA*

Reported under Policy/Bond Number:   _21467324_

Date of Discovery: _____   Estimated Amount of loss: _____

Cause of Loss:

| | | | |
|---|---|---|---|
| Employee Dishonesty | _____ | Computer Fraud | _____ |
| Funds Transfer | _____ | Robbery/Burglary | _____ |
| ID Theft | _____ | Forgery | _____ |
| Client Property | _____ | In Transit | _____ |
| ERISA | _____ | Credit Card Forgery | _____ |
| Other | _____ | if Other, describe: | _____ |

Send Notice Of Claims To:    AIG    Phone:  (888) 602-5246
Financial Lines Claims    Fax:    (866) 227-1750
P.O. Box 25947    Email:  c-Claim@AIG.com
Shawnee Mission, KS 66225

Case ID: 211100640

# EXHIBIT B

Case ID: 211100640



AIG Property Casualty
80 Pine Street, 5th fl
New York, NY 10005

Charles L. Henderson
Complex Claims Director
Directors & Officers
Financial Lines Claims

T  646 857 1748
F  866 370 5657
Charles.Henderson@aig.com

Correspondence Address:
AIG Property Casualty
Financial Lines Claims
P.O. Box 25947
Shawnee Mission, KS 66225

October 15, 2019

REberle@marianoagency.com


Robert J. Eberle, Jr.
Mariano Agency
679 Landis Avenue
PO Box 390
Rosenhayn, NJ 08352

Re:  Insured:          **INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS**
Policy Type:      Not-For-Profit Risk Protector
Policy No.:       02-146-73-24
Matter:           DOJ Investigation
File No. :        7837873621US

Dear Mr. Eberle:

AIG Claims, Inc. ("AIG") is the authorized claims representative for National Union Fire Insurance Company of Pittsburgh, Pa (" National Union") in connection with the above captioned matter reported under Policy 02-146-73-24 ("Policy"). The matter has been assigned to me for handling and all correspondence regarding it should be addressed to my attention. Please reference AIG file number 7837873621US in all correspondence and communications.

AIG acknowledges receipt of correspondence from Douglas Christian for John Dougherty; Thomas Bergstrom for Brian Burrows; Pat Bianculli for Brian Fiocca; and Fortunato Perri, Jr for Marita Crawford. Robert Henon, Michael Neill, and Niko Rodriguez have not submitted a Claim to AIG. Neither has Anthony Massa who is not an Insured under the Policy.

The matter was originally notice to AIG on December 22, 2016 when AIG was advised by letter date December 19, 2016 from Insured's counsel that search warrants and a federal jury action was being conducted by the Department of Justice for alleged embezzlement and other acts by IBEW Local 98 employees, and that correspondence was accepted as notice of potential claim under the above policy.

The correspondence from the above individuals on behalf of Dougherty, Burrows, Fiocca and Crawford has been submitted to AIG seeking coverage

Case ID: 211100640



as a Claim for those individuals in connection with an indictment naming each of them in a federal indictment filed in the Eastern District of Pennsylvania. The allegations of the indictment are related to the December 19, 2016 letter and pursuant to the policy provision of Policy 02-146-73-24, that policy is applicable to the submitted Claim. For the reason discussed below, however, there is no coverage under the Policy for any of the individual defendants.

Under the indictment, there are multiple counts which allege, among other acts, that the some of the defendants in various positions with IBEW Local 98 used IBEW Local 98 funds and took funds from IBEW Local 98 for their own personal use. It is also alleged that defendants submitted expenses for personal expenses as IBEW Local 98 expenses and later sought false reimbursements. Further, it is alleged that John Dougherty used IBEW Local 98 as his personal bank accounts and employed friends and family on IBEW Local 98's payroll who did personal work for him as part of their union job and were paid for non IBEW Local 98 work.  Moreover, it is alleged that some of the defendants used IBEW Local 98 American Express cards for their personal use. The acts of the IBEW Local 98 defendants are alleged to put their own self interest over that of IBEW Local 98. The various counts alleged that defendants knowingly, willfully and intentionally engaged in these acts and other acts as specified in the indictment.

In AIG's review of coverage, no other policies were considered. If you assert a right to coverage under another policy issued by any other member company of AIG, please submit notice pursuant to the provisions contained therein.

National Union issued to the Named Organization, **INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS**, Not-for-Profit Risk Protector Policy No. 02-146-73-24 with a limit of liability of $2,000,000 in coverage under the D&O Coverage Section shared with EPL coverage and $15,000 Retention for the Policy Period of October 31, 2016 to October 31, 2017. The other coverage sections of the Policy are not applicable to the matter or were not purchased. Loss includes Defense Costs. Defense Costs (including attorney's fees) are not a separate category of damages and are included within the policy limits. Please be aware that under the Policy, National Union does not have an obligation or duty to defend the Insured in connection with a Claim.

Under the Insuring Agreements provision of the D&O Coverage Section, the Policy provides under Coverage A:  Individual Insured Insurance, under Coverage B: Organization Indemnification Reimbursement Insurance,

Case ID: 211100640



under Coverage C: Organization Entity Coverage, and under Coverage D: Crisisfund Insurance.

Under Coverage A, the Policy provides coverage for "**Individual Insured Loss** arising from a **Claim** first made against such **Individual Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any actual or alleged **Wrongful Act** of such **Individual Insured**, except when and to the extent that the **Organization** has indemnified the **Individual Insured**."

Under Coverage B, the Policy provides coverage for "**Organization Loss** arising from a **Claim** first made against an **Individual Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any actual or alleged **Wrongful Act** of such **Individual Insured**, but only when and to the extent that the **Organization** has indemnified such **Individual Insured** for such **Loss** pursuant to law, common or statutory, or contract, or the Charter or By-laws of the **Organization** duly effective under such law which determines and defines such rights of indemnity."

Except for Anthony Massa, the individuals who seek coverage are Individual Insureds under the Policy and the Indictment is a Claim against each one of them. However, due to the terms and conditions of the Policy, there is no coverage for them.

Under Endorsement 8 of the Policy, LU-4 states "the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured:** alleging, arising out of, based upon, or attributable to any actual or alleged conflict of interest arising from any dealings with the **Organization** as an adverse party or on behalf of an adverse party." LU-4 is applicable to the Claim against the individuals and precludes coverage for them. It is alleged that these IBEW Local 98 individuals in positions with IBEW Local 98 by the acts alleged in the indictment resulted in them acting for their own personal benefit and not for the interest of IBEW Local 98. Thus, LU-4 precludes coverage for them.

In addition, there is under Endorsement 8 of the Policy, LU-5 which states "the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured:** alleging, arising out of, based upon or attributable to any **Wrongful Act** committed with the knowledge that it was wrongful." The acts alleged in the indictment states that defendants knowingly, willfully and intentionally engaged in these acts. Thus, the Claim is also precluded from coverage due to LU-5 of the Policy.

Case ID: 211100640



National Union reserves all its rights and defenses available under Policy 02-146-73-24, the applicable law, including without limitation the right to apply other exclusions or provisions of the Policy and the right to supplement this coverage letter in the event additional information is submitted.

If you believe that there is some matter which you wish to bring to the attention of AIG that may affect its analysis for coverage, please feel to submit documentation for it, or in the event you have any questions, please feel free to call me at (646) 857-1748.

Very truly yours,

Charles L. Henderson

cc:

christiand@ballardspahr.com

Thomas.bergstrom@blpc.com

marc.tepper@bipc.com

pbianculli@IBEW Local 9898.org

fperri@mpmpc.com

Case ID: 211100640

# EXHIBIT C

Case ID: 211100640



AIG Property Casualty
80 Pine Street, 5th fl
New York, NY 10005

Charles L. Henderson
Complex Claims Director
Directors & Officers
Financial Lines Claims

T  646 857 1748
F  866 370 5657
Charles.Henderson@aig.com

Correspondence Address:
AIG Property Casualty
Financial Lines Claims
P.O. Box 25947
Shawnee Mission, KS 66225

October 22, 2019

wtjosem@cjtlaw.org

William T. Josem
Cleary, Josem & Trigiani
325 Chestnut Street, Suite 200
Philadelphia, PA 19106

Re:  Insured:      INTERNATIONAL   BROTHERHOOD   OF   ELECTRICAL
                   WORKERS
     Policy Type:  Not-For-Profit Risk Protector
     Policy No.:   02-146-73-24
     Matter:       DOJ Investigation
     File No. :    7837873621US

Dear Mr. Josem:

Thank you for your letter of October 22, 2019.

Even if the indictment asserts counts which may be covered under Endorsement 26, there is nevertheless no coverage for the Claim due to Endorsement 29 of the Policy which states:

"In consideration of the premium charged, it is hereby understood and agreed that, with respect to **Loss** as may have otherwise been covered under any Coverage Section of this policy other than the Crime or KRE Coverage Sections, the **Insurer** shall not be liable for any **Loss** in connection with: (i) any **Claim(s)**, notices, events, investigations or actions referred to in any of items listed below (hereinafter "**Events**"); (ii) the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any **Event(s)**; or (b) any **Claim(s)** arising from any **Event(s)**; or (iii) any **Wrongful Act**, underlying facts, circumstances, acts or omissions in any way relating to any **Event(s)**:

**Events:**
**2016 potential claim for allegations against John Dougherty and the IBEW Local 98 of embezzlement of assets from a labor organization, conspiracy to embezzle assets, attempted extortion of employer-contractors, embezzlement of employee benefit plan assets, payment/lending of money by employer or agent to employees, reps or labor organizations, mail and wire fraud, deprivation of honest services of a public official, Hobbs Act extortion, filing materially false personal and business tax returns, evasion of payment to IRS, conspiracy to defraud the US, making a false statement or concealing facts required by ERISA, illegal gratuity, payments of union funds to persons convicted of specific felonies. This exclusion is in relation to**

Case ID: 211100640



endorsement # 14 (Mariano Individual Labor Union Leader Coverage Endorsement (With Limited Coverage For Individuals Targeted By The D.O.L.) (D&O Coverage Section) and John Dougherty.

It is further understood and agreed that the **Insurer** shall not be liable for any **Loss** in connection with any **Claim(s)** alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to an **Interrelated Wrongful Act** (as that term is defined below), regardless of whether or not such **Claim** involved the same or different Insureds, the same or different legal causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.

For the purposes of this endorsement an " **Interrelated Wrongful Act** " means: (i) any fact, circumstance, act or omission alleged in any **Event(s)** and/or (ii) any **Wrongful Act** which is the same as, similar or related to or a repetition of any **Wrongful Act** alleged in any **Event(s)**."

As the indictment is related to the "Event" described in Endorsement 29, there is no coverage for the Claim.

National Union reserves all its rights and defenses available under Policy 02-146-73-24, the applicable law, including without limitation the right to apply other exclusions or provisions of the Policy and the right to supplement this coverage letter in the event additional information is submitted.

If you believe that there is some matter which you wish to bring to the attention of AIG that may affect its analysis for coverage, please feel to submit documentation for it, or in the event you have any questions, please feel free to call me at (646) 857-1748.

Very truly yours,

Charles L. Henderson

cc:

DMurray@marianoagency.com

REberle@MarianoAgency.com

# EXHIBIT D

Case ID: 211100640

This page is intentionally left blank

Case ID: 211100640

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG).  The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy.  You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation or by calling 1-800-706-3102.

91222 (9/16)

Case ID: 211100640



**National Union Fire Insurance Company of Pittsburgh, Pa.**®

A capital stock company

# Not-For-Profit Risk Protector®

## Management Liability, Professional Liability, Crime Coverage and Kidnap And Ransom/Extortion Coverage for Not- For- Profit Organizations

POLICY NUMBER: *03-979-23-74*          REPLACEMENT OF POLICY NUMBER: *02-420-61-50*

---

### NOTICES

**[APPLICABLE TO ALL COVERAGE SECTIONS OTHER THAN THE CRIME COVERAGE SECTION AND KIDNAP AND RANSOM/EXTORTION COVERAGE SECTION]**

**COVERAGE WITHIN THIS POLICY IS GENERALLY LIMITED TO LOSS FROM CLAIMS FIRST MADE AGAINST INSUREDS DURING THE POLICY PERIOD AND REPORTED TO THE INSURER AS THE POLICY REQUIRES.  DEFENSE COSTS REDUCE THE LIMITS OF LIABILITY (AND, THEREFORE, AMOUNTS AVAILABLE TO RESPOND TO SETTLEMENTS AND JUDGMENTS) AND ARE APPLIED AGAINST APPLICABLE RETENTIONS.**

**THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND UNLESS SUCH COVERAGE IS EXPRESSLY PROVIDED WITHIN A COVERAGE SECTION.  WHERE THE INSURER HAS NO DUTY TO DEFEND, IT WILL ADVANCE DEFENSE COSTS, EXCESS OF THE APPLICABLE RETENTION, PURSUANT TO THE TERMS OF THIS POLICY PRIOR TO THE FINAL DISPOSITION OF A CLAIM. PLEASE REFER TO THE COVERAGE SECTIONS PURCHASED FOR DEFENSE RELATED DETAILS.**

**PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER TO DETERMINE WHAT IS AND WHAT IS NOT COVERED.**

---

## DECLARATIONS

| ITEMS | | | |
|---|---|---|---|
| 1 | **NAMED ORGANIZATION:** | (the "Named Organization") | *IBEW LOCAL 98* |
| | | MAILING ADDRESS: | *1719 SPRING GARDEN STREET PHILADELPHIA, PA 19130* |
| | | STATE OF INCORPORATION/FORMATION: | *Pennsylvania* |
| 2 | **POLICY PERIOD:** | Inception Date: *October 31, 2019* | Expiration Date: *October 31, 2020* |
| | | 12:01 A.M. at the address stated in Item 1 | |

*7245634*

94106 (2/07)                                          1                          © All rights reserved

Case ID: 211100640

ITEMS (continued)

**3 | COVERAGE SUMMARY**

| Liability Coverage Section | | Separate Limit of Liability | Shared Limit of Liability | Retention/ Deductible* | Continuity Date | Premium |
|---|---|---|---|---|---|---|
| D&O | D&O and Not-For-Profit Organization | *Inapplicable* | *$2,000,000*<br><br>Shared With: EPL | Crisis Management Events: *$0*<br>All Other Claims: *$25,000* | *10/31/2003* | *$26,410* |
| EPL | Employment Practices | *Inapplicable* | *$2,000,000*<br><br>Shared With: D&O | All Claims: *$15,000* | *10/31/2003* | *$20,035* |
| FLI | Fiduciary | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | All Claims: *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| CCP | Employed Lawyers | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | All Claims: *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Crime | Crime | See Section 5: | None | See Section 5: | N/A | *Coverage Section Not Purchased* |
| KRE | Kidnap And Ransom/ Extortion | See Section 6: | None | See Section 6: | N/A | *Coverage Section Not Purchased* |
| *With respect to the D&O, EPL, FLI and CCP Coverage Sections only, no Retention amount is applicable to Non-Indemnifiable Loss.<br>*No Retention is applicable to Voluntary Compliance Loss and HIPAA Penalties | | | | | | N/A |

**4 | TOTAL PREMIUM**
$46,445

*Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act, as amended (TRIA):$0 included in policy premium. Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula as follows:81% of TRIA Losses in excess of the insurer deductible mandated by deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.*

*A copy of the TRIA disclosure sent with the original quote is attached hereto.*

*7245634*

© All rights reserved
Case ID: 211100640

ITEMS (continued)

## 5 CRIME LIMITS OF LIABILITY AND DEDUCTIBLES

| Insuring Agreement | Per Occurrence Limit of Liability | Deductible |
|---|---|---|
| Insuring Agreement 1.A.: "Employee Theft" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Insuring Agreement 1.B.: "Forgery or Alteration" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Insuring Agreement 1.C.: "Inside the Premises - Theft of Money or Securities" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Insuring Agreement 1.D.: "Inside the Premises - Robbery or Safe Burglary of Other Property" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Insuring Agreement 1.E.: "Outside the Premises" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Insuring Agreement 1.F.: "Computer Fraud" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |
| Insuring Agreement 1.G.: "Money Orders and Counterfeit Paper Currency" Loss | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* |

If "Not Covered" is inserted above opposite any specific Insuring Agreement, such Insuring Agreement in the Crime Coverage Section and any other reference thereto in this policy is hereby deleted.

**CANCELLATION OF PRIOR CRIME INSURANCE:** By acceptance of the Crime Coverage Section of this Policy, you give us notice of cancellation for the prior policy Nos: *Not Applicable*. Such cancellation shall be effective at the time the Crime Coverage Section of this Policy becomes effective.

## 6 KRE LIMITS OF INSURANCE \ INSURED PERSON(S)

| Loss Component: | Each Loss Component Limit | Annual Aggregate Limit | |
|---|---|---|---|
| A. Ransom Monies: | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | |
| B. In-Transit/Delivery: | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | |
| C. Expenses: | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | |
| D. Consultant Expenses: | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | |
| E. Judgments, Settlements and Defense Costs: | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | |
| F. Death or Dismemberment: | *Coverage Section Not Purchased* | *Coverage Section Not Purchased* | |
| Each Insured Event Limit: | | *Coverage Section Not Purchased* | |
| Coverage Section Aggregate: | | *Coverage Section Not Purchased* | |
| Deductible (Each Loss): | | *Coverage Section Not Purchased* | |

Insured Person(s): *Coverage Section Not Purchased*

## 7 OTHER LIMITS OF LIABILITY

| | |
|---|---|
| **(a) POLICY AGGREGATE LIMIT OF LIABILITY (For all coverages combined other than the Crime and the KRE Coverage Sections:** | *$2,000,000* |
| **(b) Crisis Management Fund For D&O:** | *$25,000* |
| **(c) Voluntary Compliance Loss Sublimit of Liability for FLI:** | *Coverage Section Not Purchased* |
| **(d) HIPAA Penalties Sublimit of Liability for FLI:** | *Coverage Section Not Purchased* |

*7245634*

© All rights reserved.

ITEMS (continued)

| 8 | **NAME AND ADDRESS OF INSURER** |
|---|---|

*National Union Fire Insurance Company of Pittsburgh, Pa.*
*175 Water Street*
*New York, NY 10038-4969*


This policy is issued only by the insurance company indicated in this Item 8.

PRODUCER: *M PIZZO LLC*
PRODUCER LICENSE NO.: *On File with Carrier*
ADDRESS: *PO BOX 390*
           *ROSENHAYN, NJ 08352-0390*

*7245634*

94106 (2/07)
4
© All rights reserved
Case ID: 211100640

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President, Secretary and Authorized Representative. This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the insurer.

_____
PRESIDENT

_____
SECRETARY

_____
AUTHORIZED REPRESENTATIVE

_____    _____    _____
COUNTERSIGNATURE                    DATE                      COUNTERSIGNED AT

*7245634*

Case ID: 211100640

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (RIGHT TO PURCHASE COVERAGE)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism.  As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury-in consultation with the Secretary of Homeland Security, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING JANUARY 1, 2018; 81% BEGINNING JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *IBEW LOCAL 98*


Policy Number: *03-979-23-74*
Policy Period Effective Date From: *October 31, 2019*     To: *October 31, 2020*

© 2015 National Association of Insurance Commissioner

Case ID: 211100640



**National Union Fire Insurance Company of Pittsburgh, Pa.** ®
A capital stock company

# Not-for-Profit Risk Protector®
## General Terms and Conditions
### (Inapplicable to Kidnap and Ransom Coverage Section)

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by application, including its attachments and the materials incorporated therein, which form a part of this policy, the **Insurer** agrees as follows:

## 1. TERMS AND CONDITIONS

These General Terms and Conditions are hereby incorporated by reference into, made a part of, and expressly made applicable to all **Coverage Sections** except (i) the Kidnap & Ransom Coverage Section; or (ii) where explicitly limited to one or more **Coverage Sections**. Any reference in this General Terms and Conditions Section to "all **Coverage Sections**" shall not refer to the Kidnap and Ransom Coverage Section. The terms and conditions set forth in each **Coverage Section** shall only apply to that particular **Coverage Section** and shall in no way be construed to apply to any other **Coverage Section** of this policy.

## 2. DEFINITIONS

(a) "**Affiliate**" shall mean any not for profit organization, other than a **Subsidiary**, which:

    (1) the **Named Organization** or any **Subsidiary** controls or otherwise has the ability to direct the financial or managerial decisions of such entity, whether through the operation of law, contract or agreement, stock ownership or membership, charter, articles of incorporation, or by-law provisions; or

    (2) is granted by contract the right to control the financial or managerial decisions of the **Named Organization** or any **Subsidiary**;

    provided, however, that such coverage as may be provided under this policy for any organization described in subparagraphs (1) and (2) above shall be limited solely to **Wrongful Acts** occurring in the course of the exercise of such control of financial or managerial decisions.

(b) "**Bodily Injury**" means physical injury, sickness or disease (other than emotional distress or mental anguish), including death resulting therefrom.

(c) "**Claim**" means a **Claim**, as that term is defined within each **Coverage Section**.

(d) "**Continuity Date**" means the date set forth in Item 3 of the Declarations with respect to each **Coverage Section**.

(e) "**Coverage Section(s)**" means each **Coverage Section** that is purchased by the **Insured** as indicated in Item 3 of the Declarations.

(f) "**Defense Costs**" means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against the **Insureds**, but excluding compensation of **Individual Insureds**. **Defense Costs** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

(g) "**Discovery Period**" means the **Discovery Period** as that term is defined in each **Coverage Section**.

(h) "**Domestic Partner**" means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Named Organization** or any **Subsidiary.**

(i) "**Employee(s)**" means an Employee as that term is defined within each **Coverage Section**.

(j) "**Financial Insolvency**" means: (1) entering into proceedings in bankruptcy; (2) becoming a debtor

          1 © All rights reserved.

Case ID: 211100640

in possession; or (3) the taking of control, the supervision of or the managing or liquidation of the financial affairs of an entity by a receiver, conservator, liquidator, trustee, rehabilitator or similar official.

(k) **"Indemnifiable Loss"** means **Loss** for which the **Organization** has indemnified or is permitted or required to indemnify any **Individual Insureds.**

(l) **"Individual Insured(s)"** means an **Individual Insured**, as that term is defined within each **Coverage Section.**

(m) **"Insurer"** means the entity listed in Item 8 of the Declarations.

(n) **"Insured(s)"** means an **Insured**, as that term is defined within each **Coverage Section.**

(o) **"Loss"** means **Loss**, as that term is defined within each **Coverage Section.**

(p) **"Named Organization"** means the **Organization** designated in Item 1 of the Declarations.

(q) **"Non-Indemnifiable Loss"** means **Loss** for which an **Organization** has neither indemnified nor is permitted or required to indemnify an **Individual Insured.**

(r) **"Organization"** means: (1) the **Named Organization**; (2) any **Subsidiary** thereof; and (3) any **Affiliate** thereof listed by endorsement to this policy, but solely with respect to the **Coverage Sections** indicated on such endorsement.

(s) **"Outside Entity"** means any not-for-profit organization under section 501(c) of the Internal Revenue Code of 1986 (as amended), other than a **Subsidiary** or listed **Affiliate.**

(t) **"Outside Entity Executive"** means any director, trustee, trustee emeritus or governor (or equivalent position) of the **Organization** who is or was acting at the specific request or direction of the **Organization** as a director, trustee, trustee emeritus or governor of an **Outside Entity.** It is understood and agreed that, in the event of a disagreement between the **Organization** and an individual as to whether such individual was acting "at the specific request or direction of the **Organization**," this policy shall abide by the determination of the **Organization** on this issue and such determination shall be made by written notice to the **Insurer** within ninety (90) days after the **Claim** is first reported to the **Insurer** pursuant to the terms of the policy. In the event no determination is made within such period, this policy shall apply as if the **Organization** determined that such **Individual Insured** was not acting at the **Organization's** specific request or direction.

(u) **"Plan"** means **Plan**, as that term is defined within the FLI Coverage Section.

(v) **"Policy Aggregate Limit of Liability"** means the **Policy Aggregate Limit of Liability** stated in Item 7(a) of the Declarations.

(w) **"Policy Period"** means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of cancellation of this policy.

(x) **"Pollutants"** means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and Waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

(y) **"Property Damage"** means damage to, or destruction of tangible or intangible property, including the loss of use thereof, or the loss of use of tangible or intangible property which has not been damaged or destroyed.

(z) **"Related Wrongful Act"** means a **Wrongful Act** which is the same, related or continuous, or **Wrongful Act** which arises from a common nucleus of facts. **Claims** can allege **Related Wrongful Acts** regardless of whether such **Claims** involve the same or different claimants, **Insureds** or legal causes of action.

(aa) **"Retaliation"** means a retaliatory act of an **Insured** alleged to be in response to any of the following activities: (1) the disclosure or threat of disclosure by an **Employee** to a superior or to

Case ID: 211100640

any governmental agency of any act by an **Insured** which is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder; (2) the actual or attempted exercise by an **Employee** of any right that such **Employee** has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (3) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle- blower" law; or (4) Employee strikes.

(bb) "**Separate Limit of Liability**" means each **Separate Limit of Liability**, if any, stated in Item 3 of the Declarations.

(cc) "**Shared Limit of Liability**" means each **Shared Limit of Liability**, if any, stated in Item 3 of the Declarations, which limit of liability shall be shared between all of the **Coverage Sections** which are listed below such **Shared Limit of Liability** in the Declarations.

(dd) "**Subsidiary**" means:

With respect to all **Coverage Sections** (other than the Crime Coverage Section):

(i) any organization of which, on or before the inception date of the **Policy Period**, the **Organization** owns more than fifty percent (50%) of the voting interest, either directly, or indirectly through one or more of its **Subsidiaries**, or has, on or before the inception of the **Policy Period**, the right to elect or appoint more than fifty percent (50%) of the voting directors, or trustees, either directly or indirectly through one or more of its **Subsidiaries**;

(ii) automatically any not- for- profit organization which becomes a **Subsidiary** during the **Policy Period** and of which the book value of such entity's assets determined in accordance with Generally Accepted Accounting Principles ("GAAP") totals less than 30% of the similarly calculated assets of the **Named Organization** as of the inception date of the **Policy Period**; or

(iii) any for- profit organization which becomes a **Subsidiary** during the **Policy Period** and of which the book value of such entity's assets determined in accordance with "GAAP" totals less than 20% of the similarly calculated assets of the **Named Organization** as of the inception date of the **Policy Period**.

With regard to subparagraphs (ii) and (iii) above, the **Named Organization** shall provide the **Insurer** with full particulars of the **Subsidiary** before the end of the **Policy Period**.

Any organization which becomes a **Subsidiary** during the **Policy Period**, but which exceeds the asset limitations stated in subparagraphs (ii) or (iii) above, shall be provided coverage under this policy, but only upon the condition that within 90 days after the date of its becoming a **Subsidiary**, the **Named Organization** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium or amendment of the provisions of this policy required by the **Insurer** relating to such new **Subsidiary**. Further, the coverage as shall be afforded to the new **Subsidiary** is conditioned upon the **Named Organization** paying when due any additional premium required by the **Insurer** relating to such new **Subsidiary**.

An organization becomes a **Subsidiary** when the **Named Organization** owns more than fifty percent (50%) of the voting interest, either directly, or indirectly through one or more of its **Subsidiaries**, or has, on or before the inception date of the **Policy Period**, the right to elect or appoint more than fifty percent (50%) of the voting directors, or trustees, either directly or indirectly through one or more of its **Subsidiaries**.

In all events, such coverage as is afforded under this policy with respect to a **Claim** made against any **Subsidiary**, or any **Individual Insured** of a **Subsidiary**, shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time that such **Subsidiary** became a **Subsidiary** and prior to the time that such **Subsidiary** ceased to be a **Subsidiary**.

(ee) "**Wrongful Act**" means a **Wrongful Act**, as that term is defined within each **Coverage Section**.

## 3. EXTENSIONS

© All rights reserved.

Case ID: 211100640

Subject otherwise to the terms hereof, this policy shall cover **Loss** arising from any **Claims** made against (i) the estates, heirs or legal representatives of deceased **Individual Insureds**, and the legal representatives of **Individual Insureds** in the event of an **Individual Insured's** incompetency, insolvency or bankruptcy, who were **Individual Insureds** at the time the **Wrongful Acts** upon which such **Claims** are based were committed; and (ii) the lawful spouse or **Domestic Partner** of an **Individual Insured** for all **Claims** arising solely out of his or her status as the spouse or **Domestic Partner** of an **Individual Insured**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Individual Insured** and the spouse or **Domestic Partner** or property transferred from the **Individual Insured** to the spouse or **Domestic Partner**; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** of the spouse or **Domestic Partner**, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Individual Insured**, subject to the policy's terms, conditions and exclusions.

## 4. EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim** made against an **Insured**:

(a) arising out of, based upon or attributable to the gaining of any profit or advantage to which any final adjudication establishes the **Insured** was not legally entitled;

(b) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or **Related Wrongful Act** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(c) alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation; or the alleging of any **Wrongful Act** which is the same or a **Related Wrongful Act** to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(d) alleging, arising out of, based upon, attributable to or in any way involving, directly or indirectly, **Bodily Injury** or **Property Damage**; provided, however, that with respect to the FLI Coverage Section only, this exclusion shall not apply to **Defense Costs** incurred in the defense of a **Claim** alleging a **Breach of Fiduciary Duty**;

(e) alleging, arising out of, based upon, attributable to or in any way involving, directly or indirectly:

    (1) the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or

    (2) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**,

including, but not limited to, a **Claim** alleging damage to the **Organization** or its members;

(f) for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state or local statutory law or common law; provided, however, that:

    (1) with respect to the EPL Coverage Section only, this exclusion shall not apply to (i) a **Claim** arising out of a violation of the Equal Pay Act, or (ii) **Loss** arising from a **Claim** for **Retaliation**; or

    (2) with respect to the FLI Coverage Section only, this exclusion shall not apply to a **Claim** arising out of a violation of **Employee Benefit Law**;

(g) alleging, arising out of, based upon, attributable to or in any way involving, directly or indirectly, the refusal, failure or inability of any **Insured(s)** to pay wages or overtime pay for services rendered (hereinafter, "Earned Wages") (as opposed to tort-based back pay or front pay

© All rights reserved.
Case ID: 211100640

damages) or for improper payroll deductions taken by any **Insured(s)** from any **Employee(s)** or purported **Employee(s)**, including, but not limited to, (i) any unfair business practice claim alleged because of the failure to pay Earned Wages, or (ii) any **Claim** seeking Earned Wages because any **Employee(s)** or purported **Employee(s)** was improperly classified or mislabeled as "exempt";

(h) alleging, arising out of, based upon or attributable to any obligation pursuant to any workers' compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar benefits; provided, however, that this exclusion shall not apply:

    (1) with respect to the EPL Coverage Section only, to **Loss** arising from a **Claim** for **Retaliation**; or

    (2) to the extent coverage is afforded pursuant to FLI Coverage Section only;

For the purpose of determining the applicability of the Exclusions 4(a), 4(d), 4(e), 4(f), 4(g) and 4(h) above: (1) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Individual Insured**; and (2) only facts pertaining to and knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer (or equivalent positions) of the **Organization** shall be imputed to the **Organization**.

This Clause 4. **EXCLUSIONS** shall not be applicable to **Crisis Management Loss** (as such term is defined in the D&O Coverage Section).

**5. LIMIT OF LIABILITY**

(a) With respect to all **Coverage Sections**, other than the Crime Coverage, the following shall apply:

**POLICY AGGREGATE LIMIT OF LIABILITY (FOR ALL LOSS UNDER THIS POLICY COMBINED - INCLUDING DEFENSE COSTS**

The **Policy Aggregate Limit of Liability** stated in Item 7(a) of the Declarations is the maximum limit of the **Insurer's** liability for all **Loss** under all **Coverage Sections** combined, arising out of all **Claims** first made against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable); however, the **Policy Aggregate Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability** for the **Policy Period**. Further, a **Claim** which is made subsequent to the **Policy Period** or **Discovery Period** (if applicable), which pursuant to Clause 7(b) or 7(c) is considered made during the **Policy Period** or **Discovery Period**, shall also be subject to the **Policy Aggregate Limit of Liability** stated in Item 7(a) of the Declarations and subject to the applicable **Separate Limit of Liability**, if any.

If **Separate Limits of Liability** are stated in Item 3 of the Declarations, then each such **Separate Limit of Liability** shall be the maximum limit of the **Insurer's** liability for all **Loss** arising out of all **Claims** first made against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable) with respect to the applicable **Coverage Section** as stated on the Declarations; provided, however, the **Separate Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Separate Limit of Liability** for the **Policy Period**. The **Separate Limits of Liability** shall be part of and not in addition to the **Policy Aggregate Limit of Liability** for all **Loss** under this policy as stated in Item 7(a) of the Declarations and shall in no way serve to increase the **Insurer's Limit of Liability** as therein stated.

If **Shared Limits of Liability** are stated in Item 3 of the Declarations, then each such **Shared Limit of Liability** shall be the maximum limit of the **Insurer's** liability for all **Loss** arising out of all **Claims** first made against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable) with respect to all **Coverage Sections** for which such **Shared Limit of Liability** is applicable, as indicated on the Declarations; provided, however, with respect to all **Coverage Sections** that have a **Shared Limit of Liability**, the **Shared Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Shared Limit of Liability** for the **Policy Period**. Any **Shared Limit of Liability** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability** for all **Loss** under this policy as stated in Item 7(a) of the

© All rights reserved.
Case ID: 211100640

Declarations and shall in no way serve to increase the **Policy Aggregate Limit of Liability** as therein stated.

**Defense Costs are not payable by the Insurer in addition to the Policy Aggregate Limit of Liability or any Separate Limit of Liability or Shared Limit of Liability. Defense Costs are part of Loss and as such are subject to the Policy Aggregate Limit of Liability for Loss and any applicable Separate Limit of Liability or Shared Limit of Liability. Amounts incurred for Defense Costs shall be applied against the Retention amount.**

(b) Solely with respect to the Crime Coverage Section, the following shall apply:

The most the **Insurer** will pay for **Loss** in any one **Occurrence**, as defined within the Crime Coverage Section, is the applicable **Per Occurrence Limit of Liability** shown in Item 5 of the Declarations.

## 6. RETENTION/DEDUCTIBLE CLAUSE

(a) With respect to all **Coverage Sections** other than the Crime Coverage Section, the following shall apply:

The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amount stated in Item 3 of the Declarations, such Retention amount to be borne by the **Organization** and/or the **Insureds** and shall remain uninsured, with regard to: (i) all **Indemnifiable Loss**; and (ii) **Loss** of the **Organization**. A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Acts**. In the event a **Claim** triggers more than one amount stated in Item 3 of the Declarations, only the highest such amount shall apply, which amount shall apply to all **Loss** under such **Claim**.

Notwithstanding the foregoing, with respect to any **Crisis Management Event** (as defined in the D&O Coverage Section), the **Insurer** shall only be liable for the amount of **Crisis Management Loss** (as defined in the D&O Coverage Section) arising from a **Crisis Management Event** (as defined in the D&O Coverage Section) which is in excess of the applicable Retention stated in Item 3 of the Declarations, such Retention amount to be borne by the **Organization** and shall remain uninsured, with regard to all **Crisis Management Loss** (as defined in the D&O Coverage Section).

In the event an **Organization** refuses to pay an applicable Retention due to **Financial Insolvency**, then the **Insurer** shall commence advancing **Loss** within the Retention, subject to the other terms, conditions and exclusions of this policy, provided that (i) the **Insurer** shall be entitled to recover the amount of **Loss** advanced within the Retention from the **Organization** pursuant to Clause 10. SUBROGATION, of this General Terms and Conditions; and (ii) the **Organization** hereby agrees to indemnify the **Insureds** to the fullest extent permitted by law taking all steps necessary in furtherance thereto, including the making in good faith of any required application for court approval and the passing of any required corporate resolution or the execution of any contract. The **Named Organization** and all **Subsidiaries** and **Affiliates** will be conclusively deemed to have indemnified the **Individual Insureds** to the extent that the **Organization** is permitted or required to indemnify them pursuant to law, common or statutory, or contract, or the charter or by-laws of the **Organization**.

(b) Solely with respect to the Crime Coverage Section, the following shall apply:

The **Insurer** will not pay for **Loss** in any one **Occurrence**, as defined within the Crime Coverage Section, unless the amount of loss exceeds the applicable Deductible Amount shown in Item 5 of the Declarations. The **Insurer** will then pay the amount of **Loss** in excess of the Deductible Amount, up to the applicable **Per Occurrence Limit of Liability**. In the event more than one Deductible Amount could apply to the same loss, only the highest Deductible Amount may be applied.

## 7. NOTICE/CLAIM REPORTING PROVISIONS

© All rights reserved.

Case ID: 211100640

**Notice hereunder shall be given in writing to AIG, Financial Lines Claims, P.O. Box 25947, Shawnee Mission, KS 66225 to the attention of "c-Claim Department." Notice shall include and reference this policy number as indicated in the Declarations, as well as the Coverage Section(s) under which the Claim is being noticed. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.**

1. With respect to all **Coverage Sections**, other than the Crime Coverage Section, the following shall apply:

   (a) The **Insureds** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the Insurer of any **Claim** made against an **Insured** or any **Crisis Management Event** (as defined in the D&O Coverage Section) as soon as practicable and either:

      (1) anytime during the **Policy Period** or during the **Discovery Period** (if applicable); or

      (2) within 30 days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** is reported no later than 30 days after the date such **Claim** was first made against an **Insured**.

   (b) If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause 7(a) above, then any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** for which such notice has been given, or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged in the **Claim** of which such notice has been given, shall be considered made at the time such notice was given.

   (c) If during the **Policy Period** or during the **Discovery Period** (if applicable) the **Insureds** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against the **Insureds** and shall give written notice to the **Insurer** of the circumstances and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

2. Solely with respect to the Crime Coverage Section, the following shall apply:

   (a) Duties in The Event of Loss:

      After any **Insured** discovers a loss or a situation that may result in loss of or damages to **Money**, **Securities** or **Other Property**, the **Insured** must:

      (1) Notify the **Insurer** as soon as possible, but no later than 60 days after discovery of a loss or a situation that may result in loss of or damages to **Money**, **Securities** or **Other Property**. If the **Insured** has reason to believe that any loss (except for loss covered under Insuring Agreements A or B of the Crime Coverage Section) involves a violation of law, the **Insured** must also notify the local law enforcement authorities.

      (2) Submit to an examination under oath at the **Insurer's** request and provide the **Insurer** with a signed statement of the **Insured's** answers.

      (3) Give the **Insurer** a detailed, sworn proof of loss within 120 days of the discovery of a loss or a situation that may result in loss of or damages to **Money**, **Securities** or **Other Property**, provided, however, that such proof of loss shall not be required solely in the event the **Insured** elects to have an independent Investigative Specialist investigate the facts and determine the quantum of loss pursuant to Clause 4.A.4 of the Crime Coverage Section and such report is issued pursuant to the terms and conditions of that Clause.

      (4) Cooperate with the **Insurer** in the investigation and settlement of any loss.

## 8. CANCELLATION CLAUSE

© All rights reserved.
Case ID: 211100640

This policy may be canceled by the **Named Organization** at any time only by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer** or its authorized agent. If this policy is canceled by the **Named Organization**, the **Insurer** shall retain the customary short rate proportion of the premium herein.

This policy may be canceled by or on the behalf of the **Insurer** only in the event of nonpayment of premium by the **Named Organization**. In the event of nonpayment of premium by the **Named Organization**, the **Insurer** may cancel this policy by delivering to the **Named Organization** or by mailing to the **Named Organization**, by registered, certified or other first class mail, at the **Named Organization's** address as shown in Item 1 of the Declarations, written notice stating when, not less than thirty (30) days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

## 9. CHANGE IN CONTROL OF NAMED ORGANIZATION

With respect to all **Coverage Sections**, other than the Crime Coverage Section, the following shall apply:

If during the **Policy Period**:

a. the **Named Organization** shall consolidate with or merge into, or sell all or substantially all of its assets to, any other person or entity, or group of persons or entities acting in concert;

b. any person or entity, or group of persons or entities, acting in concert shall acquire an amount of the voting interest representing more than fifty percent (50%) of the voting power for the election or appointment of directors, trustees or members of the board of managers of the **Named Organization**, or acquires the voting rights of such an amount of such interest; or

c. the **Named Organization** shall change from not-for-profit to for-profit status,

(any of the above events herein referred to as the "**Transaction**")

then this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the **Transaction**. This policy may not be canceled after the effective time of the **Transaction** and the entire premium for this policy shall be deemed earned as of such time. The **Named Organization** shall also have the right to an offer by the Insurer of a **Discovery Period** described in the Clause in each applicable **Coverage Section** entitled "Discovery Clause."

The **Named Organization** shall give the **Insurer** written notice of the **Transaction** as soon as practicable, but not later than thirty (30) days after the effective date of the **Transaction**.

## 10. SUBROGATION

With respect to all **Coverage Sections**, other than the Crime Coverage Section, the following paragraph shall apply:

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery thereof, and the **Insureds** shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of such documents necessary to enable the **Insurer** to effectively bring suit in the name of any **Insureds**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Individual Insured** under this policy unless such **Individual Insured** has been convicted of a criminal act, or been determined by a final adjudication to have committed a dishonest or fraudulent act or to have obtained any profit or advantage to which such **Individual Insured** was not legally entitled.

© All rights reserved.
Case ID: 211100640

Solely with respect to the FLI Coverage Section, in the event this policy has been purchased by an **Insured** other than a **Plan**, the **Insurer** shall have no right of recourse against an **Insured**. Notwithstanding the foregoing, the **Insurer** shall have a right of recourse against an **Insured** arising out of a **Claim** by an **Insured** against another **Insured** unless such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, assistance of or active participation by the **Insured** claimed against.

## 11. OTHER INSURANCE AND INDEMNIFICATION

Solely with respect to the EPL Coverage Section, unless expressly written to be excess over other applicable insurance, it is intended that the insurance provided by the EPL Coverage Section shall be primary.

With respect to all **Coverage Sections** other than the EPL Coverage Section, such insurance as is provided by this policy shall apply only as excess over any valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the **Policy Aggregate Limit of Liability** provided by this policy. This policy shall be specifically excess of any other policy pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

In the event of a **Claim** against an **Insured** arising out of his or her service as an **Outside Entity Executive**, or a **Claim** against an **Insured** for the **Insured's** liability with respect to a leased **Employee** as described in the definition of **"Employee"** in the D&O Coverage Section or the EPL Coverage Section, as applicable, coverage as is afforded by the D&O Coverage Section and the EPL Coverage Section shall be specifically excess of indemnification provided by such **Outside Entity** or such leasing company and any insurance provided to such **Outside Entity** or such leasing company.

Further, in the event other insurance is provided to an **Outside Entity** or leasing company referenced in the above paragraph, or is provided under any pension trust or employee benefit plan fiduciary liability insurance policy, and such other insurance is provided by the **Insurer** or any member company of AIG Property Casualty Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the **Limit of Liability** or failure to submit a notice of a **Claim**), then the **Insurer's** maximum aggregate **Limit of Liability** for all **Loss** combined in connection with a **Claim** covered, in part or in whole, by this policy and such other insurance policy issued by AIG, shall not exceed the greater of the **Policy Aggregate Limit of Liability** or any applicable **Separate Limit of Liability** or applicable **Shared Limit of Liability** of this policy or the limit of liability of such other AIG insurance policy.

## 12. NOTICE AND AUTHORITY

It is agreed that the **Named Organization** shall act on behalf of the **Subsidiaries** and all **Insureds** with respect to the giving of notice of **Claim** or giving and receiving notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining to tender the defense of a **Claim** to the **Insurer** and the exercising or declining of any right to a **Discovery Period**.

## 13. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**, which shall be in the sole and absolute discretion of the **Insurer**.

## 14. ACTION AGAINST INSURER

With respect to all **Coverage Sections**, other than the Crime Coverage, the following shall apply:

No action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **Insureds'** obligation to pay shall have been finally determined either by judgment against the **Insureds** after actual trial or by written agreement of the **Insureds**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or

© All rights reserved.
Case ID: 211100640

written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against the **Insureds** to determine the **Insureds'** liability, nor shall the **Insurer** be impleaded by the **Insureds** or their legal representatives. Bankruptcy or insolvency of the **Insureds** or of their estates shall not relieve the **Insurer** of any of its obligations hereunder.

## 15. REPRESENTATIONS AND SEVERABILITY

Solely with respect to the D&O Coverage Section and the EPL Coverage Section, the following shall apply:

In granting coverage under this policy, it is agreed that the **Insurer** has relied upon the statements, warranties and representations contained in the application for this policy (including materials submitted thereto and, if this is a renewal application, all such previous policy applications for which this policy is a renewal) as being accurate and complete. All such statements, warranties and representations are the basis for this policy, are material to the risk assumed by the Insurer and are to be considered as incorporated into this policy.

The **Insureds** agree that in the event that such statements, warranties and representations are not accurate and complete, then the coverage provided by this policy shall be deemed void *ab initio* solely with respect to any of the following **Insureds**:

(1) solely with respect to Loss other than **Non-Indemnifiable Loss**, any **Individual Insured** who knew as of the inception date of the **Policy Period** the facts that were not accurately and completely disclosed in the application;

(2) with respect to the D&O Coverage Section only, any **Organization**, under Clause 1. Insuring Agreements, COVERAGE B, to the extent it indemnifies any **Individual Insured** referenced in subparagraph (1) above;

(3) with respect to the D&O Coverage Section only, any **Organization**, under Clause 1. Insuring Agreement, COVERAGE C, if any past or present chief executive officer, chief operating officer or chief financial officer (or any equivalent position) of an **Organization** knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed in the application;

(4) with respect to the EPL Coverage Section only, any **Organization**, to the extent it indemnifies any **Individual Insured** referenced in subparagraph (1) above; and

(5) with respect to the EPL Coverage Section only, any **Organization**, if any past or present chief executive officer, chief operating officer, chief financial officer or director of human resources (or any equivalent position) of an **Organization** knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed in the application,

whether or not such **Individual Insured** knew that such facts were not accurately and completely disclosed in the application.

Except as provided in (1) through (5) above, no **Individual Insured's** knowledge shall be imputed to any other **Insured**.

Solely with respect to any **Non-Indemnifiable Loss** of any **Individual Insured**, under no circumstances shall the coverage provided by this policy be deemed void, whether by rescission or otherwise, but such coverage will be subject to all other terms, conditions and exclusions of the policy.

## 16. TERRITORY

(a) With respect to all **Coverage Sections**, other than the Crime Coverage Section, the following shall apply:

WORLDWIDE TERRITORY

Where legally permissible, this policy shall apply to any **Claim** made against any **Insured**

© All rights reserved.
Case ID: 211100640

anywhere in the world, with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

(b) Solely with respect to the Crime Coverage Section, the following shall apply:

TERRITORY

This policy covers acts committed or events occurring within the United States of America (including its territories and possessions) and Puerto Rico.

## 17. HEADINGS

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

© All rights reserved.

Case ID: 211100640



**National Union Fire Insurance Company of Pittsburgh, Pa.** ®

A capital stock company

## Not-For-Profit Risk Protector®

### Directors, Officers And Not-For-Profit Organization Liability Coverage Section One ("D&O Coverage Section")

**Notice:** Pursuant to Clause 1 of the General Terms and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and are expressly applicable to this Coverage Section, unless otherwise explicitly stated to the contrary in either the General Terms and Conditions or in this Coverage Section.

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by application, including its attachments and the material incorporated therein, which form a part of this policy, the **Insurer** agrees as follows:

### 1. INSURING AGREEMENTS

#### COVERAGE A: INDIVIDUAL INSURED INSURANCE

This policy shall pay on behalf of each and every **Individual Insured Loss** arising from a **Claim** first made against such **Individual Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any actual or alleged **Wrongful Act** of such **Individual Insured**, except when and to the extent that the **Organization** has indemnified the **Individual Insured**. The **Insurer** shall, in accordance with and subject to Clause 5 of this **Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

#### COVERAGE B: ORGANIZATION INDEMNIFICATION REIMBURSEMENT INSURANCE

This policy shall pay on behalf of the **Organization Loss** arising from a **Claim** first made against an **Individual Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any actual or alleged **Wrongful Act** of such **Individual Insured**, but only when and to the extent that the **Organization** has indemnified such **Individual Insured** for such **Loss** pursuant to law, common or statutory, or contract, or the Charter or By-laws of the **Organization** duly effective under such law which determines and defines such rights of indemnity. The **Insurer** shall, in accordance with and subject to Clause 5 of this **Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

#### COVERAGE C: ORGANIZATION ENTITY COVERAGE

This policy shall pay on behalf of the **Organization Loss** arising from a **Claim** first made against the **Organization** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any actual or alleged **Wrongful Act** of the **Organization**. The **Insurer** shall, in accordance with and subject to Clause 5 of this **Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

#### COVERAGE D: CRISISFUND® INSURANCE

This policy shall pay the **Crisis Management Loss** of an **Organization** solely with respect to a **Crisis Management Event** occurring during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, up to the amount of the **Crisis Management Fund**; provided that payment of any **Crisis Management Loss** under this policy shall not waive any of the **Insurer's** rights under this policy or at law. Coverage D shall apply regardless of whether a **Claim** is ever made against an **Insured** arising from such **Crisis Management Event** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim.**

#### DEFENSE PROVISIONS

The **Insurer** does not assume any duty to defend; provided, however, the **Named Organization** may at its sole option, and in accordance with Clause 5 of this **Coverage Section**, tender to the **Insurer**

94207 (3/07) 1 © All rights reserved.

Case ID: 211100640

the defense of a **Claim** for which coverage is provided by this policy. Regardless of whether the defense is so tendered, the **Insurer** shall advance **Defense Costs** (excess of the Retention amount) of such **Claim** prior to its final disposition. Selection of counsel to defend a **Claim** shall be made in accordance with Clause 6 of this Coverage Section.

2. **DEFINITIONS**

(a) "**Claim**" means:

(1) a written demand for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute of limitations); or

(2) a civil, criminal, regulatory or administrative proceeding for monetary, non-monetary or injunctive relief which is commenced by:

(i) service of a complaint or similar pleading;

(ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or

(iii) receipt or filing of a notice of charges.

(b) "**Crisis Management Event**" means **Crisis Management Event**, as that term is defined in Appendix B attached to this policy.

(c) "**Crisis Management Fund**" means the dollar amount set forth in Item 7(b) of the Declarations.

(d) "**Crisis Management Loss**" means **Crisis Management Loss**, as that term is defined in Appendix B attached to this policy.

(e) "**Crisis Management Services**" means **Crisis Management Services**, as that term is defined in Appendix B attached to this policy.

(f) "**Employee(s)**" means any past, present or future employee of the **Organization**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee or volunteer of the **Organization** in his or her capacity as such. An individual who is leased to the **Organization** shall also be an **Employee**, but only if the **Organization** provides indemnification to such leased individual in the same manner as is provided to the **Organization's** employees. Any other individual who is contracted to perform work for the **Organization**, or who is an independent contractor for the **Organization** shall also be an **Employee**, but only if the **Organization** provides or is required to provide indemnification to such individual in the same manner as provided to the **Organization's** employees, pursuant to a written contract.

(g) "**Individual Insured(s)**" means a past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, executive director, department head, committee member (of a duly constituted committee of the **Organization**), staff or faculty member (salaried or non-salaried), or **Employee** of the **Organization**, or **Outside Entity Executive**. Coverage will automatically apply to all new persons who become **Individual Insureds** after the inception date of this policy.

(h) "**Insured(s)**" means the **Organization** and all **Individual Insureds**.

(i) "**Loss**" means damages, judgments, settlements, pre- and post-judgment interest, **Defense Costs** and **Crisis Management Loss**; however, **Loss** shall not include: (1) any amount for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**; (2) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed; (3) civil or criminal fines or penalties; (4) taxes or tax penalties (whether imposed by federal, state, local or other governmental authority);

Subject to the other terms, conditions and exclusions of this policy, **Loss** shall include **Defense Costs** for items specifically excluded from **Loss** pursuant to subparagraphs (1)-(4), including, without limitation, **Defense Costs** incurred in connection with a **Claim** seeking an assessment of taxes, initial taxes, additional taxes, tax deficiencies, excise taxes or penalties pursuant to the following sections of the Internal Revenue Code of 1986 (as amended):

 © All rights reserved.

Case ID: 211100640

Section 4911 (tax on excess expenditures to influence legislation);
Section 4940 (a) (tax on net investment income of tax- exempt foundations);
Section 4941 (taxes on self- dealing);
Section 4942 (taxes on failure to distribute income);
Section 4943 (taxes on excess business holding);
Section 4944 (taxes on investments which jeopardize charitable purpose);
Section 4945 (taxes on taxable expenditures);
Section 6652 (c) (1) (A) and (B) (penalties for failure to file certain information returns or registration statements);
Section 6655 (a) (1) (penalties for failure to pay estimated income tax); and
Section 6656 (a) and (b) (penalties for failure to make deposit of taxes).

**Loss** shall also include any **"Excess Benefits"** penalty assessed in the amount of 10% by the Internal Revenue Service ("IRS") against any **Insured(s)** for management's involvement in the award of an **"Excess Benefit"** and the **Defense Costs** attributable thereto. **Loss** shall specifically exclude: (1) any 25% penalty assessed by the IRS against an **Insured** deemed to have received an **Excess Benefit**; (2) **Defense Costs** incurred to defend any **Insured** if it has been in fact determined that such individual received an **Excess Benefit**; and (3) any 200% penalty assessed by the IRS for failure to correct the award of an **Excess Benefit**. The term **"Excess Benefits"** means an excess benefit as defined in the Taxpayer Bill of Rights Act, 2, 26 U.S. 4958.

**Loss** shall also specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to Exclusion (a) of this **Coverage Section** and Exclusion (a) of the General Terms and Conditions) punitive, exemplary and multiple damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages. For purposes of such coverage, "applicable law" includes, but is not limited to, the following jurisdictions: (a) where the **Wrongful Act** actually or allegedly took place; (b) where the damages are awarded; (c) where the **Named Organization** resides, is incorporated or has its principal place of business; and (d) where the **Insurer** is incorporated or has its principal place of business.

(j)  **"Material Effect"** means **Material Effect**, as that term is defined in Appendix B attached to this policy.

(k)  **"Settlement Opportunity"** means an **Insurer** recommended settlement that is within the **Policy Aggregate Limit of Liability**, **Separate Limit of Liability** or **Shared Limit of Liability**, if any, and that is acceptable to the claimant.

(l)  **"Wrongful Act"** means:

(1)  with respect to **Individual Insureds**, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Insureds** in his/her respective capacities as such, or any matter claimed against such **Individual Insured** solely by reason of his/her status as an **Individual Insured** of the **Organization**;

(2)  with respect to the **Organization** under Coverage C, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by or on behalf of the **Organization**;

(3)  with respect to **Outside Entity Executives**, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as such;

(4)  with respect to both the **Individual Insureds** and the **Organization** and subject to subparagraphs (1), (2) and (3) above, "**Wrongful Act**" shall specifically include:

(a)  violation of the Sherman Antitrust Act or similar federal, state or local statutes or rules;

(b)  libel, slander, defamation or publication or utterance in violation of an individual's right of privacy;

94207 (3/07)                                         3                        © All rights reserved.

Case ID: 211100640

(c) wrongful entry or eviction or other invasion of the right of occupancy;

(d) false arrest or wrongful detention;

(e) plagiarism; and

(f) infringement of copyright or trademark or unauthorized use of title.

## 3. EXCLUSIONS

In addition to the exclusions set forth in Clause 4 of the General Terms and Conditions, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

(a) arising out of, based upon or attributable to the committing of any criminal or deliberate fraudulent act if any final adjudication establishes that such criminal or deliberate fraudulent act was committed;

[The **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured** for the purpose of determining the applicability of this exclusion.]

(b) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Individual Insured** serving in his/her capacity as a director, officer, trustee, trustee emeritus, governor or **Employee** (or equivalent position) of any entity that is not the **Organization** or an **Outside Entity**, or by reason of his/her status as a director, trustee, trustee emeritus, governor or **Employee** (or equivalent position) of such other entity;

(c) which is brought by or on behalf of the **Organization** against any **Individual Insured**; provided however, this exclusion shall not apply to any derivative **Claim** made on behalf of the **Organization** by a member, an attorney general or any other such representative party if such action is brought and maintained independently of and without the solicitation of or assistance of, or active participation of or intervention of any **Individual Insured** or the **Organization** or any **Affiliate** thereof;

(d) for any **Wrongful Act** arising out of an **Individual Insured** serving as an **Outside Entity Executive**, if such **Claim** is brought by the **Outside Entity** or by any director, officer, trustee, trustee emeritus or governor thereof;

(e) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of an **Insured** under any express contract or agreement; provided, however, that this exclusion shall not apply to liability which would have attached in the absence of such express contract or agreement;

(f) alleging, arising out of, or in any way relating to any purchase or sale of securities by the **Named Organization**, **Subsidiary** or **Affiliate** or **Claims** brought by securities holders of the **Organization** in their capacity as such; provided, however, this exclusion shall not apply to the issuance by the **Organization** of tax exempt bond debt or **Claims** brought by tax exempt bond debt holders;

(g) alleging, arising out of, based upon, or attributable to, directly or indirectly resulting from, in consequence of, or in any way involving employment of any individual or any employment practice (including but not limited to wrongful dismissal, discharge or termination, discrimination, harassment, retaliation or other employment- related claim); and

(h) alleging, arising out of, based upon, or attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged harassment (including sexual harassment, whether "quid pro quo", hostile work environment or otherwise) or unlawful discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability), or the violation of the civil rights of a person relating to such harassment or discrimination, when such acts are alleged to be committed against anyone other than an **Individual Insured** or applicant for employment with the **Organization** or an **Outside Entity**, including, but not limited to, students, patients, members, customers and suppliers.

 © All rights reserved. Case ID: 211100640

This Clause 3 shall not be applicable to **Crisis Management Loss.**

**4. LIMIT OF LIABILITY**

Clause 5 of the General Terms and Conditions is modified to the extent necessary to provide the following:

The maximum limit of the **Insurer's** liability for **Crisis Management Loss** arising from all **Crisis Management Events** combined occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be the amount set forth in Item 7(b) of the Declarations as the **Crisis Management Fund**. The **Crisis Management Fund** shall be the aggregate limit of the **Insurer's** liability under this policy for all **Crisis Management Events** regardless of the number of **Crisis Management Events** occurring during the **Policy Period** or the **Discovery Period** (if applicable). The **Crisis Management Fund** shall be part of, and not in addition to, the **Policy Aggregate Limit** of Liability stated in Item 7(a) of the Declarations of this policy or any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **Coverage Section** as stated in Item 3 of the Declarations, and will in no way serve to increase the **Insurer's Policy Aggregate Limit of Liability** or any **Separate Limit of Liability** or **Shared Limit of Liability** as stated therein.

**5. DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

The **Insurer** does not assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them.

Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of any **Claim** to the **Insurer**, which right shall be exercised in writing by the **Named Organization** on behalf of all **Insureds** to the **Insurer** pursuant to the notice provisions of Clause 7 of the General Terms and Conditions. This right shall terminate if not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**, pursuant to Clause 7 of the General Terms and Conditions. Further, from the date the **Claim** is first made against the **Insureds** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, even if such **Claim** is groundless, false or fraudulent. The assumption of the defense of the **Claim** shall be effective upon written confirmation thereof sent by the **Insurer** to the **Named Organization**. Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense of such **Claim**, including, but not limited to, negotiating a settlement, subject to the provisions of this Clause 5. However, the **Insurer** shall not be obligated to defend such **Claim** after the **Policy Aggregate Limit of Liability** or **Separate Limit of Liability** or **Shared Limit of Liability**, if any, has been exhausted, or after an **Insured's** rejection of (or failure or refusal to accept within the time prescribed herein) a **Settlement Opportunity.**

When the **Insurer** has not assumed the defense of a **Claim** pursuant to this Clause 5, the **Insurer** shall advance nevertheless, excess of any applicable retention amount and at the written request of the **Insured**, **Defense Costs** prior to the final disposition of a **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured** or **Organization**, severally according to their respective interests, in the event and to the extent that each and every **Insured** or **Organization** shall not be entitled under the terms and conditions of this policy to payment of such **Loss**.

**The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer, when it has not assumed the defense of a Claim pursuant to this Clause 5, shall be entitled to effectively**

© All rights reserved.
Case ID: 211100640

associate in the defense, the prosecution and the negotiation of any settlement of any **Claim** that involves or appears reasonably likely to involve the **Insurer**; and provided further that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or Defense Costs, or any portion thereof, to the extent such **Loss** is not covered under the terms of this policy.

The **Insurer** shall have the right to fully and effectively associate with each and every **Organization** and **Individual Insured** in the defense of any **Claim** that involves, or appears reasonably likely to involve, the **Insurer**, including but not limited to negotiating a settlement. Each and every **Organization** and **Individual Insured** shall give the **Insurer** full cooperation and such information as it may reasonably require.

In the event the **Insured(s)** consent to a **Settlement Opportunity** within thirty (30) days of the date the **Insureds** are first made aware of the **Settlement Opportunity** (or in the case of a **Settlement Opportunity** which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made), then the **Organization's** applicable Retention amount shall be retroactively reduced by ten percent (10%) for such **Loss**. It shall be a condition to such reduction that all **Insureds** must consent to such settlement.

However, if a **Settlement Opportunity** arises and the **Insureds** do not consent to the settlement within the time prescribed above, the Retention amount shall remain the applicable amount set forth in Item 3 of the Declarations even if consent is given to a subsequent **Settlement Opportunity**.

Furthermore, in the event the **Insureds** do not consent to the first **Settlement Opportunity** within the time prescribed above, then, subject to the **Policy Aggregate Limit of Liability** and **Separate Limit of Liability** or **Shared Limit of Liability**, if any, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed: (1) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer** ("Settlement Opportunity Amount"), plus (2) 50% of covered **Loss** in excess of such **Settlement Opportunity Amount**, it being a condition of this insurance that the remaining 50% of such **Loss** excess of the **Settlement Opportunity Amount** shall be carried by the **Organization** and the **Insureds** at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the **Settlement Opportunity Amount** exceeds the applicable Retention amount stated in Item 3 of the Declarations.

This Clause 5 shall not be applicable to **Crisis Management Loss**. Nevertheless, the **Insurer** does not, under this policy, assume any duty to defend.

## 6. PRE-AUTHORIZED DEFENSE ATTORNEYS

This Clause applies to all **Claims** under this **Coverage Section**. Affixed as Appendix A hereto and made a part of this policy is a list or lists of Panel Counsel law firms (herein "**Panel Counsel Firms**") from which a selection of legal counsel shall be made to conduct the defense of any **Claim(s)** against any **Insured(s)** pursuant to the terms set forth below.

In the event the **Insurer** has assumed the defense pursuant to Clause 5 of this **Coverage Section**, then the **Insurer** shall select a **Panel Counsel Firm** to defend the **Insureds**. In the event the **Insureds** are already defending the **Claim**, then the **Insureds** shall select a **Panel Counsel Firm** to defend the **Insureds**.

The selection of the **Panel Counsel Firm**, whether done by the **Insurer** or the **Insureds**, shall be from the list of **Panel Counsel Firms** designated for the type of **Claim** and shall be from the jurisdiction in which the **Claim** is brought. In the event a **Claim** is brought in a jurisdiction not included on the appropriate list(s), the selection shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the **Claim** is maintained or where the headquarters or State of formation of the **Named Organization** is located. In such instance, however, the **Insurer** shall, at the written request of the **Named Organization**, assign a non-**Panel Counsel Firm** of the **Insurer's** choice in the jurisdiction in which the **Claim** is brought to function as "local counsel" on

© All rights reserved.
Case ID: 211100640

the **Claim** to assist the **Panel Counsel Firm**, which will function as "lead counsel" in conducting the defense of the **Claim**.

With the express prior written consent of the **Insurer**, an **Insured** may select (in the case of the **Insured** defending the **Claim**), or cause the **Insurer** to select (in the case of the **Insurer** defending the **Claim**), a **Panel Counsel Firm** different from that selected by other **Insured** defendants if such selection is required due to an actual conflict of interest.

The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no change shall be made to the specific list attached to this policy during the **Policy Period** without the consent of the **Named Organization**.

## 7. DISCOVERY CLAUSE

Except as indicated below, if the **Named Organization** shall cancel or the **Named Organization** or the **Insurer** shall refuse to renew this **Coverage Section**, then solely with respect to this **Coverage Section**, the **Named Organization** shall have the right to a period of such one, two, three, four, five or six years or of unlimited duration following the effective date of such cancellation or nonrenewal upon payment of the respective "**Additional Premium Amount**" described below (herein referred to as the "**Discovery Period**") in which to give to the **Insurer** written notice of **Claims** first made against the **Insureds** during said **Discovery Period** for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the **Insurer** within thirty (30) days of the effective date of cancellation or nonrenewal.

The **Additional Premium Amount** for: (1) one year shall be 125% of the "full annual premium"; (2) two years shall be 175% of the "full annual premium"; (3) three years shall be 225% of the "full annual premium"; (4) four years shall be 250% of the "full annual premium"; (5) five years shall be 275% of the "full annual premium"; (6) six years shall be 300% of the "full annual premium"; and (7) a discovery period of unlimited duration shall be 325% of the "full annual premium". As used herein, "full annual premium" means the premium level in effect for this **Coverage Section** immediately prior to the end of the **Policy Period**.

In the event of a **Transaction**, as defined in Clause 9 of the General Terms and Conditions, the **Named Organization** shall have the right, within thirty (30) days before the end of the **Policy Period**, to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**) for a period of no less than six (6) years or for such longer or shorter period as the **Named Organization** may request. The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions and premium as the Insurer may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

## 8. ORDER OF PAYMENTS

In the event of **Loss** arising from any **Claim(s)** for which payment is due under the provisions of this **Coverage Section** but which **Loss**, in the aggregate, exceeds the remaining available **Limit of Liability** of this **Coverage Section**, then the **Insurer** shall:

(i) first pay such **Loss** for which coverage is provided under Coverage A of this **Coverage Section**, then with respect to whatever remaining amount of the **Limit of Liability** is available after payment of such **Loss**,

(ii) then pay such **Loss** for which coverage is provided under Coverage B of this **Coverage Section**, and

(iii) then pay such **Loss** for which coverage is provided under Coverage C or Coverage D of this **Coverage Section**.

© All rights reserved.
Case ID: 211100640

In the event of **Loss** arising from a **Claim(s)** for which payment is due under the provisions of this **Coverage Section** (including those circumstances described in the first paragraph of this Section 8), the **Insurer** shall at the written request of the **Named Organization**:

    (i)  first pay such **Loss** for which coverage is provided under Coverage A of this **Coverage Section**, then

    (ii)  either pay or hold payment for such **Loss** for which coverage is provided under Coverage B, Coverage C or Coverage D of this **Coverage Section**.

In the event that the **Insurer** withholds payment under Coverage B, Coverage C or Coverage D of this **Coverage Section** pursuant to the above request, then the **Insurer** shall at any time in the future, at the request of the **Organization**, release such **Loss** payment to the **Organization**, or make such **Loss** payment directly to the **Individual Insured** in the event of covered **Loss** under any **Claim(s)** covered under this **Coverage Section** pursuant to Coverage A of this **Coverage Section**.

The bankruptcy or insolvency of any **Organization** or any **Individual Insured** shall not relieve the Insurer of any of its obligations to prioritize payment of covered **Loss** under this **Coverage Section** pursuant to this Clause 8.

© All rights reserved.
Case ID: 211100640



**National Union Fire Insurance Company of Pittsburgh, Pa.** ®
A capital stock company

**Not- For- Profit Risk Protector®**

**Employment Practices Liability**
**Coverage Section Two**
**("EPL Coverage Section")**

<u>Notice</u>: **Pursuant to Clause 1 of the General Terms and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and are expressly applicable to Coverage Section, unless otherwise explicitly stated to the contrary in either the General Terms and Conditions or in this Coverage Section.**

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by application, including its attachments and the material incorporated therein, which form a part of this policy, the **Insurer** agrees as follows:

1. **INSURING AGREEMENT**

   This policy shall pay the **Loss** of each and every **Insured** arising from a **Claim** first made against such **Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any **Wrongful Act**. The **Insurer** shall, in accordance with and subject to Clause 4 of this **Coverage Section** advance **Defense Costs** of such **Claim** prior to its final disposition.

2. **DEFINITIONS**

   (a) **"Claim"** means:

   (1) a written demand for monetary relief or non- monetary relief (including any request to toll or waive any statute of limitations); or

   (2) a civil, administrative, regulatory or arbitration proceeding for monetary relief or non- monetary relief which is commenced by:
   (i) service of a complaint or similar pleading; or
   (ii) receipt or filing of a notice of charges.

   The term **Claim** shall include an Equal Employment Opportunity Commission ("EEOC") or Office of Federal Contract Compliance Program ("OFCCP") (or similar federal, state or local agency) proceeding or investigation commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the **Insured**.

   However, in no event shall the term **Claim** include any labor or grievance proceeding which is subject to a collective bargaining agreement.

   (b) **"Employee"** means any past, present or future employee of the **Organization**, whether such employee is in a supervisory, co- worker or subordinate position or otherwise, including any full- time, part- time, seasonal and temporary employee or volunteer of the **Organization** in his or her capacity as such. An individual who is leased to the **Organization** shall also be an **Employee**, but only if the **Organization** provides indemnification to such leased individual in the same manner as is provided to the **Organization's** employees. Any other individual who is contracted to perform work for the **Organization**, or who is an independent contractor for the **Organization** shall also be an **Employee**, but only if the **Organization** provides or is required to provide indemnification to such individual, in the same manner as that provided to the **Organization's** employees, pursuant to a written contract.

   (c) **"Employment Practices Violation"** means any actual or alleged:

   (1) wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

   (2) harassment (including sexual harassment, whether "quid pro quo", hostile work environment or otherwise);

94210 (3/07)
1
© All rights reserved.

Case ID: 211100640

(3) discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability);

(4) **Retaliation**;

(5) employment-related misrepresentation(s) to an **Employee** or applicant for employment with the **Organization**;

(6) employment-related libel, slander, humiliation, defamation or invasion of privacy;

(7) wrongful failure to employ or promote;

(8) wrongful deprivation of career opportunity with the **Organization**, wrongful demotion or negligent **Employee** evaluation, including the giving of negative or defamatory statements in connection with an **Employee** reference;

(9) wrongful discipline;

(10) failure to grant tenure or practice privileges;

(11) failure to provide or enforce adequate or consistent **Organization** policies or procedures relating to any **Employment Practices Violation**; and

(12) violation of an individual's civil rights relating to any of the above.

but only if the **Employment Practices Violation** relates to an **Individual Insured**, or applicant for employment, with the **Organization** or an **Outside Entity**, whether direct, indirect, intentional or unintentional.

(d) "**Individual Insured(s)**" means a past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, executive director, department head, committee member (of a duly constituted committee of the **Organization**), staff or faculty member (salaried or non-salaried), or **Employee** of the **Organization**, and an **Outside Entity Executive**. Coverage will automatically apply to all new persons who become **Individual Insureds** after the inception date of this policy.

(e) "**Insured(s)**" means the **Organization** and any **Individual Insured**.

(f) "**Loss**" means damages (including front pay and back pay), judgments (including pre-judgment and post-judgment interest on that part of any covered judgment paid under this **Coverage Section**), settlements, statutory attorneys' fees and **Defense Costs**; however, **Loss** shall not include: (1) any amount for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**; (2) employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (3) civil or criminal fines or penalties; (4) taxes or tax penalties (whether imposed by federal, state, local or other governmental authority); (5) any liability or costs incurred by any **Insured** to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to a **Claim**; (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. **Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (1)-(6) above of this Definition, subject to the other terms, conditions and exclusions of this policy.

Notwithstanding the foregoing paragraph, "**Loss**" shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to Exclusion (a) of this **Coverage Section** and Exclusion (a) of the General Terms and Conditions) punitive, exemplary and multiple damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages. For purposes of such coverage, "applicable law" includes, but is not limited to, the following jurisdictions: (a) where the **Wrongful Act** actually or allegedly took place; (b) where the damages

© All rights reserved.

Case ID: 211100640

are awarded; (c) where the **Named Organization** resides, is incorporated or has its principal place of business; and (d) where the **Insurer** is incorporated or has its principal place of business.

(g) "**Non-Employment Discrimination**" means any actual or alleged harassment or unlawful discrimination, as described in subparagraphs 2(c)(2) and 2(c)(3) of the definition of **Employment Practices Violation**, or the violation of the civil rights of a person relating to such harassment or discrimination, when such acts are alleged to be committed against anyone other than an **Individual Insured** or applicant for employment with the **Organization** or an **Outside Entity**, including, but not limited to, students, patients, members, customers and suppliers.

(h) "**Settlement Opportunity**" means an **Insurer** recommended settlement that is within the **Policy Aggregate Limit of Liability**, **Separate Limit of Liability** or **Shared Limit of Liability**, if any, and that is acceptable to the claimant.

(i) "**Wrongful Act(s)**" means: (1) an **Employment Practices Violation**, or (2) **Non-Employment Discrimination**.

## 3. EXCLUSIONS

In addition to the exclusions set forth in Clause 4 of the General Terms and Conditions, the **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim** made against any **Insured**:

(a) arising out of, based upon or attributable to the committing of any criminal or deliberate fraudulent act if any final adjudication establishes that such criminal or deliberate fraudulent act was committed;

[The **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured** for the purpose of determining the applicability of the foregoing exclusion.]

(b) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of any **Insured** under any express contract or agreement; provided, however, this exclusion shall not apply to:

(i) the extent any liability does not arise under such express contract or agreement; or

(ii) **Loss** constituting **Defense Costs** for express, written employment contracts; or

(c) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Individual Insured** serving in any capacity, other than as an **Individual Insured** of the **Organization** or as an **Outside Entity Executive** of an **Outside Entity**.

## 4. DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)

The **Insurer** does not assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them.

Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of the **Claim** to the **Insurer**, which right shall be exercised in writing by the **Named Organization** on behalf of all **Insureds** to the **Insurer** pursuant to the notice provisions of Clause 7 of the General Terms and Conditions. This right shall terminate if not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**, pursuant to Clause 7 of the General Terms and Conditions. Further, from the date the **Claim** is first made against the **Insureds** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of the **Insureds** or the **Insurer** with respect to such **Claim**. Provided that the **Insureds** have complied with the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent. The assumption of the defense of the **Claim** shall be effective upon written confirmation sent thereof by the **Insurer** to the **Named Organization**. Once the defense has been so tendered, the **Insured** shall have the right to fully and effectively associate with the **Insurer** in the defense and negotiation of

© All rights reserved.
Case ID: 211100640

any settlement of any **Claim**, subject to the provisions of this Clause 4. However, the **Insurer** shall not be obligated to defend such **Claim** after the **Policy Aggregate Limit of Liability**, **Separate Limit of Liability** or **Shared Limit of Liability**, if any, has been exhausted, or after an **Insured**'s rejection of (or failure or refusal to accept within the prescribed time herein) a **Settlement Opportunity**.

When the **Insurer** has not assumed the defense of a **Claim** pursuant to this Clause 4, the **Insurer** shall advance nevertheless, at the written request of the **Insured**, **Defense Costs** prior to the final disposition of a **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds** or the **Organization**, severally according to their respective interests, in the event and to the extent that the **Insureds** or the **Organization** shall not be entitled under the terms and conditions of this policy to payment of such **Loss**.

**The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs, which have been consented to by the Insurer, in writing, shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer, when it has not assumed the defense of a Claim pursuant to this Clause 4, shall be entitled to fully and effectively associate in the defense and negotiation of any settlement of any Claim, and provided further that in all events the Insurer may withhold consent to any settlement, stipulated judgment or Defense Costs, or any portion thereof, to the extent such loss is not covered under the terms of this policy.**

The **Insurer** shall have the right to fully and effectively associate with the **Organization** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including but not limited to negotiating a settlement. The **Organization** and the **Insureds** shall give the **Insurer** full cooperation and such information as it may reasonably require.

In the event the **Insured(s)** consent to a **Settlement Opportunity** within thirty (30) days of the date the **Insureds** are first made aware of the **Settlement Opportunity** (or in the case of a **Settlement Opportunity** which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made), then the **Organization's** applicable Retention amount shall be retroactively reduced by ten percent (10%) for such **Loss**. It shall be a condition to such reduction that all **Insureds** must consent to such settlement.

However, if a **Settlement Opportunity** arises and the **Insureds** do not consent to the settlement within the time prescribed above, the Retention amount shall remain the applicable amount set forth in Item 3 of the Declarations even if consent is given to a subsequent **Settlement Opportunity**.

Furthermore, in the event the **Insureds** do not consent to the first **Settlement Opportunity** within the time prescribed above, then, subject to the **Policy Aggregate Limit of Liability** and **Separate Limit of Liability** or **Shared Limit of Liability**, if any, the **Insurer's** liability for all Loss on account of such Claim shall not exceed: (1) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer** ("**Settlement Opportunity Amount**"), plus (2) 50% of covered **Loss** in excess of such Settlement Opportunity Amount, it being a condition of this insurance that the remaining 50% of such **Loss** excess of the Settlement Opportunity Amount shall be carried by the **Organization** and the **Insureds** at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the Settlement Opportunity Amount exceeds the applicable Retention amount stated in Item 3 of the Declarations.

## 5. PRE-AUTHORIZED DEFENSE ATTORNEYS

This Clause applies to all **Claims** under this **Coverage Section**. Affixed as Appendix A hereto and made a part of this policy is a list or lists of Panel Counsel law firms (herein "**Panel Counsel Firms**") from which a selection of legal counsel shall be made to conduct the defense of any **Claim(s)** against any **Insured(s)** pursuant to the terms set forth below.

© All rights reserved.

Case ID: 211100640

In the event the **Insurer** has assumed the defense pursuant to Clause 4, then the **Insurer** shall select a **Panel Counsel Firm** to defend the **Insureds**. In the event the **Insureds** are already defending a **Claim**, then the **Insureds** shall select a **Panel Counsel Firm** to defend the **Insureds**.

The selection of the **Panel Counsel Firm**, whether done by the **Insurer** or the **Insureds**, shall be from the list of **Panel Counsel Firms** designated for the type of **Claim** and be from the jurisdiction in which the **Claim** is brought. In the event a **Claim** is brought in a jurisdiction not included on the appropriate list(s), the selection shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the **Claim** is maintained or where the corporate headquarters or state of formation of the **Named Organization** is located. In such instance, however, the **Insurer** shall, at the written request of the **Named Organization** assign a non-**Panel Counsel Firm** of the **Insurer's** choice in the jurisdiction in which the **Claim** is brought to function as "local counsel" on the **Claim** to assist the **Panel Counsel Firm**, which will function as "lead counsel" in conducting the defense of the **Claim**.

With the express prior written consent of the **Insurer**, an **Insured** may select (in the case of the **Insured** defending the **Claim**), or cause the **Insurer** to select (in the case of the **Insurer** defending the **Claim**), a **Panel Counsel Firm** different from that selected by other **Insured** defendants if such selection is required due to an actual conflict of interest.

The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no change shall be made to the specific list attached to this policy during the **Policy Period** without the consent of the **Named Organization**.

## 6. DISCOVERY CLAUSE

Except as indicated below, if the **Named Organization** shall cancel or the **Named Organization** or the **Insurer** shall refuse to renew this **Coverage Section**, then solely with respect to this **Coverage Section**, the **Named Organization** shall have the right to a period of one, two, three, four, five or six years or of unlimited duration following the effective date of such cancellation or nonrenewal upon payment of the respective "**Additional Premium Amount**" described below (herein referred to as the "**Discovery Period**") in which to give to the **Insurer** written notice of **Claims** first made against the **Insureds** during said **Discovery Period** for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the **Insurer** within thirty (30) days of the effective date of cancellation or nonrenewal.

The **Additional Premium Amount** for: (1) one year shall be 125% of the "full annual premium"; (2) two years shall be 175% of the "full annual premium"; (3) three years shall be 225% of the "full annual premium"; (4) four years shall be 250% of the "full annual premium"; (5) five years shall be 275% of the "full annual premium"; (6) six years shall be 300% of the "full annual premium"; and (7) a discovery period of unlimited duration shall be 325% of the "full annual premium". As used herein, "full annual premium" means the premium level in effect for this **Coverage Section** immediately prior to the end of the **Policy Period**.

In the event of a **Transaction**, as defined in Clause 9 of the General Terms and Conditions, the **Named Organization** shall have the right, within thirty (30) days before the end of the **Policy Period**, to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**) for a period of no less than six (6) years or for such longer or shorter period as the **Named Organization** may request. The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions and premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable, except for non-payment of premium. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

© All rights reserved.
Case ID: 211100640

[ The balance of this page is left intentionally blank ]

© All rights reserved.   Case ID: 211100640

**APPENDIX A**
**NOT FOR PROFIT PANEL COUNSEL ADDENDUM**

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is now accessible through our online Panel Counsel Directory at  http://www.aig.com/us/panelcounseldirectory. To access the applicable online Panel Counsel Directory, please go to the website, click on the "Not-for-Profit (Employment and Non-Employment Claims)" link or the "Employment Practices Liability - Not for Profit Employment Claims" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

99545 (7/08)                          © All rights reserved.

Case ID: 211100640

**POLICYHOLDER NOTICE**
**REGARDING**
**E-DISCOVERY CONSULTANT SERVICES**

You are hereby notified that the Insureds under the attached policy are entitled to retain the services of a pre-approved E-Consultant Firm from the E-DISCOVERY CONSULTING FIRMS listed below at the rates negotiated by the Insurer for any Claim covered under the policy in which E-Discovery is required or becomes necessary.

For the purpose of the E-Discovery Consultant Services discussed in this notice, the following definitions shall apply:

(a)   "E-Consultant Firm" means any E-DISCOVERY CONSULTING FIRMS listed below. Any "E-Consultant Firm" may be hired by an Insured to perform E-Discovery Consultant Services without further approval by the Insurer.

(b)   "E-Discovery" means the development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information.

(c)   "E-Discovery Loss" means the reasonable and necessary consulting fees for the E-Discovery Consultant Services provided solely to the Insured(s) by an E-Consultant Firm.

Provided, however, E-Discovery Loss shall not include any costs of discovery other than E-Discovery Loss.

(d)   "E-Discovery Consultant Services" means solely the following services performed by an E-Consultant Firm:

1.   assisting the Insured with managing and minimizing the internal and external costs associated with E-Discovery;

2.   assisting the Insured in developing or formulating an E-Discovery strategy which shall include interviewing qualified and cost effective E-Discovery vendors;

3.   serving as project manager, advisor and/or consultant to the Insured, defense counsel and the Insurer in executing and monitoring the E-Discovery strategy; and

4.   such other services provided by the E-Consultant Firm that the Insured, Insurer and E-Consultant Firm agree are reasonable and necessary given the circumstances of the Securities Claim.

PLEASE NOTE: The Insurer shall only be liable for the amount of E-Discovery Loss arising from a Claim under the attached policy that is in excess of the applicable Retention amounts stated in the Declarations. In all events, the Insurer shall not waive any of the Insurer's rights under this policy or at law.

E-DISCOVERY CONSULTING FIRMS

The list of approved E-Consultant Firms is accessible through our online directory at http://www.aig.com/us/panelcounseldirectory. To access the applicable online E-Consultant Firm Directory, please go to the website and click on the "**e-Consultant Panel Members**" link.

References in this policy to the list of E-Consultant Firms or related appendices are deemed amended to refer to the applicable online E-Consultant Firm Directory at the website referenced above.

© All rights reserved.

97885 (4/08)                    Page 1 of 1

Case ID: 211100640

**APPENDIX B**
**CRISIS MANAGEMENT COVERAGE FOR D&O COVERAGE SECTION**

## I. DEFINITIONS

(a) "**Crisis Management Event**" means one of the following events which, in the good faith opinion of the **Organization**, did cause or is reasonably likely to cause a **Material Effect**:

1. Management Crisis:

   The death, incapacity or criminal indictment of any duly elected or appointed director, officer, trustee, trustee emeritus or executive director, or any **Employee** on whom the **Organization** maintains key person life insurance.

2. Patient/Member Abuse:

   The public announcement or accusation that an individual under the management control of the **Organization** has intentionally caused bodily injury to, or death of, a patient, or has sexually abused a patient or member of the **Organization**.

3. Debt Default:

   The public announcement that the **Organization** had defaulted or intends to default on its debt.

4. Bankruptcy:

   The public announcement that the **Organization** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of the **Organization**; or the imminence of bankruptcy proceedings, whether voluntary or involuntary.

5. Contribution Revocation:

   The withdrawal or return of a non-governmental grant, contribution or bequest in excess of $500,000.

6. Student Distress:

   The public announcement or accusation that a student of the **Organization** has: 1) attempted or committed suicide; or 2) been criminally assaulted by an assailant who is either unknown or who is not an Individual Insured.

7. Downsizing:

   The closing of any academic department or school.

8. Regulatory Crisis:

   Formal governmental or regulatory proceedings which allege a pattern of inadequate patient care.

9. Workplace Violence:

   The public announcement that an **Employee** of the **Organization** was the victim of a violent crime while on the premises of the **Organization**.

10. Child Abduction:

    The public announcement that a child was abducted or kidnapped while under the care or supervision of the **Organization**.

A **Crisis Management Event** shall first commence when the **Organization** or any of its directors or executive officers shall first become aware of the event during the **Policy Period** and shall conclude at the earliest of the time when the **Crisis**

◊ All rights reserved.

Case ID: 211100640

**Management Firm** advises the **Organization** that the crisis no longer exists or when the **Crisis Management Fund** has been exhausted.

(b) "**Crisis Management Firm**" means any public relations firm, crisis management firm or law firm listed below in Section III of this Appendix B. Any "**Crisis Management Firm**" may be hired by the **Organization** or its directors, officers or employees to perform **Crisis Management Services** without further approval by the **Insurer.**

(c) "**Crisis Management Loss**" means the following amounts incurred during the pendency of or within 90 days prior to and in anticipation of, the **Crisis Management Event**, regardless of whether a **Claim** is ever made against an Insured arising from the **Crisis Management Event** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**:

(1) amounts for which the **Organization** is legally liable for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Organization** arising from a **Crisis Management Event**; and

(2) amounts for which the **Organization** is legally liable for the reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Organization** or the **Crisis Management Firm**, in connection with the **Crisis Management Event.**

(d) "**Crisis Management Services**" means those services performed by a **Crisis Management Firm** in advising the **Organization** or any of its directors, officers or employees on minimizing potential harm to the **Organization** arising from the **Crisis Management Event**, including but not limited to maintaining and restoring public confidence in the **Organization**.

(e) "**Delisting Crisis**" means written notice to an **Organization** that such **Organization's** securities will be or have been delisted from an **Exchange** at the initiation of such **Exchange.**

(f) "**Exchange**" means NASDAQ, the American Stock Exchange, the New York Stock Exchange and the Singapore Exchange.

(g) "**Material Effect**" means the publication of unfavorable information regarding the **Organization** which can reasonably be considered to lessen public confidence in the competence of the **Organization**. Such publication must in occur in either:

(1) a daily newspaper of general circulation in the geographic area of the **Organization**, or

(2) a radio or television news report on an **Organization** received in the geographic area of the **Organization.**

## II. <u>EXCLUSIONS</u>

The term **Crisis Management Event** shall not include any event relating to:

1. any pending or prior litigation as of the **Continuity Date** for the D&O Coverage Section indicated in Item 3 Declarations;

2. any **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

◇ All rights reserved.

Case ID: 211100640

3. the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**, or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; or

4. the hazardous properties of nuclear materials.

## III. <u>PRE- APPROVED CRISIS FIRMS</u>

(a) For all **Crises** (including a **Delisting Crisis**), **Crisis Firm(s)** means any public relations firm listed below:

1. Abernathy MacGregor Group, Inc.
   501 Madison Aveue
   New York, New York   10022
   (212) 371- 5999
   Contacts: James T. MacGregor          (jtm@abmac.com)
        Rhoda Barnat          (rb@abmac.com)
2. Burson- Marsteller
   230 Park Avenue South
   New York, New York   10003- 1566
   (212) 614- 5236
   Contact:  Michael Claes          (Michael.Claes@bm.com)
3. Kekst and Company
   437 Madison Avenue
   New York, New York    10022
   (212) 521- 4800
   Contacts: Jim Fingeroth          (Jim- Fingeroth@kekst.com)
        Lissa Perlman          (Lissa- Perlman@kekst.com)
4. Patton Boggs, LLP
   2550 M Street, N.W.
   Washington D.C.   20037
   (202) 457- 6040
   Contact:  Thomas Boggs, Esq.          (tboggs@pattonboggs.com)
5. Reputation Partners, LLC
   105 West Adams Street, Suite 2220
   Chicago, IL    60603- 6265
   (312) 222- 9887
   Contacts: Nick Kalm          (nick@reputationpartners.com)
        Jane Devron          (jane@reputationpartners.com)
6. Robinson Lerer & Montgomery
   1345 Avenue of the Americas, 4th Floor
   New York, New York    10105
   646- 805- 2000
   Contact:  Michael Gross          (mgross@rlmnet.com)
7. Sard Verbinnen & Co.
   630 Third Avenue, 9th Floor
   New York, New York    10017
   (212) 687- 8080
   Contacts: George Sard          (gsard@sardverb.com)
        Paul Verbinnen          (pverbinnen@sardverb.com)
8. Sitrick And Company
   1840 Century Park East, Suite 800
   Los Angeles, CA    90067
   (310) 788- 2850
   Contact:  Michael Sitrick          (mike sitrick@sitrick.com)

© All rights reserved.

Case ID: 211100640

ENDORSEMENT# *1*

This endorsement, effective *12:01 am      October 31, 2019*      forms a part of
policy number   *03-979-23-74*
issued to *IBEW LOCAL 98*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDATORY ENDORSEMENT**

**PENNSYLVANIA**

This endorsement modifies insurance provided under the following:

**NOT-FOR-PROFIT RISK PROTECTOR**<sup>SM</sup>

The Policy is amended as follows:

The **DISCOVERY CLAUSE** in Coverage Sections one (D&O), Two (EPL), Three, (FLI) and Five (Employed Lawyers), if purchased, is modified to the extent necessary to provide the following:

A.   The right to a **Discovery Period** applies in the event the **Named Organization** or the **Insurer** cancels or refuses to renew the policy for any reason.

B.   The amount of days in which to provide written notice of election of a **Discovery Period** subsequent to the effective date of the cancellation or nonrenewal (together with any additional premium due) is changed from thirty (30) days to sixty (60) days.

C.   In the event of cancellation by the **Insurer** for the non-payment of premium, any monies received by the **Insurer** as payment for **Discovery Period** shall be first applied to such premium owing for the policy. The **Discovery Period** will not take effect until the premium owing for the policy is paid in full and the premium owing for the **Discovery Period** is paid promptly when due.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 001*

Case ID: 211100640

## ENDORSEMENT# *2*

This endorsement, effective *12:01 am*        *October 31, 2019*        forms a part of
policy number   *03-979-23-74*
issued to *IBEW LOCAL 98*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PENNSYLVANIA AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "Insurer" means the insurance company which issued this policy; and 2) "named Insured" and "Insured" mean the Named Corporation, Named Entity, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page.

The following is added and supercedes any provision to the contrary:

Cancellation/Nonrenewal

Canceling a policy midterm is prohibited except if:

1)    A condition material to insurability has changed substantially;

2)    Loss of reinsurance or a substantial decrease in reinsurance has occurred;

3)    Material misrepresentation by the Insured;

4)    Policy was obtained through fraud;

5)    The Insured has failed to pay a premium when due;

6)    The Insured has requested cancellation;

7)    Material failure to comply with terms;

8)    Other reasons that the commissioner may approve.

Notice Requirements for Midterm Cancellation and Nonrenewal

Notice shall be mailed by registered or first class mail by the Insurer directly to the named Insured. Written notice will be forwarded directly to the named Insured at least sixty (60) days in advance of the termination date unless one or more of the following exists:

1)    The Insured has made a material misrepresentation which affects the insurability of the risk, in which case the prescribed written notice of cancellation shall be forwarded directly to the named Insured at least fifteen (15) days in advance of the effective date of termination.

2)    The Insured has failed to pay a premium when due, whether the premium is payable directly to the Insurer or its agents or indirectly under a premium finance plan or extension of credit, in which case the prescribed written notice of cancellation shall be forwarded directly to the named insured at least fifteen (15) days in advance of the effective date of termination.

3)    The policy was cancelled by the named Insured, in which case written notice of cancellation shall not be required and coverage shall be terminated on the date requested by the Insured. Nothing in these three sections shall restrict the Insurer's right to rescind an insurance policy ab initio upon discovery that

Ⓒ All rights reserved.
*END 002*

Case ID: 211100640

**ENDORSEMENT#** *2*    (continued)

the policy was obtained through fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by the Insurer.

The notice shall be clearly labeled "Notice of Cancellation" or "Notice of Nonrenewal". A midterm cancellation or nonrenewal notice shall state the specific reasons for the cancellation or nonrenewal. The reasons shall identify the condition or loss experience which caused the midterm cancellation or nonrenewal. The notice shall provide sufficient information or data for the Insured to correct the deficiency.

A midterm cancellation or nonrenewal notice shall state that, at the Insured's request, the Insurer shall provide loss information to the Insured for at least three years or the period of time during which the Insurer has provided coverage to the Insured, whichever is less. Loss information on the Insured shall consist of the following:

1) Information on closed claims, including date and description of occurrence, and amount of payments, if any;

2) Information on open claims, including date and description of occurrence, amount of payment, if any, and amount of reserves, if any;

3) Information on notices of occurrence, including date and description of occurrence and amount of reserves, if any.

The Insured's written request for loss information must be made within ten (10) days of the Insured's receipt of the midterm cancellation or nonrenewal notice. The Insurer shall have thirty (30) days from the date of receipt of the Insured's written request to provide the requested information.

Notice of Increase in Premium

The Insurer shall provide not less than thirty (30) days notice to the Insured of an increase in renewal premium. The notice of renewal premium increase will be mailed or delivered to the Insured's last known address. If notice is mailed, it will be by registered or first class mail.

Return of Unearned Premium

Cancellation Initiated By Insurer - Unearned premium must be returned to the Insured not later than ten (10) business days after the effective date of termination.

Cancellation Initiated by Insured - Unearned premium must be returned to the Insured not later than thirty (30) days after the effective date of termination.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 002*

Case ID: 211100640

**ENDORSEMENT#** *3*

This endorsement, effective *12:01 am*      *October 31, 2019*      forms a part of
policy number   *03-979-23-74*
issued to *IBEW LOCAL 98*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (ALL COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.   alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**, including but not limited to:

   (1)   **Nuclear Material** located at any **Nuclear Facility** owned by, or operated by or on behalf of, the **Organization**, or discharged or dispersed therefrom; or

   (2)   **Nuclear Material** contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the **Organization**; or

   (3)   the furnishing by an **Insured** or the **Organization** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**; or

   (4)   **Claims** for damage or other injury to the **Organization** or its members which allege, arise from, are based upon, are attributed to or in any way involve, directly or indirectly, the **Hazardous Properties** of **Nuclear Material.**

B.   (1)   which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its limit of liability; or,

   (2)   with respect to which: (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

**"Hazardous Properties"** include radioactive, toxic or explosive properties.

**"Nuclear Facility"** means:

(a)   any nuclear reactor;

(b)   any equipment or device designed or used for
   (1)   separating the isotopes of uranium or plutonium,
   (2)   processing or utilizing spent fuel, or
   (3)   handling, processing or packaging wastes;

⊕ All rights reserved.
*END 003*

Case ID: 211100640

**ENDORSEMENT#** *3*    (continued)

(c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; and

(d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**"Nuclear Material"** means source material, special nuclear material or byproduct material.

**"Nuclear Reactor"** means any apparatus designed or used to sustain nuclear fission in a self- supporting chain reaction or to contain a critical mass of fissionable material.

**"Source Material,"** **"Special Nuclear Material,"** and **"Byproduct Material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**"Spent Fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

**"Waste"** means any waste material (1) containing by product material and (2) resulting from the operation by any person or organization of any **Nuclear Facility** included within the definition of nuclear facility under paragraph (a) or (b) thereof.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____

AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 003*

Case ID: 211100640

**ENDORSEMENT#** *4*

This endorsement, effective *12:01 am*      *October 31, 2019*      forms a part of
policy number   *03-979-23-74*
issued to *IBEW LOCAL 98*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**EXCLUSIONS (F) AND (G) AMENDED ENDORSEMENT
(GENERAL TERMS AND CONDITIONS AMENDMENT)**

In consideration of the premium charged, it is hereby understood and agreed that notwithstanding any other provision of this policy (including any endorsement attached hereto whether such endorsement precedes or follows this endorsement in time or sequence), Clause 4. EXCLUSIONS of the General Terms and Conditions is hereby amended by deleting Exclusions (f) and (g) in their entirety and replacing them both with the following:

(f)     for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law.

It is acknowledged that **Claims** for violation(s) of any of the responsibilities, obligations or duties imposed by "similar federal, state, local or foreign statutory law or common law," as such quoted language is used in the immediately-preceding paragraph, include, without limitation, any and all **Claims** which in whole or in part allege, arise out of, are based upon, are attributable to, or are in any way related to any of the circumstances described in any of the following:

(1)     the refusal, failure or inability of any **Insured(s)** to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion);

(2)     improper deductions from pay taken by any **Insured(s)** from any **Employee(s)** or purported **Employee(s)**; or

(3)     failure to provide or enforce legally required meal or rest break periods;

Notwithstanding the foregoing:

(1)     with respect to the EPL Coverage Section, this exclusion (f) shall not apply to the extent that a **Claim** is for **Retaliation**; and

(2)     solely with respect to violations of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 and the Consolidated Omnibus Budget Reconciliation Act, this exclusion

◎ All rights reserved.
*END 004*

Case ID: 211100640

**ENDORSEMENT#** *4*   (continued)

shall not apply to the extent coverage is afforded pursuant to the FLI Coverage Section.

(g)   [intentionally omitted]

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

◇ All rights reserved.
*END 004*

Case ID: 211100640

<u>ENDORSEMENT</u># 5

This endorsement, effective *at 12:01AM October 31, 2019*                      forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

## AMENDED LABOR UNION AMENDATORY ENDORSEMENT
### (D&O & EPL COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that the General Terms and Conditions, the D&O Coverage Section (if purchased) and EPL Coverage Section (if purchased) of this policy are amended as follows:

**I.   AMENDMENTS TO THE GENERAL TERMS AND CONDITIONS**

In Clause 2. "DEFINITIONS" of the General Terms and Conditions, the definition of "**Retaliation**" is deleted in its entirety.

**II.   AMENDMENTS TO THE D&O COVERAGE SECTION**

1. In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of "**Wrongful Act**," as amended by any other endorsement to this policy (whether such endorsement precedes or follows this endorsement), is amended by deleting subparagraph (4) thereof in its entirety and replacing it with the following:

    (4) with respect to both the **Individual Insureds** and the **Organization** and subject to paragraphs 1,2 and 3 above, "**Wrongful Act**" shall specifically include libel, slander, defamation or publication or utterance in violation of an individual's right of privacy.

2. Clause 3. "EXCLUSIONS" of the D&O Coverage Section is amended to include the following exclusions at the end thereof:

    LU-1 alleging, arising out of, based upon or attributable to personal injury arising out of a publication or utterance concerning any organization or business enterprise or its products or services made by or at the direction of the Insured with prior knowledge of its falsity;

    LU-2 alleging, arising out of, based upon or attributable to printing or periodicals, advertising matter, or any and all printing jobs submitted to the Insured by a third party for printing;

©All rights reserved.
### *END 005*

115850 (04/15)                                    1

Case ID: 211100640

**ENDORSEMENT**# 5     (Continued)

This endorsement, effective *at 12:01AM October 31, 2019*                    forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

> LU-3 alleging, arising out of, based upon or attributable to any actual or alleged boycotts, picketing, strikes, lockouts, demonstrations, sick-outs, slowdowns, refusals to cross picket lines, work stoppages or any similar activity or job action brought by employers, other unions or injured third parties, except when such **Claim** is are brought by a bargaining unit member of the **Named Organization** for a **Wrongful Act**; or

> LU-4 alleging, arising out of, based upon, or attributable to any actual or alleged conflict of interest arising from any dealings with the **Organization** as an adverse party or on behalf of an adverse party;

> LU-5 alleging, arising out of, based upon or attributable to any **Wrongful Act** committed with the knowledge that it was wrongful; or

> LU-6 alleging, arising out of, based upon or attributable to, or in any way involving, either directly or indirectly, antitrust violations, price fixing, price discriminations, unfair competition, deceptive trade practices and/or monopolies, including any actions, proceedings, claims or investigations related thereto.

## III. AMENDMENTS TO THE EPL COVERAGE SECTION

1. In Clause 2. "DEFINITIONS" of the EPL Coverage Section, the definition of "**Employment Practices Violation(s)**", as amended by any other endorsement to this policy (whether such endorsement precedes or follows this endorsement), is amended by deleting paragraph (4) thereof in its entirety.

2. Clause 3. "EXCLUSIONS" of the EPL Coverage Section is amended to include the following exclusions at the end thereof:

> LU-1 alleging, arising out of, based upon or attributable to any actual or alleged boycotts, picketing, strikes, lockouts, demonstrations, sick-outs, slowdowns, refusals to cross picket lines, work stoppages or any similar activity or job action brought by employers, other unions or injured third parties, except when such **Claim** is brought by a bargaining unit member of the **Named Organization** for a **Wrongful Act**; or

> LU-4 alleging, arising out of, based upon, or attributable to any actual or alleged conflict of interest arising from any dealings with the **Organization** as an adverse party or on behalf of an adverse party;

©All rights reserved.
*END 005*

Case ID: 211100640

<u>**ENDORSEMENT**</u># 5     (Continued)

This endorsement, effective *at 12:01AM October 31, 2019*                    forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

## IV. AMENDMENTS TO THE GENERAL TERMS AND CONDITIONS

In Clause 4. EXCLUSIONS of the General Terms and Conditions, the first paragraph of Exclusion (f), as amended by the endorsement to this policy titled "EXCLUSIONS (F) AND (G) AMENDED ENDORSEMENT", is further amended by deleting the words "National Labor Relations Act".


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
                        AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 005*

Case ID: 211100640

<u>ENDORSEMENT#</u> 6

This endorsement, effective *at 12:01AM October 31, 2019*                     forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

## MARIANO INDIVIDUAL LABOR UNION LEADER COVERAGE ENDORSEMENT

### (VARIABLE FIELDS; LIMITED COVERAGE FOR TARGETED INDIVIDUALS)
### (D&O COVERAGE SECTION)

In consideration of the additional premium of $100 per **Individual Named Insured** listed below, it is hereby understood and agreed that, solely with respect to the D&O Coverage Section, the **Insurer** will reimburse to each of the **Individual Named Insured(s)** listed below a maximum limit of liability of $100,000 (the **"Union Leader Sublimit of Liability"**) for the following:

I. (a) **Defense Costs** arising out of any **Claim(s)** made against the **Individual Named Insured** for any **Wrongful Act** in his/her capacity as an **Employee** of the **Named Organization** asserting civil and, to the extent, if any, insurable under the law, criminal liability based on any **Landrum-Griffin/Wagner Act Violation**.   Such reimbursement of **Defense Costs** shall, subject to the **Union Leader Sublimit of Liability,** be paid as follows:

   (1)   a maximum of $250,000 will, upon written request, be reimbursed on a quarterly basis (maximum of $250,000 per quarter) during the pendency of such **Claim**;

   (2)   Any **Defense Costs** reimbursement remaining from the above $250,000 sublimit of liability shall be paid only in the event of a **Favorable Termination**, as hereinafter defined;

(b) In the event that such a **Claim** is made against more than one **Individual Named Insured**, the maximum amount the **Insurer** shall be obligated to reimburse shall be, subject to the **Union Leader Sublimit of Liability,** no more than $250,000 in the aggregate which reimbursement shall be paid proportionately in accordance with the provisions of Section I(a) (1) and (2) hereof: and

(c) The above sublimits of liability are subject to a Retention amount of $1,000 per **Claim** for each **Individual Named Insured** up to a maximum Retention amount of $5,000 per **Claim** for all such **Individual Named Insureds** for whom this additional coverage is purchased.

©All rights reserved.
### *END 006*

Case ID: 211100640

**ENDORSEMENT**# 6     (Continued)

This endorsement, effective *at 12:01AM October 31, 2019*                forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*


II.  In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of **"Claim"** is amended by adding the following at the end thereof:

The term **"Claim"** shall also include any civil, criminal, administrative or regulatory investigation by the Department of Labor ("DOL") of an **Individual Named Insured** for any **Landrum-Griffin/Wagner Act Violation**, but only once the **Individual Named Insured** is identified (either orally or in writing) by the DOL as a person against whom a proceeding described in Definition 2(b)(ii) of the D&O Coverage Section may be commenced.

III. Clause 2. "DEFINITIONS" of the D&O Coverage Section is amended by adding the following definitions to the end thereof:

(IL-1)  **"Favorable Termination"** of a **Claim** means either:

(a) Dismissal of, or written agreement to abandon or cease such **Claim** be the part asserting it, without any payment of any amounts to the party asserting such, or to any other party at the direction, request or for the benefit of, the party asserting such **Claim**; or

(b) A final adjudication of such **Claim** in favor of the **Individual Named Insured.**

(IL-2)  **"Landrum-Griffin/Wagner Act Violation"** means any alleged violation of the Landrum-Griffin Act, the Wagner Act, or related State or Federal Labor Law statues, which would otherwise be excluded under Exclusion 4(a) of the **General Terms and Conditions**, Exclusion 3(a) of the D&O Coverage Section, or Exclusions LU-4 or LU-5 of the D&O Coverage Section (as amended by the endorsement to this policy entitled "LABOR UNION AMENDATORY ENDORSEMENT").

IV. It is further understood and agreed that:

(a) The **Union Leader Sublimit of Liability** shall be available only with respect to the coverage provided in this endorsement. The **Union Leader Sublimit of Liability** is part of, and not in addition to, the **Separate Limit of Liability** or **Shared Limit of Liability** for the D&O Coverage Section set forth in Item 3 of the Declarations and the **Policy Aggregate Limit of Liability** set forth in Item 7(a) of the Declarations, and shall in no way serve to increase such **Separate Limit of Liability, Shared Limit of Liability** or **Policy Aggregate Limit of Liability**.; and

©All rights reserved.
*END 006*

Case ID: 211100640

**ENDORSEMENT**# 6    (Continued)

This endorsement, effective *at 12:01AM October 31, 2019*                forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

    (b) The **Insurer** assumes no obligation to advance **Defense Costs** for the coverage
       provided herein except as provided in Section I(a) (1) of this endorsement.

V. It is further understood and agreed that coverage provided by virtue of this
endorsement shall not apply to:

    (a) Any **Claim** against an **Individual Named Insured** by the **Named Organization**; or

    (b) Any **Claim** by an **Individual Named Insured** against any other **Individual Named
       Insured**, unless such **Claim** could have been brought by a bargaining unit member;
       or

    (c) Any **Claim** under a Labor Organization Bond.

VI. It is further understood and agreed that solely with respect to the coverage afforded by
virtue of this endorsement, the **Insurer** shall not be liable to make any payment for any
**Loss** in connection with: (i) any **Claim(s)**, notices, events, investigations or actions
referred to in any of items listed below (hereinafter "**Events**"); (ii) the prosecution,
adjudication, settlement, disposition, resolution or defense of: (a) any **Event(s)**; or (b)
any **Claim(s)** arising from any **Event(s)**; or (iii) any **Wrongful Act**, underlying facts,
circumstances, acts or omissions in any way relating to any **Event(s)**:

    **EVENT(S):**

    U.S. District Court For The Eastern District of Pennsylvania case number 2:19-cr-
    00064-JLS, including, but not limited to, allegations of embezzlement of assets
    from a labor organization, conspiracy to embezzle assets, attempted extortion of
    employer-contractors, embezzlement of employee benefit plan assets,
    payment/lending of money by employer or agent to employees, reps or labor
    organizations, mail and wire fraud, deprivation of honest services of a public
    official, Hobbs Act extortion, filing materially false personal and business tax
    returns, evasion of payment to IRS, conspiracy to defraud the US, making a false
    statement or concealing facts required by ERISA, illegal gratuity, payments of union
    funds to persons convicted of specific felonies.  The referenced investigation and
    any related acts will be excluded from the Individual Labor Leader coverage.

©All rights reserved.
*END 006*

134819 (11/19)                3

Case ID: 211100640

**ENDORSEMENT**# 6      (Continued)

This endorsement, effective *at 12:01AM October 31, 2019*                    forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

It is further understood and agreed that solely with respect to the coverage afforded by virtue of this endorsement, the **Insurer** shall not be liable for any **Loss** in connection with any **Claim(s)** alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to an **Interrelated Wrongful Act** (as that term is defined below), regardless of whether or not such **Claim** involved the same or different Insureds, the same or different legal causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.
For the purposes of this endorsement an **"Interrelated Wrongful Act"** means: (i) any fact, circumstance, act or omission alleged in any **Event(s)** and/or (ii) any **Wrongful Act** which is a **Related Wrongful Act** to any **Wrongful Act** alleged in any **Event(s).**

VII. It is further understood and agreed that as used herein, **"Individual Named Insured(s)"** means the individual(s) listed in the schedule below:

**Individual Named Insured(s):**

Pasquale Bianculli
John Donohoe
Robert Gormley
Thomas Lepera
Fran Walsh
Robert Bark
Robert Boland
Robert Cresswell
Zachary Gniewoz
Jonathan Haefner
Michael Mascuilli
Nick Gummel
Brian Eddis
Todd Neilson

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 006*

Case ID: 211100640

<u>ENDORSEMENT</u># 7

This endorsement, effective *at 12:01AM October 31, 2019* forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

### MARIANO INDIVIDUAL LABOR UNION LEADER COVERAGE ENDORSEMENT

### (VARIABLE FIELDS; LIMITED COVERAGE FOR TARGETED INDIVIDUALS)
### (D&O COVERAGE SECTION)

In consideration of the additional premium of $100 per **Individual Named Insured** listed below, it is hereby understood and agreed that, solely with respect to the D&O Coverage Section, the **Insurer** will reimburse to each of the **Individual Named Insured(s)** listed below a maximum limit of liability of $50,000 (the **"Union Leader Sublimit of Liability"**) for the following:

I. (a)  **Defense Costs** arising out of any **Claim(s)** made against the **Individual Named Insured** for any **Wrongful Act** in his/her capacity as an **Employee** of the **Named Organization** asserting civil and, to the extent, if any, insurable under the law, criminal liability based on any **Landrum-Griffin/Wagner Act Violation**. Such reimbursement of **Defense Costs** shall, subject to the **Union Leader Sublimit of Liability,** be paid as follows:

> (1)  a maximum of $250,000 will, upon written request, be reimbursed on a quarterly basis (maximum of $250,000 per quarter) during the pendency of such **Claim**;

> (2)  Any **Defense Costs** reimbursement remaining from the above $250,000 sublimit of liability shall be paid only in the event of a **Favorable Termination**, as hereinafter defined;

(b)  In the event that such a **Claim** is made against more than one **Individual Named Insured**, the maximum amount the **Insurer** shall be obligated to reimburse shall be, subject to the **Union Leader Sublimit of Liability,** no more than $250,000 in the aggregate which reimbursement shall be paid proportionately in accordance with the provisions of Section I(a) (1) and (2) hereof: and

(c)  The above sublimits of liability are subject to a Retention amount of $1,000 per **Claim** for each **Individual Named Insured** up to a maximum Retention amount of $5,000 per **Claim** for all such **Individual Named Insureds** for whom this additional coverage is purchased.

©All rights reserved.
### END 007

Case ID: 211100640

**ENDORSEMENT**# 7    (Continued)

This endorsement, effective *at 12:01AM October 31, 2019*                    forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

II. In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of "**Claim**" is amended by adding the following at the end thereof:

The term "**Claim**" shall also include any civil, criminal, administrative or regulatory investigation by the Department of Labor ("DOL") of an **Individual Named Insured** for any **Landrum-Griffin/Wagner Act Violation**, but only once the **Individual Named Insured** is identified (either orally or in writing) by the DOL as a person against whom a proceeding described in Definition 2(b)(ii) of the D&O Coverage Section may be commenced.

III. Clause 2. "DEFINITIONS" of the D&O Coverage Section is amended by adding the following definitions to the end thereof:

(IL-1)   "**Favorable Termination**" of a **Claim** means either:

(a) Dismissal of, or written agreement to abandon or cease such **Claim** be the part asserting it, without any payment of any amounts to the party asserting such, or to any other party at the direction, request or for the benefit of, the party asserting such **Claim**; or

(b) A final adjudication of such **Claim** in favor of the **Individual Named Insured.**

(IL-2)   "**Landrum-Griffin/Wagner Act Violation**" means any alleged violation of the Landrum-Griffin Act, the Wagner Act, or related State or Federal Labor Law statues, which would otherwise be excluded under Exclusion 4(a) of the **General Terms and Conditions**, Exclusion 3(a) of the D&O Coverage Section, or Exclusions LU-4 or LU-5 of the D&O Coverage Section (as amended by the endorsement to this policy entitled "LABOR UNION AMENDATORY ENDORSEMENT").

IV. It is further understood and agreed that:

(a) The **Union Leader Sublimit of Liability** shall be available only with respect to the coverage provided in this endorsement. The **Union Leader Sublimit of Liability** is part of, and not in addition to, the **Separate Limit of Liability** or **Shared Limit of Liability** for the D&O Coverage Section set forth in Item 3 of the Declarations and the **Policy Aggregate Limit of Liability** set forth in Item 7(a) of the Declarations, and shall in no way serve to increase such **Separate Limit of Liability, Shared Limit of Liability** or **Policy Aggregate Limit of Liability**.; and

©All rights reserved.
*END 007*

Case ID: 211100640

**ENDORSEMENT**# 7    (Continued)

This endorsement, effective *at 12:01AM October 31, 2019*                forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*


    (b) The **Insurer** assumes no obligation to advance **Defense Costs** for the coverage
    provided herein except as provided in Section I(a) (1) of this endorsement.

V. It is further understood and agreed that coverage provided by virtue of this
endorsement shall not apply to:

    (a) Any **Claim** against an **Individual Named Insured** by the **Named Organization**; or

    (b) Any **Claim** by an **Individual Named Insured** against any other **Individual Named
    Insured**, unless such **Claim** could have been brought by a bargaining unit member;
    or

    (c) Any **Claim** under a Labor Organization Bond.

VI. It is further understood and agreed that solely with respect to the coverage afforded by
virtue of this endorsement, the **Insurer** shall not be liable to make any payment for any
**Loss** in connection with: (i) any **Claim(s)**, notices, events, investigations or actions
referred to in any of items listed below (hereinafter "**Events**"); (ii) the prosecution,
adjudication, settlement, disposition, resolution or defense of: (a) any **Event(s)**; or (b)
any **Claim(s)** arising from any **Event(s)**; or (iii) any **Wrongful Act**, underlying facts,
circumstances, acts or omissions in any way relating to any **Event(s)**:

    **EVENT(S)**:

    U.S. District Court For The Eastern District of Pennsylvania case number 2:19-cr-
    00064-JLS, including, but not limited to, allegations of embezzlement of assets
    from a labor organization, conspiracy to embezzle assets, attempted extortion of
    employer-contractors, embezzlement of employee benefit plan assets,
    payment/lending of money by employer or agent to employees, reps or labor
    organizations, mail and wire fraud, deprivation of honest services of a public
    official, Hobbs Act extortion, filing materially false personal and business tax
    returns, evasion of payment to IRS, conspiracy to defraud the US, making a false
    statement or concealing facts required by ERISA, illegal gratuity, payments of union
    funds to persons convicted of specific felonies.  The referenced investigation and
    any related acts will be excluded from the Individual Labor Leader coverage.


©All rights reserved.
**END 007**

Case ID: 211100640

**ENDORSEMENT**# 7    (Continued)

This endorsement, effective *at 12:01AM October 31, 2019*                forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

It is further understood and agreed that solely with respect to the coverage afforded by virtue of this endorsement, the **Insurer** shall not be liable for any **Loss** in connection with any **Claim(s)** alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to an **Interrelated Wrongful Act** (as that term is defined below), regardless of whether or not such **Claim** involved the same or different Insureds, the same or different legal causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.

For the purposes of this endorsement an **"Interrelated Wrongful Act"** means: (i) any fact, circumstance, act or omission alleged in any **Event(s)** and/or (ii) any **Wrongful Act** which is a **Related Wrongful Act** to any **Wrongful Act** alleged in any **Event(s).**

VII. It is further understood and agreed that as used herein, **"Individual Named Insured(s)"** means the individual(s) listed in the schedule below:

  **Individual Named Insured(s):**

  Brian Burrows

  ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 007*

Case ID: 211100640

<u>ENDORSEMENT</u># 8

This endorsement, effective *at 12:01AM October 31, 2019*                    forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

### MARIANO INDIVIDUAL LABOR UNION LEADER COVERAGE ENDORSEMENT

### (VARIABLE FIELDS; LIMITED COVERAGE FOR TARGETED INDIVIDUALS)
### (D&O COVERAGE SECTION)

In consideration of the additional premium of $250 per **Individual Named Insured** listed below, it is hereby understood and agreed that, solely with respect to the D&O Coverage Section, the **Insurer** will reimburse to each of the **Individual Named Insured(s)** listed below a maximum limit of liability of $20,000 (the **"Union Leader Sublimit of Liability"**) for the following:

I.  (a)  **Defense Costs** arising out of any **Claim(s)** made against the **Individual Named Insured** for any **Wrongful Act** in his/her capacity as an **Employee** of the **Named Organization** asserting civil and, to the extent, if any, insurable under the law, criminal liability based on any **Landrum-Griffin/Wagner Act Violation**.   Such reimbursement of **Defense Costs** shall, subject to the **Union Leader Sublimit of Liability,** be paid as follows:

   (1)  a maximum of $20,000 will, upon written request, be reimbursed on a quarterly basis (maximum of $20,000 per quarter) during the pendency of such **Claim**;

   (2)  Any **Defense Costs** reimbursement remaining from the above $20,000 sublimit of liability shall be paid only in the event of a **Favorable Termination**, as hereinafter defined;

   (b)  In the event that such a **Claim** is made against more than one **Individual Named Insured**, the maximum amount the **Insurer** shall be obligated to reimburse shall be, subject to the **Union Leader Sublimit of Liability,** no more than $20,000 in the aggregate which reimbursement shall be paid proportionately in accordance with the provisions of Section I(a) (1) and (2) hereof: and

   (c)  The above sublimits of liability are subject to a Retention amount of $1,000 per **Claim** for each **Individual Named Insured** up to a maximum Retention amount of $5,000 per **Claim** for all such **Individual Named Insureds** for whom this additional coverage is purchased.

II.  In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of "**Claim**" is amended by adding the following at the end thereof:

©All rights reserved.
### *END 008*

134819 (11/19)                                          1

Case ID: 211100640

**ENDORSEMENT**# 8     (Continued)

This endorsement, effective *at 12:01AM October 31, 2019* forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

The term "**Claim**" shall also include any civil, criminal, administrative or regulatory investigation by the Department of Labor ("DOL") of an **Individual Named Insured** for any **Landrum-Griffin/Wagner Act Violation**, but only once the **Individual Named Insured** is identified (either orally or in writing) by the DOL as a person against whom a proceeding described in Definition 2(b)(ii) of the D&O Coverage Section may be commenced.

III. Clause 2. "DEFINITIONS" of the D&O Coverage Section is amended by adding the following definitions to the end thereof:

(IL-1) "**Favorable Termination**" of a **Claim** means either:

(a) Dismissal of, or written agreement to abandon or cease such **Claim** be the part asserting it, without any payment of any amounts to the party asserting such, or to any other party at the direction, request or for the benefit of, the party asserting such **Claim**; or

(b) A final adjudication of such **Claim** in favor of the **Individual Named Insured.**

(IL-2) "**Landrum-Griffin/Wagner Act Violation**" means any alleged violation of the Landrum-Griffin Act, the Wagner Act, or related State or Federal Labor Law statues, which would otherwise be excluded under Exclusion 4(a) of the **General Terms and Conditions**, Exclusion 3(a) of the D&O Coverage Section, or Exclusions LU-4 or LU-5 of the D&O Coverage Section (as amended by the endorsement to this policy entitled "LABOR UNION AMENDATORY ENDORSEMENT").

IV. It is further understood and agreed that:

(a) The **Union Leader Sublimit of Liability** shall be available only with respect to the coverage provided in this endorsement. The **Union Leader Sublimit of Liability** is part of, and not in addition to, the **Separate Limit of Liability** or **Shared Limit of Liability** for the D&O Coverage Section set forth in Item 3 of the Declarations and the **Policy Aggregate Limit of Liability** set forth in Item 7(a) of the Declarations, and shall in no way serve to increase such **Separate Limit of Liability, Shared Limit of Liability** or **Policy Aggregate Limit of Liability**.; and

(b) The **Insurer** assumes no obligation to advance **Defense Costs** for the coverage provided herein except as provided in Section I(a) (1) of this endorsement.

V. It is further understood and agreed that coverage provided by virtue of this endorsement shall not apply to:

©All rights reserved.
*END 008*

Case ID: 211100640

**ENDORSEMENT**# 8    (Continued)

This endorsement, effective *at 12:01AM October 31, 2019*                forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

(a) Any **Claim** against an **Individual Named Insured** by the **Named Organization**; or

(b) Any **Claim** by an **Individual Named Insured** against any other **Individual Named Insured**, unless such **Claim** could have been brought by a bargaining unit member; or

(c) Any **Claim** under a Labor Organization Bond.

VI. It is further understood and agreed that solely with respect to the coverage afforded by virtue of this endorsement, the **Insurer** shall not be liable to make any payment for any **Loss** in connection with: (i) any **Claim(s)**, notices, events, investigations or actions referred to in any of items listed below (hereinafter "**Events**"); (ii) the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any **Event(s)**; or (b) any **Claim(s)** arising from any **Event(s)**; or (iii) any **Wrongful Act**, underlying facts, circumstances, acts or omissions in any way relating to any **Event(s)**:

**EVENT(S)**:

Specific litigation exclusion referencing 2016 investigation

It is further understood and agreed that solely with respect to the coverage afforded by virtue of this endorsement, the **Insurer** shall not be liable for any **Loss** in connection with any **Claim(s)** alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to an **Interrelated Wrongful Act** (as that term is defined below), regardless of whether or not such **Claim** involved the same or different Insureds, the same or different legal causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.

For the purposes of this endorsement an "**Interrelated Wrongful Act**" means: (i) any fact, circumstance, act or omission alleged in any **Event(s)** and/or (ii) any **Wrongful Act** which is a **Related Wrongful Act** to any **Wrongful Act** alleged in any **Event(s).**

©All rights reserved.
*END 008*

Case ID: 211100640

**ENDORSEMENT**# 8    (Continued)

This endorsement, effective *at 12:01AM October 31, 2019*                 forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

VII. It is further understood and agreed that as used herein, **"Individual Named Insured(s)"**
means the individual(s) listed in the schedule below:

   **Individual Named Insured(s):**

   ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 008*

134819 (11/19)                    4

**ENDORSEMENT#** *9*

This endorsement, effective *12:01 am*        *October 31, 2019*        forms a part of
policy number   *03-979-23-74*
issued to *IBEW LOCAL 98*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**PROFESSIONAL ERRORS & OMISSIONS EXCLUSION**
**(D&O COVERAGE SECTION ONLY)**

In consideration of the premium charged, it is hereby understood and agreed that solely
with respect to **Loss** as may have otherwise been covered under the D&O Coverage
Section, the **Insurer** shall not be liable to make any payment for **Loss** in connection with
any **Claim(s)** made against any **Insured(s)** alleging, arising out of, based upon or
attributable to any **Insured(s)'** performance of or failure to perform professional services
for others for a fee, or any act(s), error(s) or omission(s) relating thereto.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

✧ All rights reserved.
*END 009*

Case ID: 211100640

**ENDORSEMENT#** 10

This endorsement, effective *at 12:01AM October 31, 2019*          forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

**SPECIFIC INVESTIGATION/CLAIM/LITIGATION/EVENT**

**OR ACT EXCLUSION**
**(ALL COVERAGE SECTIONS)**

In consideration of the premium charged, it is hereby understood and agreed that, with respect to **Loss** as may have otherwise been covered under any Coverage Section of this policy other than the Crime or KRE Coverage Sections, the **Insurer** shall not be liable for any **Loss** in connection with: (i) any **Claim(s)**, notices, events, investigations or actions referred to in any of items listed below (hereinafter "**Events**"); (ii) the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any **Event(s)**; or (b) any **Claim(s)** arising from any **Event(s)**; or (iii) any **Wrongful Act**, underlying facts, circumstances, acts or omissions in any way relating to any **Event(s)**:

    **Events**:

    U.S. District Court for the Eastern District of Pennsylvania case number 2:19-cr-00064-JLS, including, but not limited to, allegations of embezzlement of assets from a labor organization, conspiracy to embezzle assets, attempted extortion of employer-contractors, embezzlement of employee benefit plan assets, payment/lending of
    money by employer or agent to employees, reps or labor organizations, mail and wire fraud, deprivation of honest services of a public official, Hobbs Act extortion, filing materially false personal and business tax returns, evasion of payment to IRS, conspiracy to defraud the US, making a false statement or concealing facts required by ERISA, illegal gratuity, payments of union funds to persons convicted of specific felonies

It is further understood and agreed that the **Insurer** shall not be liable for any **Loss** in connection with any **Claim(s)** alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to an **Interrelated Wrongful Act** (as that term is defined below), regardless of whether or not such **Claim** involved the same or different Insureds, the same or different legal causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.

©All rights reserved.
*END 010*

       1

Case ID: 211100640

**ENDORSEMENT**# 10      (Continued)

This endorsement, effective *at 12:01AM October 31, 2019*                    forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

For the purposes of this endorsement an "**Interrelated Wrongful Act**" means: (i) any fact, circumstance, act or omission alleged in any **Event(s)** and/or (ii) any **Wrongful Act** which is the same as, similar or related to or a repetition of any **Wrongful Act** alleged in any **Event(s).**

ALL OTHER TERMS, CONDITIONS AND EXCLUSION REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 010*

Case ID: 211100640

**ENDORSEMENT#** *11*

This endorsement, effective *12:01 am*   *October 31, 2019*   forms a part of
policy number *03-979-23-74*
issued to *IBEW LOCAL 98*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**EXTRADITION COVERAGE**
**(D&O COVERAGE SECTION)**

In consideration of the premium charged, it is understood and agreed that, solely with respect to such coverage as is provided by the **D&O Coverage Section**, and solely where permitted by law, the **General Terms and Conditions** and **D&O Coverage Section** is amended as follows:

1.   Clause 2. **DEFINITIONS**, paragraph (a)("**Claim**") of the **D&O Coverage Section** is amended by appending the following to the end thereof:

"**Claim**" also means any:

(a)   official request for **Extradition** of any **Individual Insured**; or

(b)   the execution of a warrant for the arrest of an **Individual Insured** where such execution is an element of **Extradition**.

2.   Clause 2. **DEFINITIONS**, paragraph (f)("**Defense Costs**") of the **General Terms and Conditions** is amended by appending the following to the end thereof:

"**Defense Costs**" also means reasonable and necessary fees, costs and expenses incurred through legal counsel and consented to by the **Insurer** resulting from an **Individual Insured** lawfully:

(a)   opposing, challenging, resisting or defending against any request for or any effort to obtain the **Extradition** of that **Individual Insured**; or

(b)   appealing any order or other grant of **Extradition** of that **Individual Insured**.

3.   Clause 2. **DEFINITIONS** of the **D&O Coverage Section** is amended by appending the following to the end thereof:

"**Extradition**" means any formal process by which an **Individual Insured** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

4.   Clause 6. **PRE-AUTHORIZED DEFENSE ATTORNEYS** of the **D&O Coverage Section** does not apply to **Defense Costs** solely relating to **Extradition**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
***END 011***

Case ID: 211100640

**ENDORSEMENT#** *12*

This endorsement, effective *12:01 am*    *October 31, 2019*    forms a part of
policy number   *03-979-23-74*
issued to *IBEW LOCAL 98*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FAILURE TO EFFECT AND/OR MAINTAIN INSURANCE EXCLUSION
### (D&O COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that, solely with respect to **Loss** as may have otherwise been covered under the D&O Coverage Section, the **Insurer** shall not be liable for any **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, attributable to or in any way, directly or indirectly, relating to any failure or omission on the part of the **Insureds** or the **Organization** to effect or maintain adequate insurance.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 012*

Case ID: 211100640

**ENDORSEMENT#** *13*

This endorsement, effective *12:01 am*    *October 31, 2019*    forms a part of
policy number   *03-979-23-74*
issued to *IBEW LOCAL 98*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### GOVERNMENTAL FUNDING DEFENSE COST COVERAGE
### (D&O COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that
notwithstanding any other provision of this policy (including any endorsement attached
hereto whether such endorsement precedes or follows this endorsement in time or
sequence), in Clause 2. DEFINITIONS of the D&O Coverage Section, the Definition of
**"Loss"** is hereby amended to include the following at the end thereof:

> **Loss** shall not include the return of funds which were received from any federal,
> state or local governmental agency and any interest, fines or penalties arising out of
> the return of such funds; provided, however, that with regard to **Claims** for
> **Wrongful Acts** arising out of the return, or request to return such funds, this policy
> shall pay **Defense Costs** up to an amount not to exceed $1,000,000 (the
> "**Government Funding Defense Costs Sublimit of Liability**"). This **Government
> Funding Defense Costs Sub-Limit of Liability** shall be part of, and not in addition
> to, any applicable **Separate Limit of Liability, Shared Limit of Liability** or **Policy
> Aggregate Limit of Liability** stated in Item 3 or Item 7 of the Declarations. With
> respect to any **Defense Costs** coverage afforded pursuant to this paragraph, it is
> understood that: the **Insurer** shall be liable to pay 50% of such **Defense Costs**,
> excess of a retention in the amount of $1,000,000, up to the **Government Funding
> Defense Costs Sublimit of Liability**, and subject to any applicable **Separate Limit
> of Liability, Shared Limit of Liability** or **Policy Aggregate Limit of Liability** stated
> in Item 3 or Item 7 of the Declarations; it being a condition of this insurance that
> the remaining 50% of such **Defense Costs** shall be carried by the **Insureds** at their
> own risk and be uninsured.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 013*

Case ID: 211100640

<u>ENDORSEMENT#</u> 14

This endorsement, effective *at 12:01AM October 31, 2019*                forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*


### MANDATORY ARBITRATION ENDORSEMENT
### (GENERAL TERMS AND CONDITIONS AMENDMENT)

In consideration of the premium charged, it is hereby understood and agreed that policy is amended as follows:

1.  The following provisions regarding Dispute Resolution Process are added to the end of the **General Terms and Conditions** of the policy:

**DISPUTE RESOLUTION PROCESS**

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss**, shall be subject to the dispute resolution process ("**ADR**") set forth in this clause.

Either the **Insurer** or the **Insured(s)** may elect the type of **ADR** process discussed below; provided, however, that the **Insured(s)** shall have the right to reject the **Insurer's** choice of **ADR** at any time prior to its commencement, in which case the **Insured(s)'** choice of **ADR** shall control.

The **Insurer** and **Insured(s)** agree that there shall be two choices of **ADR**:

(1)     non-binding mediation administered by the American Arbitration Association, in which the **Insurer** and **Insured(s)** shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or

(2)     binding arbitration submitted to the American Arbitration Association under or in accordance with its then-prevailing commercial arbitration rules, in which the arbitration panel shall be composed of three disinterested individuals.

In the event that the ADR process described in paragraph (1) of the above is selected, the Insurer and the Insured(s) agree that in the further event that the dispute is not settled following the mediation, either party shall have the right, within 120 days of

©All rights reserved.
### *END 014*

Case ID: 211100640

**ENDORSEMENT** # 14 (Continued)

This endorsement, effective *at 12:01AM October 31, 2019* forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

the termination of the mediation, to commence an arbitration proceeding as described in paragraph (2) above.

The **Insurer** and the **Named Organization** shall mutually consent to: (i) in the case of arbitration, three disinterested arbitrators which shall constitute the arbitration panel, or (ii) in the case of mediation, a single mediator. The arbitrator, arbitration panel members or mediator must be disinterested and have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. In the absence of agreement, the **Insurer** and the **Named Organization** each shall select one arbitrator, the two arbitrators shall select a third arbitrator, and the panel shall then determine applicable procedural rules.

In considering the construction or interpretation of the provisions of this policy, the mediator or arbitrator(s) must give due consideration to the general principles of the law of the State of Formation of the **Named Organization**; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy, without regard to the authorship of the language, the doctrine of reasonable expectations of the parties and without any presumption or arbitrary interpretation or construction in favor of either party or parties, and in accordance with the intent of the parties.

In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorney(s)' fees or other costs. In all events, each party shall share equally the expenses of the ADR process.

Either choice of ADR may be commenced in either New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1. of the Declarations page as the mailing address for the **Named Organization** The **Named Organization** shall act on behalf of **Insured(s)** in selection of the **ADR(s)** in accordance with this endorsement.

2. Clause 14. **ACTION AGAINST INSURER** of the **General Terms and Conditions** is hereby deleted in its entirety and replaced with the following:

With respect to all Coverage Sections Other than the **Crime Coverage**, the following shall apply:

©All rights reserved.
*END 014*

Case ID: 211100640

**ENDORSEMENT**# 14     (Continued)

This endorsement, effective *at 12:01AM October 31, 2019*                 forms a part of
Policy number: *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

Except as provided in the Dispute Resolution Process Clause above, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **Insureds'** obligation to pay shall have been finally determined either by judgment against the **Insureds** after actual trial or by written agreement of the **Insureds**, the claimant and the **Insurer.**

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.  No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against the **Insureds** to determine the **Insureds'** liability, nor shall the **Insurer** be impleaded by the **Insureds** or their legal representatives.  Bankruptcy or insolvency of the **Insureds** or of their estates shall not relieve the **Insurer** of any of its obligations hereunder.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 014*

116582 (12/14)                    3

Case ID: 211100640

**ENDORSEMENT#** *15*

This endorsement, effective *12:01 am    October 31, 2019*    forms a part of
policy number   *03-979-23-74*
issued to  *IBEW LOCAL 98*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**ORGANIZATION PATENT EXCLUSION**
**(D&O COVERAGE SECTION)**

In consideration of the premium charged, it is hereby understood and agreed that, solely
with respect to **Loss** as may have otherwise been covered under Coverage C
"ORGANIZATION ENTITY COVERAGE" of the D&O Coverage Section, the **Insurer** shall not
be liable to make any payment for **Loss** in connection with any **Claim(s)** made against an
**Organization** alleging, arising out of, based upon or attributable to or any actual or
alleged infringement of any patent.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

⬧ All rights reserved.
***END 015***

100045 (9/08)                     Page 1 of 1

**ENDORSEMENT#** *16*

This endorsement, effective *12:01 am     October 31, 2019*        forms a part of
policy number   *03-979-23-74*
issued to *IBEW LOCAL 98*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**COMMISSIONS EXCLUSION
(ALL COVERAGE SECTIONS)**

In consideration of the premium charged, it is hereby understood and agreed that, with respect to all Coverage Sections, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, or attributable to:

(i)    payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time domestic or foreign government or armed services officials, agents, representatives, employees or any members of their family or any entity with which they are affiliated; or

(ii)   payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time officials, directors, agents, partners, representatives, principal shareholders, or owners or employees, or "affiliates" (as that term is defined in The Securities Exchange Act of 1934, including any officers, directors, agents, owners, partners, representatives, principal shareholders or employees of such affiliates) of any customers of the **Organization** or any members of their family or any entity with which they are affiliated; or

(iii)  political contributions, whether domestic or foreign.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◇ All rights reserved.
*END 016*

Case ID: 211100640

**ENDORSEMENT#** *17*

This endorsement, effective *12:01 am      October 31, 2019*      forms a part of
policy number   *03-979-23-74*
issued to *IBEW LOCAL 98*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CAPTIVE INSURANCE COMPANY EXCLUSION
### (D&O COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that, solely
with respect to **Loss** as may have otherwise been covered under the D&O Coverage
Section, the **Insurer** shall not be liable to make any payments for **Loss** in connection with
any **Claim(s)** made against any **Insured(s)** alleging, arising out of, based upon, or
attributable to the ownership, management, maintenance and/or control by the
**Organization** of any captive insurance company or entity including but not limited to
**Claim(s)** alleging the insolvency or bankruptcy of the **Organization** as a result of such
ownership, operation, management and control.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◇ All rights reserved.
*END 017*

Case ID: 211100640

ENDORSEMENT# *18*

This endorsement, effective at *12:01 am  October 31, 2019*    forms a part of
Policy number *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*
Product Name:  *Not For Profit Risk Protector*

## CYBER EXCLUSION
## (D&O COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that, solely with respect to **COVERAGE C: ORGANIZATION ENTITY COVERAGE** of the **D&O Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Organization** for a **Security Failure** or **Privacy Event.** Notwithstanding the foregoing, this exclusion shall not apply to:

**(1)** **Claims** brought by a bond holder of the **Organization** with respect to such bond holder's interest in bond debt of the **Organization**; and

(2) if provided by endorsement, **HIPAA Penalties**, subject to the **HIPAA Penalties Sublimit of Liability.**

The following definitions apply to this endorsement:

"**Computer System**" means any (1) computer hardware, software or any components thereof that are linked together through a network of two or more devices accessible through the Internet or internal network or that are connected through data storage or other peripheral devices (including, without limitation, wireless and mobile devices), and are under the ownership, operation or control of, or leased by, an **Organization**; or (2) "cloud computing" or other hosted resources operated by a third party service provider for the use of, or on behalf of, an **Organization.**

"**Confidential Information**" means any personally identifiable information or other third party information in an **Organization's** care, custody or control or for which an **Organization** is legally responsible, including, but not limited to:

(1) information from which an individual may be uniquely and reliably identified or contacted, including, without limitation, an individual's name, address, telephone number, social security number, account relationships, account numbers, account balances, account histories and passwords;

(2) information concerning an individual that would be considered "nonpublic personal information" within the meaning of Title V of the Gramm-Leach Bliley Act of 1999 (Public Law 106-102, 113 Stat. 1338) (as amended) and its implementing regulations, or protected personal information under any similar federal, state, local or foreign law;

(3) information concerning an individual that would be considered "protected health information" or "electronic protected health information" within the Health Insurance Portability and Accountability Act of 1996 (as amended) (HIPAA) or the Health Information Technology for Economic and Clinical Health Act (HITECH Act), and their implementing regulations, or protected health-related information under any similar federal, state, local or foreign law;

© American International Group, Inc.  All rights reserved.

END 018

Case ID: 211100640

<u>ENDORSEMENT#</u> *18*  (continued)

(4)  information concerning an individual that would be considered "personal data" or "sensitive personal data" within the meaning of the General Data Protection Regulation (Regulation (EU) 2016/679) (GDPR) and any amendments thereto;

(5)  information used for authenticating customers for normal business transactions; or

(6)  any third party's trade secrets, data, designs, interpretations, forecasts, formulas, methods, practices, processes, records, reports or other item of information that is not available to the general public.

"**Privacy Event**" means any failure to protect **Confidential Information** (whether by "phishing," other social engineering technique or otherwise) including, without limitation, that which could result in an identity theft or other wrongful emulation of the identity of an individual or corporation, or any failure to disclose such an event in violation of any **Security Breach Notice Law.**

"**Security Breach Notice Law**" means any federal, state, local or foreign statute or regulation that requires an entity collecting or storing **Confidential Information** to provide notice of any actual or potential unauthorized access by others to such **Confidential Information.**

"**Security Failure**" means a failure or violation of the security of a **Computer System** including, without limitation, that which results in or fails to mitigate any unauthorized access, unauthorized use, denial of service attack or receipt or transmission of a malicious code. **Security Failure** includes any such failure or violation, resulting from the theft of a password or access code from an **Insured's** premises, the **Computer System**, or an officer, director or employee of an **Organization.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© American International Group, Inc.  All rights reserved.

END 018

130265 (08/18)

Case ID: 211100640

<u>ENDORSEMENT#</u> *19*

This endorsement, effective at *12:01 am    October 31, 2019*    forms a part of
Policy number *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

Product Name:   *Not For Profit Risk Protector*

**EPL PAK PREMIER ENDORSEMENT**
**(Employment Practices, Loss Prevention and Risk Management Tools)**

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

The **Insurer** provides the **Named Entity** with access during the **Policy Period** to EPL Pak® Premier, a suite of Employment Practices, Loss Prevention and Risk Management tools. EPL Pak® Premier is provided at no additional cost to the **Named Entity** and can be used by the **Named Entity** at its discretion during the **Policy Period.**

This preventive suite is a combination of employment related tools designed to help the **Named Entity** manage employment practices risks. EPL Pak® Premier's resources are exclusive to the **Insurer**, and provide policyholders with access to two of the nation's foremost law firms with a depth of experience in employment and workplace law: Littler Mendelson, P.C. and Jackson Lewis, P.C.

- **www.EPLRiskManager.com**. Partnering with Littler Mendelson, EPL Pak® Premier includes instant, free access, to an online Human Resource Center located at <u>www.EPLRiskManager.com</u>. Included within this site are a package of risk management products and resources designed to help the **Named Entity** manage the **Named Entity's** workforce and mitigate the **Named Entity's** exposure to employment-related litigation. All that is needed for access and registration to the site is the **Named Entity's** policy number.

   Materials and services available online include the following essentials:

   - **Online forms:** A collection of human resources forms, including handbooks, employment applications, checklists, performance evaluations and compliance tools, which can be customized, to ease the **Named Entity's** administrative burden.
   - **Employment Law Reference Manuals:** A complete library of employment law manuals covering topics such as discrimination, disability, harassment, background screening, arbitration agreements, I-9 compliance manual and many more documents to help mitigate the risks of these critical phases of the employment relationship.
   - **Government Forms and State Guides:** Essential employment-related forms and notices required by the federal government including state-by-state assessment of employment laws and regulations.
   - **Littler Learning Points:** A library of instructional videos addressing employment issues including responding to complaints of discrimination and harassment; severance and release agreement, to name a few.
   - **Littler GPS**™**:** Free access to an innovative and powerful online research tool that provides detailed information and analysis of recent legislative and regulatory developments. This comprehensive tool answers a broad range of employment law topics at the federal level and for all 50 states. The online database includes full-text content search and intuitive navigation, all tailored to the jurisdictions selected by the **Named Entity.**

◊ All rights reserved.

***END 019***

Case ID: 211100640

<u>ENDORSEMENT#</u>  *19*   (continued)

- **Littler Law Updates:**  Keep up to date on key employment law developments impacting the **Named Entity's** business with alerts from their ASAP® Newsletters.  To subscribe, simply click the "Subscribe Now" button within the website.
- **Seminars and Webinars:**  Policyholders will be invited to attend, at no cost, access to Littler's nationwide employment laws breakfasts briefing series and designated live webinars.

- **State of the Art Enhancements.** These state-of-the-art enhancements complement EPL Pak® Premier's original package of complimentary risk management solutions from Jackson Lewis, P.C. which include:

  - **Unlimited Access**: Jackson Lewis provides a Toll-Free Risk Management Helpline **Insureds** may access to discuss general questions about workplace issues: (866) 614-0744.
  - **Legal Consultation:** A two-hour legal consultation on human resources and employment law issues, such as how specific laws impact personnel decisions and potential exposure to liability anywhere in the U.S. or Puerto Rico.  The scope of the consultation may include legal services such as discrimination issues, reductions in force, affirmative action, disability management issues and employment contracts.
  - **Employment Policies, Forms and Procedures:**  The two-hour legal consultation may also include the assistance of Jackson Lewis attorneys in adopting appropriate employment forms, policies or procedures under federal or applicable state laws (including reviewing the **Named Entity's** employee handbook or policy manual).
  - **Global Employment Law Support:**   A one hour legal consultation on human resource and employment law issues for any country where there is a member firm of L&E Global, an international alliance of independent law firms of which Jackson Lewis is a founding member.
  - **Liability Updates:** Complimentary access to the Jackson Lewis newsletter and e-updates spotlighting important workplace law news and trends. The **Named Entity** may also subscribe to receive at no-cost, alerts about significant legislative actions, judicial decisions and other changes with potential business impact.
  - **Checklists:** Self-audit and pre-termination checklists to help insureds identify vulnerabilities and safely navigate risky terrain.
  - **Special California State Training:** CA AB 1825 training, (periodically scheduled at Jackson Lewis' California offices) to assist companies with 50 or more employees in California in fulfilling their mandate (required every two years) of providing sexual harassment training for supervisors.

  EPL Pak® Premier also includes Alternative Employment Dispute Resolution Programs from EDR Systems at preferred rates. EDR Systems will assist to resolve employee disputes internally and prevent time and money in litigation. The professionals at EDR Systems have more than 50 years of combined experience in human resource management, strategic planning, change management, and employee relations. They support a wide variety of businesses of all sizes, from national, multi-unit retail operations, to single-facility manufacturers, to professional firms.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◊ All rights reserved.

**END 019**

Case ID: 211100640

**ENDORSEMENT#** *20*

This endorsement, effective *12:01 am      October 31, 2019*      forms a part of
policy number   *03-979-23-74*
issued to *IBEW LOCAL 98*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NOTICE OF CLAIM**
**(REPORTING BY E-MAIL)**

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.  *Email Reporting of Claims*: In addition to the postal address set forth for any Notice of Claim Reporting under this policy, such notice may also be given in writing pursuant to the policy's other terms and conditions to the Insurer by email at the following email address:

    c-claim@AIG.com

    Your email must reference the policy number for this policy. The date of the Insurer's receipt of the emailed notice shall constitute the date of notice.

    In addition to Notice of Claim Reporting via email, notice may also be given to the Insurer by mailing such notice to: AIG, Financial Lines Claims, P.O. Box 25947, Shawnee Mission, KS 66225 or faxing such notice to (866) 227-1750.

2.  *Definitions*: For this endorsement only, the following definitions shall apply:

    (a)   "Insurer" means the "Insurer," "Underwriter" or "Company" or other name specifically ascribed in this policy as the insurance company or underwriter for this policy.

    (b)   "Notice of Claim Reporting" means "notice of claim/circumstance," "notice of loss" or other reference in the policy designated for reporting of claims, loss or occurrences or situations that may give rise or result in loss under this policy.

    (c)   "Policy" means the policy, bond or other insurance product to which this endorsement is attached.

3.  This endorsement does not apply to any Kidnap & Ransom/Extortion Coverage Section, if any, provided by this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

Ⓒ All rights reserved.
*END 020*

Case ID: 211100640

ENDORSEMENT# *21*

This endorsement, effective at *12:01 am    October 31, 2019*      forms a part of
Policy number *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

Product Name: *Not For Profit Risk Protector*

## ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

Coverage shall only be provided and payment of loss under this policy shall only be made in full compliance with enforceable United Nations economic and trade sanctions and the trade and economic sanction laws or regulations of the European Union and the United States of America, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◊ All rights reserved.

*END 021*

Case ID: 211100640

<u>ENDORSEMENT#</u> *22*

This endorsement, effective at *12:01 am*   *October 31, 2019*   forms a part of
Policy number *03-979-23-74*
Issued to: *IBEW LOCAL 98*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

Product Name:   *Not For Profit Risk Protector*

## FEDERAL SHARE OF COMPENSATION UNDER TRIA AND CAP ON LOSSES ENDORSEMENT

This endorsement modifies insurance provided by this Policy:

### DISCLOSURE

You should know that where coverage is provided by this Policy for losses resulting from "Certified Acts of Terrorism" (as defined by Section 102 (1) of United States Terrorism Risk Insurance Act), such losses may be partially reimbursed by the United States Government under a formula established by federal law.   However, your Policy may contain other exclusions which might affect your coverage such as, an exclusion for nuclear events.   Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning January 1, 2018; 81% beginning January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

You should also know that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from "Certified Acts of Terrorism" when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion in a calendar year and if we have met our insurer deductible, we are not liable for the payment of any portion of the amount of such losses that exceeds $100 billion; and for aggregate insured losses up to $100 billion, we will only pay a pro rata share of such insured losses as determined by the Secretary of the Treasury.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◇ All rights reserved.

*END 022*

Case ID: 211100640

**ENDORSEMENT#** *23*

This endorsement, effective *12:01 am*   *October 31, 2019*      forms a part of
policy number   *03-979-23-74*
issued to *IBEW LOCAL 98*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 94106 | 02/07 | NFPRP ADMITTED DEC |
| 96555 | 01/15 | TRIA DEC DISCLOSURE FORM |
| 94204 | 03/07 | ADMITTED GUTS |
| 94207 | 03/07 | D&O COVERAGE SECTION (ADMITTED) |
| 94210 | 03/07 | EPL COVERAGE SECTION (ADMITTED) |
| 99545 | 07/08 | APPENDIX A NOT FOR PROFIT PANEL COUNSEL ADDENDUM |
| 97885 | 04/08 | POLICYHOLDER NOTICE REGARDING E-DISCOVERY CONSULTANT SERVICES |
| 94830 | 06/07 | APPENDIX B CRISIS MANAGEMENT COVERAGE FOR D&O COVERAGE SECTION |
| 95207 | 07/07 | PENNSYLVANIA AMENDATORY ENDORSEMENT |
| 52165 | 05/08 | PENNSYLVANIA AMENDATORY ENDORSEMENT CANCELLATION/NONRENEWAL |
| 96338 | 10/07 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (ALL COVERAGE SECTIONS) |
| 97650 | 03/08 | EXCLUSIONS (F) AND (G) AMENDED ENDORSEMENT (GENERAL TERMS AND CONDITIONS AMENDMENT) |
| 115850 | 04/15 | LABOR UNION AMENDATORY  (DO EPL ) |
| 134819 | 11/19 | MARIANO INDIVIDUAL LABOR UNION LEADER COVERAGE ENDORSEMENT |
| 134819 | 11/19 | MARIANO INDIVIDUAL LABOR UNION LEADER COVERAGE ENDORSEMENT |
| 134819 | 11/19 | MARIANO INDIVIDUAL LABOR UNION LEADER COVERAGE ENDORSEMENT |
| 94415 | 04/07 | PROFESSIONAL ERRORS & OMISSIONS EXCLUSION (D&O COVERAGE SECTION ONLY) |
| 101333 | 03/09 | SPECIFIC INVESTIGATION/CLAIM/LITIGATION/EVENT |
| 105106 | 04/10 | EXTRADITION COVERAGE (D&O COVERAGE SECTION) |
| 94601 | 05/07 | FAILURE TO EFFECT AND/OR MAINTAIN INSURANCE EXCLUSION (D&O COVERAGE SECTION) |
| 94661 | 05/07 | GOVERNMENTAL FUNDING DEFENSE COST COVERAGE (D&O COVERAGE SECTION) |

© All rights reserved.

*END 023*

Case ID: 211100640

**ENDORSEMENT#** *23*

This endorsement, effective *12:01 am*      *October 31, 2019*               forms a part of
policy number   *03-979-23-74*
issued to *IBEW LOCAL 98*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 116582 | 12/14 | MANDATORY ARBITRATION GTC AMENDATORY (ARBITRATOR SELECTION PROCESS AND ACTION AGAINST INSURER) |
| 100045 | 09/08 | ORGANIZATION PATENT EXCLUSION (D&O COVERAGE SECTION) |
| 94654 | 05/07 | COMMISSIONS EXCLUSION (ALL COVERAGE SECTIONS) |
| 94657 | 05/07 | CAPTIVE INSURANCE COMPANY EXCLUSION (D&O COVERAGE SECTION) |
| 130265 | 08/18 | CYBER EXCLUSION DO COVERAGE SECTION |
| 124010 | 04/17 | EPL PAK PREMIER ENDORSEMENT (EMPLOYMENT PRACTICES, LOSS PREVENTION AND RISK MANAGEMENT TOOLS) |
| 99758 | 08/08 | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
| 119679 | 09/15 | ECONOMIC SANCTIONS ENDORSEMENT |
| 125595 | 03/17 | FEDERAL SHARE OF COMPENSATION UNDER TRIA AND CAP ON LOSSES ENDORSEMENT |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 023*

Case ID: 211100640



# CLAIM REPORTING FORM

Issuing Company: *National Union Fire Insurance Company of Pittsburgh, Pa.*

Reported under Policy/Bond Number:  _03-979-23-74_          Date: _____

Type of Coverage: D&O _____  E&O _____  Fidelity _____ (complete the Fidelity Supplemental on the next page)

Insured's Name, as given on Policy Declarations (Face Page):

_IBEW LOCAL 98_

Contact Person: _____

Title: _____

Phone: _(_____)_____-_____Ext _____

eMail: _____ @ _____

Case or Claimant Name: _____

If the party involved is different from "Insured" Name (as given on Policy Declarations) state relationship:

Insurance Broker/Agent: _M PIZZO LLC_

Address: _PO BOX 390, ROSENHAYN, NJ 08352-0390_

Address: _____

Contact: _DONNA MURRAY_          Phone: _____

eMail: _DMurray@MarianoAgency.com_

Send Notice of Claims to:     AIG              Phone: (888) 602-5246
                              Financial Lines Claims   Fax:   (866) 227-1750
                              P.O. Box 25947           Email: c-Claim@AIG.com
                              Shawnee Mission, KS 66225

Case ID: 211100640



# CLAIM REPORTING FORM
## FIDELITY SUPPLEMENTAL
**(Only complete this supplemental if the Claim is being reported under Fidelity Coverage)**

Issuing Company: *National Union Fire Insurance Company of Pittsburgh, Pa.*

Reported under Policy/Bond Number:  _03-979-23-74_

---

Date of Discovery: _____   Estimated Amount of loss: _____

Cause of Loss:

| | | | |
|---|---|---|---|
| Employee Dishonesty | _____ | Computer Fraud | _____ |
| Funds Transfer | _____ | Robbery/Burglary | _____ |
| ID Theft | _____ | Forgery | _____ |
| Client Property | _____ | In Transit | _____ |
| ERISA | _____ | Credit Card Forgery | _____ |
| Other | _____ | if Other, describe: | _____ |

---

Send Notice Of Claims To:   AIG
Financial Lines Claims
P.O. Box 25947
Shawnee Mission, KS 66225

Phone: (888) 602-5246
Fax:    (866) 227-1750
Email:  c-Claim@AIG.com

*centralized Customer Link and Information Management*

Case ID: 211100640

# EXHIBIT E

Case ID: 211100640



AIG
Financial Lines
80 Pine Street, 5ᵗʰ Floor
New York, NY 10005
www.aig.com

Jimmy Rodriguez
Analyst
T  646 857 2181
jimmy.rodriguez@aig.com

November 6, 2020

wtjosem@cjtlaw.org

William T. Josem
Esquire
Cleary, Josem & Trigiani LLP
325 Chestnut Street
Suite 200
Philadelphia, PA 19106

RE:    **Insured:**     **IBEW Local 98**
          **Matter:**      **Subpoena (DOJ)**
          **Policy No.:**  **03-979-23-74**
          **Claim No.:**   **7087666144US**

Dear Mr. Josem:

AIG Claims, Inc. ("AIG") is the authorized representative of National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), which issued a Not-For-Profit Risk Protector Policy to IBEW Local 98 ("the Insured") under policy number 03-979-23-74 ("the Policy"). I have been assigned to the above-referenced matter. Accordingly, please direct all future correspondence to my attention, referencing the claim number listed above.

The purpose of this letter is to advise you that coverage for this matter is not available at this time based on the materials submitted. Pursuant to Clause 7(1)(c) "Notice/Claim Reporting Provisions" of the General Terms & Conditions Section of the Policy, National Union will accept this matter as a notice of circumstance which may reasonably be expected to give rise to a Claim.

In considering your request for coverage, we reviewed the insurance policy referenced above, as well as the allegations asserted. No other policies were considered. If you assert a right to coverage under another policy issued by any other member company of AIG, please submit notice pursuant to the notice provisions contained in that policy.

**The Matter**
Based on the information received to date, the following sets forth a summary of the allegations.

In an e-mailed letter to Insurer dated October 30, 2020, Insured, through its counsel, communicated the following:

On October 16, 2020, Insured's premises at 1701 and 1719 Spring Garden Street, Philadelphia, PA were searched pursuant to Search and Seizure Warrants issued by the United States District Court for the Eastern District of Pennsylvania. In addition, a subpoena to testify before a grand jury was also issued to the Insured on October 16, 2020.

Case ID: 211100640



Please advise if this is inaccurate or if there is additional information with regard to this matter.

**The Policy**
The Policy was issued by National Union to IBEW Local 98 for the Policy Period of October 31, 2019 to October 31, 2020. Coverage under the Policy is only for Claims first made against the Insured during the Policy Period and reported in writing pursuant to the terms of the Policy for an actual or alleged Wrongful Act. This Directors & Officers Liability Insurance is subject to a Shared Limit of Liability of $2,000,000 between the D&O and EPL Coverage Sections. The self-insured retention for this Claim is $25,000. The self-insured retention must be exhausted before any defense and/or indemnity obligation exists.

**Coverage Evaluation**
It is National Union's position that there is no coverage for this claim. Relevant policy provisions are referenced below; please refer to the Policy for its complete terms and conditions.

We direct your attention to the definition of "Claim" found in Clause 2(a) of the D&O Coverage Section of the Policy, which states in the relevant part:

> "Claim" means:
> (1)    a written demand for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute of limitations);
> (2)    a civil, criminal, regulatory, or administrative proceeding for monetary, non-monetary, or injunctive relief which is commenced by:
>     (i)    service of a complaint or similar pleading;
>     (ii)    return of an indictment, information or similar document (in the case of a criminal proceeding); or
>     (iii)    receipt or filing of a notice of charges.

There is no written demand for monetary, non-monetary, or injunctive relief and therefore, a Claim has not been made. Since no Claim has been made against an Insured, we will accept this matter as a notice of circumstance which may reasonably be expected to give rise to a Claim, pursuant to Clause (7)(1)(c) of the General Terms and Conditions Section of the Policy. In the event that a Claim or Complaint is asserted against an Insured as defined within the Policy, please reference the above Claim No. so that we may review same for possible coverage under the Policy. Please note that coverage, if any, for any future claim will be subject to all of the terms, conditions, and exclusions reflected in the captioned Policy.

National Union's coverage position is based on the information presently available to us. This letter is not, and should not be construed as, a waiver of any terms, conditions, exclusions or other provisions of the Policy, or any other policies of insurance issued by National Union or any of its affiliates. National Union expressly reserves all of its rights under the Policy, at law or in equity, including the right to assert additional defenses to any claims for coverage, if subsequent information indicates that such action is warranted.

2

Case ID: 211100640



Should you have any additional information that you feel would either cause us to review our position or would assist us in our investigation or determination, we ask that you advise us as soon as possible. Also, if you are served with any additional demands or amended complaints or pleadings, please forward them to us immediately, so that we can review our coverage position.

If you have any other insurance policies which may respond to this claim asserted, you should report this matter to the issuing carrier[s] immediately.

In closing, allow me to reiterate that we value IBEW Local 98 as a customer and encourage you to contact us should you have any questions or concerns regarding the contents of this letter. Thank you for your cooperation in this matter.

Very truly yours,

Jimmy Rodriguez
Claims Analyst

This correspondence is being sent by AIG Claims, Inc. as authorized representative of National Union Fire Insurance Company of Pittsburgh, Pa.

cc:      rtrembicki@connorstrong.com

Case ID: 211100640

# EXHIBIT B





**Civil Docket Report**

A $5 Convenience fee will be added to the transaction at checkout.

## Case Description

| | |
|---|---|
| **Case ID:** | 211100640 |
| **Case Caption:** | DOUGHERTY VS NATIONAL UNION FIRE INSURANCE COMPANY |
| **Filing Date:** | Monday , November 08th, 2021 |
| **Court:** | COMMERCE - EXPEDITED, NON JURY |
| **Location:** | CITY HALL |
| **Jury:** | NON JURY |
| **Case Type:** | CONTRACTS OTHER |
| **Status:** | NOT OF REMOVAL TO US DIST CT |
| **Cross Reference:** | DC 2022CV03430 |

## Related Cases

*No related cases were found.*

## Case Event Schedule

*No case events were found.*

## Case motions

*No case motions were found.*

## Case Parties

| Seq # | Assoc | Expn Date | Type | Name |
|---|---|---|---|---|
| 1 | | | ATTORNEY FOR PLAINTIFF | PODRAZA JR, JOSEPH R |
| **Address:** ONE S BROAD ST SUITE 1500 PHILADELPHIA PA 19107 (215)609-3170 jpodraza@lambmcerlane.com | | **Aliases:** | *none* | |
| | | | | |
| 2 | 1 | | PLAINTIFF | DOUGHERTY, JOHN J |
| **Address:** 1933 EAST MOYAMENSING AVENUE | | **Aliases:** | *none* | |

| | | | | |
|---|---|---|---|---|
| | PHILADELPHIA PA 19148 | | | |
| | | | | |
| 3 | 5 | | DEFENDANT | NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA |
| **Address:** | 1271 AVENUE OF THE AMERICAS FLOOR 41 NEW YORK NY 10020 | **Aliases:** | *none* | |
| | | | | |
| 4 | | | TEAM LEADER | DJERASSI, RAMY I |
| **Address:** | ROOM 591 CITY HALL PHILADELPHIA PA 19107 (215)686-7338 | **Aliases:** | *none* | |
| | | | | |
| 5 | | | ATTORNEY FOR DEFENDANT | DIFEBBO, MICHAEL E |
| **Address:** | 1600 MARKET STREET SUITE 1410 PHILADELPHIA PA 19103-7395 (215)479-6713 michael.difebbo@kennedyslaw.com | **Aliases:** | *none* | |
| | | | | |
| 6 | 5 | | ATTORNEY FOR DEFENDANT | MAHONEY ESQ, SEAN P |
| **Address:** | 1600 MARKET ST. SUITE 1410 PHILADELPHIA PA 19103 (267)479-6700 sean.mahoney@kennedyslaw.com | **Aliases:** | *none* | |
| | | | | |
| 7 | | | ATTORNEY FOR PETITIONER | LEVIN, JAY M |
| **Address:** | FLASTER GREENBERG PC 100 FRONT STREET SUITE 100 CONSHOHOCKEN PA 19428 (215)546-4842 | **Aliases:** | *none* | |

| | | | |
|---|---|---|---|
| | jay.levin@flastergreenberg.com | | |

## Docket Entries

| Filing Date/Time | Docket Type | Filing Party | Disposition Amount |
|---|---|---|---|
| 08-NOV-2021 12:47 PM | ACTIVE CASE | | |
| **Docket Entry:** | E-Filing Number: 2111016210 | | |
| | | | |
| 08-NOV-2021 12:47 PM | COMMENCEMENT OF CIVIL ACTION | PODRAZA JR, JOSEPH R | |
| **Documents:** | ⤓ Click link(s) to preview/purchase the documents<br>Final Cover | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | *none.* | | |
| | | | |
| 08-NOV-2021 12:47 PM | PRAE TO ISSUE WRIT OF SUMMONS | PODRAZA JR, JOSEPH R | |
| **Documents:** | ⤓ Click link(s) to preview/purchase the documents<br>1000-00094[2021-11-08 12-36-37].pdf<br>Writ-of-Summons-10-208.pdf<br>Commerce Addendum | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | PRAECIPE TO ISSUE WRIT OF SUMMONS FILED. WRIT OF SUMMONS ISSUED. | | |
| | | | |
| 08-NOV-2021 12:47 PM | WAITING TO LIST CASE MGMT CONF | PODRAZA JR, JOSEPH R | |
| **Docket Entry:** | *none.* | | |
| | | | |
| 03-DEC-2021 02:23 PM | PRAECIPE TO REISSUE SUMMONS | PODRAZA JR, JOSEPH R | |
| **Documents:** | ⤓ Click link(s) to preview/purchase the documents<br>praecipe to reissue writ.pdf | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | PREACIPE TO REISSUE WRIT OF SUMMONS FILED. WRIT REISSUED. (FILED ON BEHALF OF JOHN J DOUGHERTY) | | |

| 15-DEC-2021 02:48 PM | AFFIDAVIT OF SERVICE FILED | PODRAZA JR, JOSEPH R | |
|---|---|---|---|
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>1000-00094[2021-12-15 14-43-41].pdf | 🛒 **Click HERE to purchase all documents** related to this one docket entry | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S WRIT OF SUMMONS UPON NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA BY CERTIFIED MAIL ON 12/13/2021 FILED. (FILED ON BEHALF OF JOHN J DOUGHERTY) | | |
| | | | |
| 13-JAN-2022 03:23 PM | LISTED FOR CASE MGMT CONF | | |
| **Docket Entry:** | *none.* | | |
| | | | |
| 13-JAN-2022 03:24 PM | CONFERENCE DATE SET | | |
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>CLCDS_8.pdf | 🛒 **Click HERE to purchase all documents** related to this one docket entry | |
| **Docket Entry:** | ** DO NOT USE** ORDER RESIDENT IN Z:\BANNER\TEMPLATE | | |
| | | | |
| 15-JAN-2022 12:29 AM | NOTICE GIVEN | | |
| **Docket Entry:** | OF CASE MANAGEMENT CONFERENCE SCHEDULED FOR 15-FEB-2022. | | |
| | | | |
| 03-FEB-2022 02:56 PM | COMPLAINT FILED NOTICE GIVEN | PODRAZA JR, JOSEPH R | |
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>COMPLAINT - for filing.pdf | 🛒 **Click HERE to purchase all documents** related to this one docket entry | |
| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 FILED. (FILED ON BEHALF OF JOHN J DOUGHERTY) | | |
| | | | |
| 10-FEB-2022 12:36 PM | ENTRY OF APPEARANCE | DIFEBBO, MICHAEL E | |

| | | | |
|---|---|---|---|
| **Documents:** | ⬠ Click link(s) to preview/purchase the documents<br>2022.02.10 - EOA of MED obo NUFIC.pdf | | 🛒 **Click HERE to purchase all documents related to this one docket entry** |
| **Docket Entry:** | ENTRY OF APPEARANCE OF MICHAEL E DIFEBBO FILED. (FILED ON BEHALF OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA) | | |
| | | | |
| 10-FEB-2022<br>12:39 PM | ENTRY OF APPEARANCE | MAHONEY ESQ, SEAN P | |
| **Documents:** | ⬠ Click link(s) to preview/purchase the documents<br>2022.02.10 - EOA of SPM obo NUFIC.pdf | | 🛒 **Click HERE to purchase all documents related to this one docket entry** |
| **Docket Entry:** | ENTRY OF APPEARANCE OF SEAN P MAHONEY FILED. (FILED ON BEHALF OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA) | | |
| | | | |
| 12-FEB-2022<br>12:30 AM | NOTICE GIVEN | | |
| **Docket Entry:** | OF CASE MANAGEMENT CONFERENCE SCHEDULED FOR 15-FEB-2022. | | |
| | | | |
| 14-FEB-2022<br>09:19 AM | MISCELLANEOUS MOTION/PETITION | PODRAZA JR, JOSEPH R | |
| **Documents:** | ⬠ Click link(s) to preview/purchase the documents<br>Special Injunction Papers in Dougherty v. National Union(1).pdf<br>Ex. 1 - 2022-02-03 Complaint.pdf<br>Ex. 2 - March 2021 Indictment.pdf<br>Ex. 3 - Freedom Specialty Ins Co v Platinum Management (NY) LLC.pdf<br>Motion CoverSheet Form | | 🛒 **Click HERE to purchase all documents related to this one docket entry** |
| **Docket Entry:** | 22-22023122 PETITION FOR SPECIAL INJUNCTION (FILED ON BEHALF OF JOHN J DOUGHERTY) | | |
| | | | |
| 14-FEB-2022<br>09:27 AM | MOTION ASSIGNED | | |
| **Docket Entry:** | 22-22023122 MISCELLANEOUS MOTION/PETITION ASSIGNED TO JUDGE: DJERASSI, RAMY I. ON DATE: FEBRUARY 14, 2022 | | |
| | | | |
| 16-FEB-2022<br>10:41 AM | ORDER ENTERED/236 NOTICE GIVEN | DJERASSI, RAMY I | |

| Documents: | ☞ Click link(s) to preview/purchase the documents<br>ORDER_16.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry |
|---|---|---|

| **Docket Entry:** | 22-22023122 AND NOW, THIS 16TH DAY OF FEBRUARY 2022, UPON CONSIDERATION OF PLAINTIFF'S PETITION FOR SPECIAL INJUNCTION, IT HEREBY IS ORDERED THAT DEFENDANT FILE A RESPONSE TO SAID PETITION ON OR BEFORE TUESDAY, FEBRUARY 22, 2022. ONCE THE RESPONSE IS FILED AND REVIEWED BY THE COURT, ORAL ARGUMENT MAY BE ORDERED. BY THE COURT: JUDGE DJERASSI, 2/16/2022. |
|---|---|

| 16-FEB-2022<br>10:41 AM | NOTICE GIVEN UNDER RULE 236 | | |
|---|---|---|---|
| **Docket Entry:** | NOTICE GIVEN ON 16-FEB-2022 OF ORDER ENTERED/236 NOTICE GIVEN ENTERED ON 16-FEB-2022. | | |

| 16-FEB-2022<br>10:43 AM | MOTION RESPONSE DATE UPDATED | | |
|---|---|---|---|
| **Docket Entry:** | 22-22023122 MISCELLANEOUS MOTION/PETITION MOTION RESPONSE DATE UPDATED TO 02/22/2022. | | |

| 16-FEB-2022<br>12:19 PM | CASE MGMT CONFERENCE COMPLETED | DJERASSI, RAMY I | |
|---|---|---|---|
| **Docket Entry:** | *none.* | | |

| 16-FEB-2022<br>12:19 PM | CASE MANAGEMENT ORDER ISSUED | | |
|---|---|---|---|
| **Documents:** | ☞ Click link(s) to preview/purchase the documents<br>CMOIS_19.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |

| **Docket Entry:** | CASE MANAGEMENT ORDER, EXPEDITED TRACK NON-JURY - IT IS ORDERED THAT: 1) THE CASE MANAGEMENT AND TIME STANDARDS ADOPTED FOR COMMERCE PROGRAM, EXPEDITED TRACK CASES SHALL APPLY AND ARE INCORPORATED. 2) ALL DISCOVERY SHALL BE COMPLETED NOT LATER THAN 06-SEP-2022. 3) PLAINTIFF(S) SHALL IDENTIFY AND SUBMIT CURRICULUM VITAE AND EXPERT REPORTS FOR ALL EXPERT WITNESSES INTENDED TO TESTIFY AT TRIAL TO ALL OTHER PARTIES NOT LATER THAN 06-SEP-2022. 4) DEFENDANT(S) AND ANY ADDITIONAL DEFENDANT(S) SHALL INDENTIFY AND SUBMIT CURRICULUM VITAE AND EXPERT REPORTS FOR ALL EXPERT WITNESSES INTENDED TO TESTIFY AT TRIAL TO ALL OTHER PARTIES NOT LATER THAN 03-OCT-2022. 5) ALL PRETRIAL MOTIONS (OTHER THAN MOTIONS IN LIMINE) SHALL BE FILED NOT LATER THAN 17-OCT-2022. 6) A SETTLEMENT |
|---|---|

CONFERENCE MAY BE SCHEDULED ANY TIME AFTER 05-DEC-2022. 7) A PRETRIAL CONFERENCE MAY BE SCHEDULED ANY TIME AFTER 02-JAN-2023. 9) IT IS EXPECTED THAT THE CASE WILL BE READY FOR TRIAL 06-FEB-2023, WHICH IS THE EARLIEST TRIAL DATE PURSUANT TO PA.R.C.P. 212.1 AND COUNSEL SHOULD ANTICIPATE TRIAL TO BEGIN EXPEDITIOUSLY THEREAFTER. ALL COUNSEL ARE UNDER A CONTINUING OBLIGATION AND ARE HEREBY ORDERED TO SERVE A COPY OF THIS ORDER UPON ALL UNREPRESENTED PARTIES AND UPON ALL COUNSEL ENTERING AN APPEARANCE SUBSEQUENT TO THE ENTRY OF THIS ORDER. ... BY THE COURT: RAMY DJERASSI, J. 16-FEB-2022

| | | | |
|---|---|---|---|
| 16-FEB-2022 12:19 PM | LISTED FOR SETTLEMENT CONF | | |
| **Docket Entry:** | *none.* | | |
| | | | |
| 16-FEB-2022 12:19 PM | LISTED FOR PRE-TRIAL CONF | | |
| **Docket Entry:** | *none.* | | |
| | | | |
| 16-FEB-2022 12:19 PM | LISTED FOR TRIAL | | |
| **Docket Entry:** | *none.* | | |
| | | | |
| 16-FEB-2022 12:19 PM | NOTICE GIVEN UNDER RULE 236 | | |
| **Docket Entry:** | NOTICE GIVEN ON 16-FEB-2022 OF CASE MANAGEMENT ORDER ISSUED ENTERED ON 16-FEB-2022. | | |
| | | | |
| 22-FEB-2022 05:07 PM | ANSWER (MOTION/PETITION) FILED | MAHONEY ESQ, SEAN P | |
| **Documents:** | ⅄ Click link(s) to preview/purchase the documents<br>2022.02.22 - National Unions Opposition to Petition for Special Injunction.pdf<br>Exhibit A to Opposition.pdf<br>2022.02.22 - Affidavit of Jimmy Rodriguez.pdf<br>2022.02.22 - Brief in Opposition to Petition for Special Injunction.pdf | Click HERE to purchase all documents related to this one docket entry | |

| | | | |
|---|---|---|---|
| **Docket Entry:** | 22-22023122 ANSWER/RESPONSE IN OPPOSITION TO MOTION/PETITION. (FILED ON BEHALF OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA) | | |
| | | | |
| 23-FEB-2022 12:02 PM | PRELIMINARY OBJECTIONS | MAHONEY ESQ, SEAN P | |
| **Documents:** | ⬩ Click link(s) to preview/purchase the documents<br>2022.02.22 - National Unions Preliminary Objections.pdf<br>Exhibit A to Preliminary Objections.pdf<br>2022.02.22 - Brief in Support of Preliminary Objections.pdf | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 16-22025016 PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT FILED. RESPONSE DATE: 03/15/2022 (FILED ON BEHALF OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA) | | |
| | | | |
| 23-FEB-2022 03:24 PM | PETITION TO COMPEL ARBITRATION | MAHONEY ESQ, SEAN P | |
| **Documents:** | ⬩ Click link(s) to preview/purchase the documents<br>2022.02.22 - National Unions Motion to Compel ADR.pdf<br>Exhibit A to MTC.pdf<br>2022.02.22 - Brief in Support of Motion to Compel.pdf<br>Motion CoverSheet Form | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 65-22025065 RESPONSE DATE 03/15/2022. (FILED ON BEHALF OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA) | | |
| | | | |
| 24-FEB-2022 10:59 AM | MOTION ASSIGNED | | |
| **Docket Entry:** | 22-22023122 MISCELLANEOUS MOTION/PETITION ASSIGNED TO JUDGE: DJERASSI, RAMY I. ON DATE: FEBRUARY 24, 2022 | | |
| | | | |
| 25-FEB-2022 02:00 PM | MOTION/PETITION REPLY FILED | PODRAZA JR, JOSEPH R | |
| **Documents:** | ⬩ Click link(s) to preview/purchase the documents<br>2022 02 25 Ps Reply in Sup. of Spec. Injunction.pdf<br>Motion CoverSheet Form | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 22-22023122 REPLY IN SUPPORT OF MISCELLANEOUS MOTION/PETITION FILED. (FILED ON BEHALF OF JOHN J DOUGHERTY) | | |
| | | | |
| 02-MAR-2022 03:08 PM | MOTION/PETITION REPLY FILED | MAHONEY ESQ, SEAN P | |
| **Documents:** | ⬩ Click link(s) to preview/purchase the documents<br>2022.03.02 - Sur-Reply Brief in Opposition to Plaintiffs Petition for a Special Injunction.pdf | Click HERE to purchase all documents related to this one docket entry | |

| | Motion CoverSheet Form | | |
|---|---|---|---|
| **Docket Entry:** | 22-22023122 REPLY IN OPPOSITION OF MISCELLANEOUS MOTION/PETITION FILED. (FILED ON BEHALF OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA) | | |
| | | | |
| 15-MAR-2022 11:10 AM | ANSWER TO PRELIMINARY OBJCTNS | PODRAZA JR, JOSEPH R | |
| **Documents:** | Click link(s) to preview/purchase the documents 2022 03 15 Pltfs Answer to Defs Preliminary Objection.pdf | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 16-22025016 ANSWER IN OPPOSITION OF PRELIMINARY OBJECTIONS FILED. (FILED ON BEHALF OF JOHN J DOUGHERTY) | | |
| | | | |
| 15-MAR-2022 11:13 AM | ANSWER (MOTION/PETITION) FILED | PODRAZA JR, JOSEPH R | |
| **Documents:** | Click link(s) to preview/purchase the documents 2022 03 15 Pltfs Answer to Defs Motion to Compel Arbitration.pdf Motion CoverSheet Form | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 65-22025065 ANSWER IN OPPOSITION OF PETITION TO COMPEL ARBITRATION FILED. (FILED ON BEHALF OF JOHN J DOUGHERTY) | | |
| | | | |
| 17-MAR-2022 09:57 AM | MOTION ASSIGNED | | |
| **Docket Entry:** | 65-22025065 PETITION TO COMPEL ARBITRATION ASSIGNED TO JUDGE: DJERASSI, RAMY I. ON DATE: MARCH 17, 2022 | | |
| | | | |
| 17-MAR-2022 09:59 AM | PRELIM OBJECTIONS ASSIGNED | | |
| **Docket Entry:** | 16-22025016 PRELIMINARY OBJECTIONS ASSIGNED TO JUDGE: DJERASSI, RAMY I. ON DATE: MARCH 17, 2022 | | |
| | | | |
| 17-MAR-2022 04:09 PM | ORDER AND OPINION FILED | DJERASSI, RAMY I | |
| **Documents:** | Click link(s) to preview/purchase the documents ORDOP_35.pdf | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 22-22023122 UPON CONSIDERATION OF PLAINTIFF'S PETITION FOR SPECIAL INJUNCTION, DEFENDANT'S RESPONSE IN OPPOSITION, PLAINTIFF'S REPLY AND DEFENDANT'S SUR REPLY, ALL MATTERS OF RECORD AND IN ACCORD WITH THE ATTACHED OPINION, IT IS ORDERED | | |

| | | | |
|---|---|---|---|
| | THAT THE PETITION FOR SPECIAL INJUNCTION IS GRANTED. DEFENDANT SHALL ADVANCE DEFENSE COSTS AND EXPENSES TO PLAINTIFF IN AN AMOUNT UP TO THE POLICY LIMIT UPON PRESENTATION BY PLAINTIFF TO DEFENDANT OF HIS ATTORNEY'S INVOICES FOR FEES AND COSTS RELATING TO THE FEDERAL CRIMINAL TRAIL CURRENTLY SCHEDULED TO BEGIN ON MAY 5, 2022. THIS SPECIAL INJUNCTION SHALL BE IN FORCE ONLY UPON PLAINTIFF'S DEPOSIT WITH THE OFFICE OF JUDICIAL RECORDS LEGAL TENDER OF THE UNITED STATES IN THE AMOUNT OF $15,000 PURSUANT TO PA.R.C.P. 1531(B)(2) UPON THE SAME CONDITION AS PREVIDED BY AN INJUNCTION BOND UNDER PA.R.C.P. 1531(B)(1). OPINION ENTERED. ...BY THE COURT; DJERASSI, J. 3-17-22 | | |
| | | | |
| 17-MAR-2022 04:09 PM | NOTICE GIVEN UNDER RULE 236 | | |
| Docket Entry: | NOTICE GIVEN ON 18-MAR-2022 OF ORDER AND OPINION FILED ENTERED ON 17-MAR-2022. | | |
| | | | |
| 18-MAR-2022 01:16 PM | MONIES DEPOSITED/PROTHY ESCROW | DOUGHERTY, JOHN J | |
| Documents: | 📄 Click link(s) to preview/purchase the documents ESCRO_37.pdf | Click HERE to purchase all documents related to this one docket entry | |
| Docket Entry: | ESCROW PAID IN THE AMOUNT OF $15,000.00 PURSUANT TO THE COURT ORDER AND OPINION DATED 3/17/2022. | | |
| | | | |
| 13-APR-2022 10:25 AM | APPEAL TO SUPERIOR COURT | MAHONEY ESQ, SEAN P | |
| Documents: | 📄 Click link(s) to preview/purchase the documents 2022.04.13 - NUFIC - Notice of Appeal.pdf 2022.04.13 - Dougherty v. NUFIC - Civil Docket Report.pdf | Click HERE to purchase all documents related to this one docket entry | |
| Docket Entry: | 4-26-22 UPDATE - APPELLATE COURT CASE # ASSIGNED - 945 EDA 2022 NOTICE OF APPEAL FROM THE DECISION DATED 03/17/2022 AND DOCKETED ON 3/17/22 BY JUDGE DJERASSI, RAMY. PROOF OF SERVICE FILED. (FILED ON BEHALF OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA) | | |
| | | | |
| 13-APR-2022 10:39 AM | MOTION FOR SUPERSEDEAS | MAHONEY ESQ, SEAN P | |
| Documents: | 📄 Click link(s) to preview/purchase the documents 2022.04.13 - Motion for Stay and for Supersedeas.pdf 2022.04.13 - Exhibit A.pdf Motion CoverSheet Form | Click HERE to purchase all documents related to this one docket entry | |

| Docket Entry: | 88-22042288 EMERGENCY (FILED ON BEHALF OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA) | | |
|---|---|---|---|
| | | | |
| 13-APR-2022 12:29 PM | MOTION ASSIGNED | | |
| Docket Entry: | 88-22042288 MOTION FOR SUPERSEDEAS ASSIGNED TO JUDGE: DJERASSI, RAMY I. ON DATE: APRIL 13, 2022 | | |
| | | | |
| 14-APR-2022 01:05 PM | FEE PD PURSUANT TO ORDER | | |
| Docket Entry: | CHECK #11605 IN THE AMOUNT OF $90.25 WAS DISBURSED TO SUPERIOR COURT OF PENNSYLVANIA | | |
| | | | |
| 14-APR-2022 01:46 PM | ORDER ENTERED/236 NOTICE GIVEN | DJERASSI, RAMY I | |
| Documents: | 🛒 Click link(s) to preview/purchase the documents ORDER_42.pdf | 🗎 Click HERE to purchase all documents related to this one docket entry | |
| Docket Entry: | 88-22042288 AND NOW, THIS 14TH DAY OF APRIL 2022, UPON CONSIDERATION OF DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA.'S MOTION TO STAY AND FOR SUPERSEDEAS WITHOUT THE FILING OF APPROPRIATE SECURITY PENDING APPEAL PURSUANT TO PA.R.A.P. 1701 (B), 1732 (A), 1733 (A) AND (C), IT HEREBY IS ORDERED DEFENDANT'S MOTION IS DENIED. IT IS FURTHER ORDERED THAT DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA FILE AS SECURITY FOR PURPOSES OF PA.R.A.P. 1731 (A) 120% OF $75,000 (SEE FOOTNOTE 1) WHICH IS THE AMOUNT PROVIDED TO DEFENDANT BY PLAINTIFF. (SEE FOOTNOTE 2) BY THE COURT: JUDGE DJERASSI, 4/14/2022. | | |
| | | | |
| 14-APR-2022 01:46 PM | NOTICE GIVEN UNDER RULE 236 | | |
| Docket Entry: | NOTICE GIVEN ON 14-APR-2022 OF ORDER ENTERED/236 NOTICE GIVEN ENTERED ON 14-APR-2022. | | |
| | | | |
| 18-APR-2022 01:13 PM | NOTICE OF APPEAL SENT | | |
| Docket Entry: | NOTICE OF APPEAL SENT TO SUPERIOR COURT ON 4/18/22 PER APPEAL 4/13/22 VIA UPS# 1Z 5E3 003 03 0109 6753 | | |
| | | | |

| 22-APR-2022 10:13 AM | ORDER ENTERED/236 NOTICE GIVEN | DJERASSI, RAMY I | |
|---|---|---|---|
| **Documents:** | ⚠ Click link(s) to preview/purchase the documents<br>ORDER_45.pdf | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | 65-22025065 & 16-22025016 AND NOW, THIS 22ND DAY OF APRIL, 2022, UPON CONSIDERATION OF DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S ("DEFENDANT") MOTION TO COMPEL USE OF ALTERNATIVE DISPUTE RESOLUTION AND PLAINTIFF JOHN J. DOUGHERTY'S ("PLAINTIFF") RESPONSE IN OPPOSITION (CONTROL NO. 22025065) AND DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S PRELIMINARY OBJECTIONS PURSUANT TO PA. R.CIV. P. 1028(A)(6) ALTERNATIVE DISPUTE RESOLUTION AND PLAINTIFF'S RESPONSE IN OPPOSITION (CONTROL NO. 22026016), IT HEREBY IS ORDERED AS FOLLOWS: 1. DEFENDANT NATIONAL UINON'S MOTION TO COMPEL USE OF ALTERNATIVE DISPUTE RESOLUTION IS GRANTED AND A STAY IS ISSUED ON THE MERITS OF THE BREACH OF CONTRACT AND DECLARATORY RELIEF CLAIMS AS RELATED TO NO-FOR-PROFIT ORGANIZATIONS POLICY, NO. 03-979-23-74. THIS STAY IS NOT APPLICABLE TO THE SEVERABLE IRREPARABLE HARM AND DUE PROCESS ISSUES RAISED IN THE PRELIMINARY INJUNCTION NOW ON APPEAR AT NO. 954 EDA 2022. (SEE FOOTNOTE 1) (SEE ORDER FOR FURTHER TERMS) BY THE COURT: JUDGE DJERASSI, 4/22/2022. | | |

| | | | |
|---|---|---|---|

| 22-APR-2022 10:13 AM | NOTICE GIVEN UNDER RULE 236 | | |
|---|---|---|---|
| **Docket Entry:** | NOTICE GIVEN ON 22-APR-2022 OF ORDER ENTERED/236 NOTICE GIVEN ENTERED ON 22-APR-2022. | | |

| | | | |
|---|---|---|---|

| 22-APR-2022 10:13 AM | OTHER EVENT CANCELLED | DJERASSI, RAMY I | |
|---|---|---|---|
| **Docket Entry:** | 16-22025016 | | |

| | | | |
|---|---|---|---|

| 27-APR-2022 12:18 PM | PETITION FOR CONTEMPT | PODRAZA JR, JOSEPH R | |
|---|---|---|---|
| **Documents:** | ⚠ Click link(s) to preview/purchase the documents<br>Emergency Petition Package for Contempt in Dougehrty and National Union 04-27-22 (FINAL).pdf<br>Motion CoverSheet Form | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | 89-22045289 RESPONSE DATE 05/17/2022. EMERGENCY (FILED ON BEHALF OF JOHN J DOUGHERTY) | | |

| | | | |
|---|---|---|---|

| 27-APR-2022 02:52 PM | MOTION RESPONSE DATE UPDATED | | |
|---|---|---|---|
| **Docket Entry:** | 89-22045289 PETITION FOR CONTEMPT MOTION RESPONSE DATE UPDATED TO . | | |
| | | | |
| 27-APR-2022 03:00 PM | MOTION ASSIGNED | | |
| **Docket Entry:** | 89-22045289 PETITION FOR CONTEMPT ASSIGNED TO JUDGE: DJERASSI, RAMY I. ON DATE: APRIL 27, 2022 | | |
| | | | |
| 27-APR-2022 04:44 PM | ORDER ENTERED/236 NOTICE GIVEN | DJERASSI, RAMY I | |
| **Documents:** | ⬩ Click link(s) to preview/purchase the documents ORDER_51.pdf | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 89-22045289 UPON CONSIDERTION OF PLAINTIFF JOHN J. DOUGHERTY'S EMERGENCY PETITION FOR CONTEMPT AND SANCTIONS AND THE SUPERIOR COURT OF PENNSYLVANIA'S PER CURIUM ORDER DATED APRIL 22, 2022 WHICH DENIED WITHOUT PREJUDICE JOHN J. DOUGHERTY'S EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF TO VACATE TERMS OF THE SUPERSEDEAS FOR PLAINTIFF JOHN J. DOUGHERTY TO SEEK SUCH RELIEF IN THE TRIAL COURT, IT IS HEREBY ORDERED AS FOLLOWS: 1. PLAINTIFF JOHN J. DOUGHERTY'S EMERGY PETITION FOR CONTEMPT AND SANCTIONS IS DENIED AS UNRIPE. 2. PLAINTIFF JOHN J. DOUGHERTY SHALL ELECTRONICALLY FILE FORTHWITH WITH THIS COURT AN EMERGENCY PETITION TO MODIFY THE TERMS OF THE SUPERSEDEAS IN ACCORDANCE WITH PA.R.A.P. 1737 (A)(4) NO LATER THAN 11:59PM ON THURSDAY, APRIL 28, 2022. 3. DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA SHALL FILE A RESPONSE TO PLAINTIFF'S EMERGENCY PETITION TO MODIFY THE TERMS OF THE SUPERSEDEAS NO LATER THAN 11:59 PM ON MONDAY MAY 2, 2022. ...BY THE COURT; DJERASSI, J. 4-27-22 | | |
| | | | |
| 27-APR-2022 04:44 PM | NOTICE GIVEN UNDER RULE 236 | | |
| **Docket Entry:** | NOTICE GIVEN ON 27-APR-2022 OF ORDER ENTERED/236 NOTICE GIVEN ENTERED ON 27-APR-2022. | | |
| | | | |
| 28-APR-2022 07:03 PM | MISCELLANEOUS MOTION/PETITION | PODRAZA JR, JOSEPH R | |
| **Documents:** | ⬩ Click link(s) to preview/purchase the documents Emergency Petition to Modify Terms of Supersedeas 04-28-22.pdf | Click HERE to purchase all documents related to this one docket entry | |

| | |
|---|---|
| | Motion CoverSheet Form |
| **Docket Entry:** | 18-22045718 PLAINTIFF'S EMERGENCY PETITION TO MODIFY TERMS OF SUPERSEDEAS (FILED ON BEHALF OF JOHN J DOUGHERTY) |

| | | | |
|---|---|---|---|
| 29-APR-2022 09:26 AM | MOTION ASSIGNED | | |
| **Docket Entry:** | 18-22045718 MISCELLANEOUS MOTION/PETITION ASSIGNED TO JUDGE: DJERASSI, RAMY I. ON DATE: APRIL 29, 2022 | | |

| | | | |
|---|---|---|---|
| 02-MAY-2022 12:28 PM | ANSWER (MOTION/PETITION) FILED | MAHONEY ESQ, SEAN P | |
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>2022.05.02 - Answer to Petition to Modify Supersedeas.pdf<br>2022.05.02 - Exhibit A - Federal Docket.pdf<br>2022.05.02 - Exhibit B - Motion to Dismiss.pdf<br>Motion CoverSheet Form | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 18-22045718 ANSWER IN OPPOSITION OF MISCELLANEOUS MOTION/PETITION FILED. (FILED ON BEHALF OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA) | | |

| | | | |
|---|---|---|---|
| 03-MAY-2022 04:01 PM | ORDER ENTERED/236 NOTICE GIVEN | DJERASSI, RAMY I | |
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>ORDER_56.pdf | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 18-22045718 AND NOW, THIS 3RD DAY OF MAY, 2022, UPON CONSIDERATION OF PLAINTIFF JOHN J. DOUGHERTY'S EMERGENCY PETITION TO MODIFY THE TERMS OF THE SUPERSEDEAS IN ACCORDANCE WITH PA.R.A.P. 1737 (A)(4), DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURH, PA RESPONSE IN OPPOSITION AND ALL MATTERS OF RECORD, IT HEREBY IS ORDERED THAT THE EMERGENCY PETITION TO MODIFY THE TERMS OF THE SUPERSEDEAS IN ACCORDANCE WITH PA.R.CIV.P. 1737 (A)(4) IS DENIED. IT IS FURTHER ORDERED THAT DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, IN KEEPING WITH ITS ASSURANCES OF GOOD FAITH, SHALL TENDER A CORPORATE CHECK, OR A LAW FIRM CHECK, IN PERSON AT ROOM 296 CITY HALL AT THE CIVIL FILING CENTER OF THE FIRST JUDICIAL DISTRICT--FINANCE OFFICE IN THE AMOUNT OF $90,000 MADE PAYABLE TO THE OFFICE OF JUDICIAL RECORDS OF THE FJD NO LATER THAN 4:00 PM ON THURSDAY, MAY 5, 2022, AND, IT IS FURTHER ORDERED THAT THE OFFICE OF JUDICIAL RECORDS OF THE FJD SHALL ACCEPT FORTHWITH SAID $90,000 CORPORATE OR LAW FIRM CHECK IN ACCORD WITH THIS COURT'S ORDER DATED APIRL 14, 2022. (SEE FOOTNOTE 1) THE $90,000 DEPOSIT SATISFIES THE REQUIREMENTS OF PA.R.A.P. 1731 (A) AND OPERATES AS | | |

AN AUTOMATIC SUPERSEDEAS FOR APPEAL PURPOSES. AND, PURSUANT TO NOTICE OF APPEAL FILED BY DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, THIS COURT IS BOUND BY PA.R.A.P. 1701 (A) AND JURISDICTION ON THE MERITS LAYS WITH THE SUPERIOR COURT OF PENNSYLVANIA, LEAVING ONLY ACTIONS TO BE TAKEN AS NECESSARY UNDER PA. R.A.P. 1701 (B). BY THE COURT: JUDGE DJERASSI, 5/3/2022.

| 03-MAY-2022 04:01 PM | NOTICE GIVEN UNDER RULE 236 | | |
|---|---|---|---|
| **Docket Entry:** | NOTICE GIVEN ON 04-MAY-2022 OF ORDER ENTERED/236 NOTICE GIVEN ENTERED ON 03-MAY-2022. | | |

| 04-MAY-2022 04:26 PM | ORDER ENTERED/236 NOTICE GIVEN | DJERASSI, RAMY I | |
|---|---|---|---|
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents <br> ORDER_58.pdf | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 18-22045718 UPON CONSIDERATION OF THE MAY 4, 2022 LETTER FROM NATIONAL UNION'S COUNSEL REQUESTING A TWENTY-FOUR-HOUR EXTENSION OF TIME IN WHICH TO DELIVER AND DEPOSIT WITH THE COURT A CORPORATE CHECK IN THE AMOUNT OF $90,000.00 AS REQUIRED BY THIS COURT'S ORDER ENTERED ON MAY 4, 2022, AND OFR GOOD CAUSE SHOWN, IT IS HEREBY ORDERED AS FOLLOWS: 1. NATIONAL UNION'S REQUEST IS GRANTED. 2. THE TIME BY WHICH NATIONAL UNION MUST DEPOSIT $90,000.00 WITH THE OFFICE OF JUDICIAL RECORDS AS REQUIRED BY THIS COURT'S MAY 4, 2022 ORDER IS HEREBY EXTENDED TWENTY-FOUR HOURS, OR UNTIL 4:00 P.M. ET FRIDAY, MAY 6, 2022. 3. ALL OF THE OTHER TERMS AND CONDITIONS OF THE COURT'S MAY 4, 2022 ORDER SHALL REMAIN UNCHANGED. ... BY THE COURT: DJERASSI, J. 05/04/22 | | |

| 04-MAY-2022 04:26 PM | NOTICE GIVEN UNDER RULE 236 | | |
|---|---|---|---|
| **Docket Entry:** | NOTICE GIVEN ON 05-MAY-2022 OF ORDER ENTERED/236 NOTICE GIVEN ENTERED ON 04-MAY-2022. | | |

| 06-MAY-2022 10:51 AM | MONIES DEPOSITED/PROTHY ESCROW | NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA, | |
|---|---|---|---|
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents <br> ESCRO_60.pdf | Click HERE to purchase all documents related to this one docket entry | |

| | | | |
|---|---|---|---|
| **Docket Entry:** | ESCROW PAID IN THE AMOUNT OF $90,000.00 PURSUANT TO THE COURT ORDER DATED 5/4/2022. | | |
| | | | |
| 12-MAY-2022 02:24 PM | ANSWER TO COMPLAINT FILED | MAHONEY ESQ, SEAN P | |
| **Documents:** | ⬦ Click link(s) to preview/purchase the documents<br>2022.05.12 - NUFIC - Answer with New Matter - Final.pdf | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | ANSWER WITH NEW MATTER TO PLAINTIFF'S COMPLAINT FILED. (FILED ON BEHALF OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA) | | |
| | | | |
| 31-MAY-2022 09:58 AM | OPINION FILED/236 NOTICE GIVEN | | |
| **Documents:** | ⬦ Click link(s) to preview/purchase the documents<br>OPFLD_62.pdf | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | 945 EDA 2022 OPINION FILED ON 3/31/22 BY J. DJERASSI. | | |
| | | | |
| 31-MAY-2022 09:58 AM | NOTICE GIVEN UNDER RULE 236 | | |
| **Docket Entry:** | NOTICE GIVEN ON 31-MAY-2022 OF OPINION FILED/236 NOTICE GIVEN ENTERED ON 31-MAY-2022. | | |
| | | | |
| 31-MAY-2022 01:19 PM | APPEAL INVENTORY RECORD SENT | | |
| **Documents:** | ⬦ Click link(s) to preview/purchase the documents<br>APILM_64.pdf | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | PURSUANT TO PA. R.A.P. 1931 (d) APPEAL INVENTORY SENT. | | |
| | | | |
| 31-MAY-2022 01:19 PM | RECORD MAILED/TRANSMITTED | | |
| **Docket Entry:** | RECORD SENT TO SUPERIOR COURT ELECTRONICALLY VIA PACFILE UNDER 945 EDA 2022. | | |
| | | | |
| 31-MAY-2022 01:19 PM | NOTICE GIVEN UNDER RULE 236 | | |

| Docket Entry: | NOTICE GIVEN ON 31-MAY-2022 OF APPEAL INVENTORY RECORD SENT ENTERED ON 31-MAY-2022. | | |
|---|---|---|---|
| | | | |
| 28-JUN-2022 01:17 PM | STIPULATION FILED | DIFEBBO, MICHAEL E | |
| Documents: | ⚲ Click link(s) to preview/purchase the documents<br>Stipulation.pdf<br>Ex. A.pdf<br>Ex. B.pdf<br>Ex. C.pdf<br>Ex. D.pdf | Click HERE to purchase all documents related to this one docket entry | |
| Docket Entry: | STIPULATION TO CORRECT THE RECORD TRANSMITTED TO THE SUPERIOR COURT PURSUANT TO APPELLATE RULE 1926(B)(2) FILED. (FILED ON BEHALF OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA) | | |
| | | | |
| 05-JUL-2022 02:16 PM | ORDER ENTERED/236 NOTICE GIVEN | DJERASSI, RAMY I | |
| Documents: | ⚲ Click link(s) to preview/purchase the documents<br>ORDER_68.pdf | Click HERE to purchase all documents related to this one docket entry | |
| Docket Entry: | AND NOW, THIS 5TH DAY OF JULY, 2022, UPON REVIEW OF A STIPULATION ENTERED ON JUNE 28, 2022 WITHOUT A CONTROL NUMBER AWARDED AND WITHOUT A SIGNATURE LINE FOR THIS COURT'S APPROVAL, IT IS NOW ORDERED NONETHELESS, THAT THE STIPULATION IS APPROVED AND THE CERTIFIED REPRODUCED RECORD TRANSMITTED TO THE SUPERIOR COURT IS CORRECTED TO THE EXTENT COUNSEL HAVE STIPULATED. IT IS NOTED THAT OUR REVIEW OF THE APPLICABLE INSURANCE POLICIES LEADING TO THE MARCH 17, 2022 PRELIMINARY INJUNCTION ORDER WAS A STUDY OF THE COMPLETE VERSION OF THE POLICIES AT ISSUE INCLUDING ALL ENDORSEMENTS THAT ARE THE SUBJECT OF THE PARTIES' APPROVED STIPULATION. BY THE COURT: JUDGE DJERASSI, 7/5/2022. | | |
| | | | |
| 05-JUL-2022 02:16 PM | NOTICE GIVEN UNDER RULE 236 | | |
| Docket Entry: | NOTICE GIVEN ON 06-JUL-2022 OF ORDER ENTERED/236 NOTICE GIVEN ENTERED ON 05-JUL-2022. | | |
| | | | |
| 05-JUL-2022 02:20 PM | ORDER ENTERED/236 NOTICE GIVEN | DJERASSI, RAMY I | |

| Documents: | ⚲ Click link(s) to preview/purchase the documents<br>ORDER_69.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry |
|---|---|---|
| **Docket Entry:** | AND NOW, THIS 5TH DAY OF JULY, 2022, UPON REMAND FROM THE SUPERIOR COURT AS DIRECTED BY THE SUPREME COURT ON JULY 1, 2022 AT NO. 31 EM 2022, AND UPON THE VACATING OF OUR MAY 3, 2022 ORDER DENYING PLAINTIFF'S EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF TO VACATE TERMS OF SUPERSEDEAS, IT IS NOW ORDERED THAT AN EXPEDITED HEARING IS SCHEDULED ON THURSDAY, JULY 7, 2022 AT COURTROOM 646, CITY HALL, PHILADELPHIA, PA AT 11:00 AM. THE COURT WILL HEAR ARGUMENT AND EVIDENCE AS NECESSARY PER GUIDANCE FROM THE SUPERIOR COURT IN ITS PER CURIAM MEMORANDUM ENTERED ON JUNE 29, 2022 AT 945 EDA 2022. AS THE SUPERIOR COURT'S MEMORANDUM IS CLEAR, NO ADVANCE BRIEFS SHALL BE SUBMITTED. BY THE COURT: JUDGE DJERASSI, 7/5/2022. | |

| 05-JUL-2022 02:20 PM | NOTICE GIVEN UNDER RULE 236 | |
|---|---|---|
| **Docket Entry:** | NOTICE GIVEN ON 06-JUL-2022 OF ORDER ENTERED/236 NOTICE GIVEN ENTERED ON 05-JUL-2022. | |

| 05-JUL-2022 02:26 PM | LISTED FOR HEARING | |
|---|---|---|
| **Docket Entry:** | EXPEDITED HEARING SCHEDULED FOR 7/7/2022 AT 11:00 A.M. IN COURTROOM 646 CITY HALL. | |

| 06-JUL-2022 11:10 AM | APPELLATE APPEAL REMANDED | |
|---|---|---|
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>APRMD_73.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry |
| **Docket Entry:** | IN RE: 945 EDA 2022 ORDER ENTERED - THE MAY 3, 2022 ORDER OF THE PHILADELPHIA COUNTY COURT OF COMMON PLEAS, WHICH DENIED DOUGHERTY'S EMERGENCY PETITION SEEKING TO MODIFY THE TERMS OF THE AUTOMATIC SUPERSEDEAS, IS VACATED. THE MATTER IS HEREBY REMANDED TO THE COURT OF COMMON PLEAS FOR FURTHER, EXPEDITED PROCEEDINGGS IN ACCORDANCE WITH THE SUPREME COURT'S JULY 1, 2022 ORDER AND THIS COURT'S JUNE 29, 2022 MEMORANDUM PER CURIAM. 07/01/22 | |

| 07-JUL-2022 02:34 PM | TRIAL/HEARING EXHIBITS FILED | PODRAZA JR, JOSEPH R |
|---|---|---|

| Documents: | Click link(s) to preview/purchase the documents<br>Plaintiffs Exhibits from 7-7-22 Hearing.pdf | Click HERE to purchase all documents related to this one docket entry |
|---|---|---|
| Docket Entry: | TRIAL/EVIDENTIARY HEARING EXHIBITS/EVIDENCE FILED. | |

| 07-JUL-2022 04:08 PM | TRIAL/HEARING EXHIBIT LIST | |
|---|---|---|
| Documents: | Click link(s) to preview/purchase the documents<br>XLIST_75.pdf | Click HERE to purchase all documents related to this one docket entry |
| Docket Entry: | EXHIBIT LIST SUBMITTED FOR TRIAL/HEARING ON 07-JUL-22. | |

| 07-JUL-2022 04:20 PM | TRIAL/HEARING EXHIBITS FILED | DIFEBBO, MICHAEL E |
|---|---|---|
| Documents: | Click link(s) to preview/purchase the documents<br>2022.07.07 Docket Report - U.S. v. Dougherty - 21-cr-00065.pdf | Click HERE to purchase all documents related to this one docket entry |
| Docket Entry: | TRIAL/EVIDENTIARY HEARING EXHIBITS/EVIDENCE FILED. | |

| 13-JUL-2022 10:48 AM | COURT ORDERED PAYOUT OF ESCROW | |
|---|---|---|
| Docket Entry: | CHECK #9724 IN THE AMOUNT OF $90,000.00 WAS RELEASED TO LAMB MCERLANE PC PER ORDER DATED (07/13/2022), DJERASSI, J. | |

| 13-JUL-2022 11:39 AM | ORDER ENTERED - FINAL DISPOS | DJERASSI, RAMY I |
|---|---|---|
| Documents: | Click link(s) to preview/purchase the documents<br>ORDRF_77.pdf | Click HERE to purchase all documents related to this one docket entry |
| Docket Entry: | 18-22045718 (ORDER AND OPINION) AND NOW, THIS 13TH DAY OF JULY, 2022, ON REMAND AND UPON CONSIDERATION OF PLAINTIFF JOHN J. DOUGHERTY'S EMERGENCY PETITION TO MODIFY THE TERMS OF THE SUPERSEDEAS IN ACCORDANCE WITH PA. R.A.P. 1737 (A)(4) AND FOLLOWING AN EVIDENTIARY HEARING ON JULY 7, 2022, AND AS EXPLAINED IN AN ACCOMPANYING OPINION, IT IS ORDERED THAT THE EMERGENCY PETITION IS GRANTED AND THE ORDER OF THIS COURT ENTERED ON MAY 3, 2022 IS VACATED AND THE SUPERSEDEAS IS ELIMINATED. AND FURTHER, IT IS ORDERED THAT THE OFFICE OF JUDICIAL RECORDS IS AUTHORIZED TO RELEASE FORTHWITH THE SUM | |

| | | | |
|---|---|---|---|
| | OF $90,000 CURRENTLY HELD IN COURT ESCROW TO JOSEPH R. PODROZA, ESQUIRE, OR OTHER AUTHORIZED ATTORNEY ON THE STAFF OF THE LAW FIRM OF LAMB MCERLANE PC, AND THE MONEY SHALL BE IN CHECK FORM MADE OUT TO LAMB MCERLANE PC; AND FINALLY, IT IS ORDERED THAT THE LAW FIRM OF LAMB MCERLANE PC SHALL FORTHWITH, ON RECEIPT OF THE $90,000 CHECK FROM THE OFFICE OF JUDICIAL RECORDS, TRANSFER THE SUM OF $90,000 TO BALLARD SPAHR, LLP. BY THE COURT: JUDGE DJERASSI, 7/13/2022. | | |
| | | | |
| 13-JUL-2022 11:39 AM | NOTICE GIVEN UNDER RULE 236 | | |
| **Docket Entry:** | NOTICE GIVEN ON 13-JUL-2022 OF ORDER ENTERED - FINAL DISPOS ENTERED ON 13-JUL-2022. | | |
| | | | |
| 15-JUL-2022 01:47 PM | ACTIVE CASE | | |
| **Docket Entry:** | *none.* | | |
| | | | |
| 15-JUL-2022 01:49 PM | LISTED FOR SETTLEMENT CONF | | |
| **Docket Entry:** | *none.* | | |
| | | | |
| 15-JUL-2022 01:50 PM | LISTED FOR PRE-TRIAL CONF | | |
| **Docket Entry:** | *none.* | | |
| | | | |
| 15-JUL-2022 01:50 PM | LISTED FOR TRIAL | | |
| **Docket Entry:** | *none.* | | |
| | | | |
| 15-JUL-2022 02:01 PM | REPLY TO NEW MATTER | PODRAZA JR, JOSEPH R | |
| **Documents:** | ⌕ Click link(s) to preview/purchase the documents Reply to NM.pdf | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |

| | | | |
|---|---|---|---|
| **Docket Entry:** | REPLY TO NEW MATTER OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA FILED. (FILED ON BEHALF OF JOHN J DOUGHERTY) | | |
| | | | |
| 19-JUL-2022 01:08 PM | ORDER OF THE APPELLATE COURT | | |
| **Documents:** | Click link(s) to preview/purchase the documents APGEN_85.pdf | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | IN RE: 945 EDA 2022 APPELLANT'S APPLICATION TO CORRECT THE ORIGINAL RECORD PURSUANT TO PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1926(B)(2) TO CORRECT THE RECORD TRANSMITTED TO THE SUPERIOR COURT, FILED ON JULY 6, 2022, AND DOCKETED AS AN APPLICATION FOR CORRECTION OF THE ORIGINAL RECORD, AND UPON REVIEW OF THE TRIAL COURT DOCKET, WHICH INDICATES THAT THE TRIAL COURT ACCEPTED THE STIPULATION ON JULY 5, 2022, HTE APPLICATION IS GRANTED TO THE FOLLOWING EXTENT: THE TRIAL COURT IS DIRECTED TO CERTIFY THE CORRECTIONS AND TRANSMIT TO THIS COURT S PROTHONOTARY THE STIPULATION, THE JULY 5, 2022 ORDER, AND THE MATERIALS DESCRIBED IN THE STIPULATION AS A SUPPLEMENTAL CERTIFIED RECORD. 7-15-22 | | |
| | | | |
| 28-JUL-2022 03:50 PM | PETITION TO INTERVENE | LEVIN, JAY M | |
| **Documents:** | Click link(s) to preview/purchase the documents Petition to Intervene (final).pdf Motion CoverSheet Form | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 16-22075216 PETITION TO INTERVENE (FILED ON BEHALF OF INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 98) | | |
| | | | |
| 28-JUL-2022 04:00 PM | MOTION ASSIGNED | | |
| **Docket Entry:** | 16-22075216 PETITION TO INTERVENE ASSIGNED TO JUDGE: DJERASSI, RAMY I. ON DATE: JULY 28, 2022 | | |
| | | | |
| 29-JUL-2022 09:42 AM | SUPPLEMENTAL RECORD SENT | | |
| **Docket Entry:** | SUPPLEMENTAL RECORD SENT ELECTRONICALLY VIA PACFILE UNDER 945 EDA 2022 ( THE RECORD INCLUDES THE STIPULATION FILED ON 6/28/22 AND ALL PLEADINGS FROM THAT DATE THROUGH 7/28/22). | | |
| | | | |
| 02-AUG-2022 02:07 PM | ORDER ENTERED/236 NOTICE GIVEN | DJERASSI, RAMY I | |

| **Documents:** | ⬥ Click link(s) to preview/purchase the documents <br> ORDER_89.pdf | 🛒 **Click HERE to purchase all documents related to this one docket entry** |
|---|---|---|

| **Docket Entry:** | 16-22075216 AND NOW, THIS 2ND DAY OF AUGUST, 2022, UPON CONSIDERATION OF THE PETITION TO INTERVENE FILED BY THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 98, IT HEREBY IS ORDERED THAT A HEARING ON THE PETITION TO INTERVENE PURSUANT TO PA.R.CIV.P.2329 SHALL TAKE PLACE ON WEDNESDAY, SPETEMBER 14, 2022 AT 2:00 PM IN COURTROOM 646, CITY HALL, PHILADELPHIA, PA 19107. ALL INTERESTED PARTIES ARE REQUIRED TO APPEAR. IT IS FURTHER ORDERED THAT THE PARTIES IN THIS ACTION MAY FILE A RESPONSE TO THE PETITION TO INTERVENE ON OR BEFORE MONDAY SEPTMBER 12, 2022. BY THE COURT: JUDGE DJERASSI, 8/2/2022. |
|---|---|

| 02-AUG-2022 02:07 PM | NOTICE GIVEN UNDER RULE 236 | | |
|---|---|---|---|
| **Docket Entry:** | NOTICE GIVEN ON 02-AUG-2022 OF ORDER ENTERED/236 NOTICE GIVEN ENTERED ON 02-AUG-2022. | | |

| 02-AUG-2022 02:12 PM | MOTION HEARING SCHEDULED | | |
|---|---|---|---|
| **Docket Entry:** | 16-22075216 PETITION TO INTERVENE IS SCHEDULED FOR 9/14/2022 AT 2:00 PM IN COURTROOM 646 CITY HALL. | | |

| 26-AUG-2022 02:54 PM | NOT OF REMOVAL TO US DIST CT | LEVIN, JAY M | |
|---|---|---|---|
| **Documents:** | ⬥ Click link(s) to preview/purchase the documents <br> Notice of Filing of Removal -.pdf | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | NOTICE OF REMOVAL TO THE U.S. (EASTERN) DISTRICT COURT UNDER 2:22-CV-03430. (FILED ON BEHALF OF INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 98) | | |

▶ Case Description    ▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

Search Home

**CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2022, I caused a true and correct copy of the foregoing Motion to Remand to be filed electronically and available for viewing and downloading from the court's ECF system.  The Motion to Remand was served on counsel of record for all parties through the Court's CM/ECF system.


_/s/ Joseph R. Podraza, Jr._
Joseph R. Podraza, Jr.


Date: August 30, 2022